**Tab 21**

| DATE | TIME | ADDRESS | MODE | TIME | PAGE | RESULT | PERS. NAME | FILE |
|------|------|---------|------|------|------|--------|-----------|------|
| FEB. 9. | 4:03PM | 212 3712883 TES | | 0'36" | P. 3 | OK | | 878 |

```
# : BATCH          C : CONFIDENTIAL     P : POLLING       M : MEMORY
L : SEND LATER     @ : FORWARDING       E : ECM           > : REDUCTION
S : STANDARD       D : DETAIL           F : FINE
```

# FAX COVER SHEET

Number of Pages
(including cover):        3

To:                 **David Smallman**
Telephone:          (212) 826-5580
Fax Number:         (212) 593-9175

From:               **Ginger A. Wright**
Telephone:          (703) 613-3029
Fax Number:         (703) 613-3003

Date:               9 February 2007



Central Intelligence Agency

Washington, D.C. 20505

9 February 2007

Mr. David B. Smallman, Esq.
Frankfurt, Kurnit, Klein and Selz
488 Madison Avenue
New York, New York 10022

Dear Mr. Smallman:

I am writing in response to your letter of 31 January 2007.
As an initial matter, we appreciate your recognition of the need
to return the 10 February 2006 letter to Ms. Wilson and any
copies she retains to the Central Intelligence Agency per our
earlier request. Please have Ms. Wilson contact Ms. Tumolo at
(703) 613-8624 to make arrangements to return the letter.

With regard to Ms. Wilson's manuscript, the Publications
Review Board (PRB) has previously advised Ms. Wilson, the
first 124 pages of her manuscript contain classified
information. The PRB also advised Ms. Wilson that there is more
than one approach to revising the material in the first
124 pages of her manuscript in order to render it unclassified.
Since a detailed discussion of how certain passages are
classified because of the context in which they appear would
itself be classified, and because the PRB wanted to provide
Ms. Wilson with as much flexibility as possible, the PRB has
previously invited Ms. Wilson to meet with the PRB staff to
discuss these issues and to see if Ms. Wilson had a preference
among the different revision approaches. However, Ms. Wilson
has declined to meet with the PRB staff to discuss these issues.

In light of the concerns regarding the time associated with
the prepublication review of Ms. Wilson's manuscript that you
raised in your 31 January 2007 letter and in an effort to be as
helpful as possible, the PRB has selected an approach for
revising the manuscript and is currently undertaking a review of
the first 124 pages of Ms. Wilson's manuscript using this

Mr. David B. Smallman, Esq.

approach.  We expect the PRB will complete this review and
provide Ms. Wilson with a list of the changes required to make
that portion of her manuscript unclassified pursuant to this
approach within the next two weeks.

After Ms. Wilson has an opportunity to review the revised
unclassified manuscript, the PRB staff will be happy to meet
with her to discuss any specific concerns she has.

If you have any questions, please feel free to contact me
at (703) 613-3029.

Sincerely,

Ginger A. Wright
Associate General Counsel

# Tab 22

# Frankfurt Kurnit Klein & Selz, PC

Attorneys at Law
488 Madison Avenue
New York, New York 10022

Phone: (212) 980-0120
Fax: (212) 593-9175

## FACSIMILE TRANSMITTAL SHEET

| Deliver To: | Fax Number: |
| --- | --- |
| Ginger A. Wright, Esq. | 1-703-613-3003 |
| Office of General Counsel | |

| Company: | Telephone Number: |
| --- | --- |
| Central Intelligence Agency | 1-703-613-3029 |

| From: | Direct Dial Number: |
| --- | --- |
| David B. Smallman, Esq. | 1-212-826-5580 |

| Subject: | Client/Matter Number: |
| --- | --- |
| | 16100-200 |

| Date: | Total Number of Pages (including cover): |
| --- | --- |
| February 16, 2007 | 10 |

*(stamp, right margin:)* 2007 FEB 20 AM 5:38

If you do not receive all of the pages, or if you have difficulty with the transmission, please call the direct dial number shown above or (212) 980-0120 and ask for the mailroom at extension 6605.

### PRIVILEGED AND CONFIDENTIAL

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

NKFURT KURNIT KLEIN & SELZ pc

488 Madison Avenue
New York, New York 10022
Telephone: (212) 980-0120
Facsimile: (212) 593-9175

David B. Smallman
Direct dial: (212) 826-558
e-mail: dsmallman@fkks.com

February 16, 2007

VIA FAX
(703) 613-3003

Ginger A. Wright, Esq.
Assistant General Counsel
Office of General Counsel
Central Intelligence Agency
Washington, D.C. 20505

Dear Ms. Wright:

I am writing in response to a fax letter from you dated February 9, 2007
("Agency's February 9 Letter") (copy attached) in response to my letter of January 31,
2007 ("January 31 Letter"). Quite frankly, I was surprised and dismayed to receive
official correspondence from the Agency containing such obviously false and self-serving
assertions – as described below – which distort unfairly Ms. Wilson's numerous good
faith discussions with CIA's Publications Review Board ("PRB") during the past year.
While Ms. Wilson looks forward to receiving from the Agency on or before February 24
the promised list of proposed revisions, Ms. Wilson reserves all of her rights and
remedies with respect to the Agency's dilatory conduct and any related actions resulting
in improper censorship or restraint of publication of her manuscript by the Agency and/or
other parts of the Executive Branch, including, for example, the Office of Vice President,
in possible violation of the Constitution and the laws of the United States.

As an initial matter, the Agency's February 9 Letter fails to provide the
information requested in connection with Central Intelligence Agency's official
acknowledgement and disclosure of Ms. Wilson twenty year employment affiliation with
CIA in an unclassified letter dated February 10, 2006, which was published in the
Congressional Record on January 16, 2007 ("Published February 10, 2006 Letter") (copy
attached). In order to respond properly to the letter Ms. Wilson received from Ms.
Tumolo on January 19, 2007 ("Tumolo January 19 Letter") (copy attached), I am
reiterating my request that the Agency send to me as soon as possible a revised and
remarked version of the February 10, 2006 letter (with any ostensibly classified
information redacted) that complies in good faith with the applicable provisions of
Executive Order 12958, as amended ("E.O"), § 1.6. If the Office of General Counsel

F⌐ANKFURT KURNIT KLEIN & SELZ ᴘᴄ

Ginger A. Wright, Esq.
February 16, 2007
Page 2 of 2

CIA is unable or unwilling to provide a redacted version of the letter indicating the information that it believes to be classified, please provide to me at your earliest convenience the Agency's legal basis for seeking reclassification of the Published February 10, 2006 Letter and confirmation that all required actions have been undertaken by the Agency in connection with seeking reclassification. Ms. Davis and I also are available to meet with you and the Agency's Acting General Counsel, Mr. Rizzo, to discuss these matters.

In order to ensure an accurate record, I must also note that the Agency's February 7 Letter incorrectly describes the actual history of Ms. Wilson's meetings with PRB staff to discuss her manuscript. Contrary to the flatly wrong assertion that "Ms. Wilson has declined to meet with PRB staff," the opposite is true: Ms. Wilson met with PRB staff *three times* at the Agency's headquarters, on November 6, 2006, December 1, 2006, and December 13, 2006, and also had numerous email exchanges and telephone conversations with them. Furthermore, the Agency's February 9 Letter fails to explain adequately the now six month delay in completing a review that should have, as a general matter, been completed within thirty days of submission by Ms. Wilson of her manuscript to PRB in September 2006.

Finally, the Agency's February 9 Letter mischaracterizes our response to the Tumolo January 19 Letter set forth in my January 31 Letter. In order to correct that mischaracterization, I am again advising you of the following: please be assured that Ms. Wilson and her counsel intend to comply fully with all applicable obligations regarding "Classified National Security Information" pursuant to E.O. 12958, and any other applicable law, and, while fully reserving her rights and without prejudice to or otherwise waiving any rights she may have, Ms. Wilson will provide a copy of the February 10, 2006 letter to Ms. Tumolo.

I will look forward to hearing back from you regarding the above matters at your earliest convenience, and will expect the Agency to provide Ms. Wilson with a list of any proposed revisions to the first 124 pages of her manuscript no later than February 24, 2007.

Sincerely,

David B. Smallman

Attachments
cc:  Lisa E. Davis, Esq.
     Elisa Rivlin, Esq.

The following documents were attached to this letter [AR (Unclassified) Tab 22]:

- [AR (Unclassified) Tab 21] Fax from Ginger Wright to David B. Smallman (of February 9, 2007 letter from Ginger Wright to David B. Smallman)

- [AR (Classified) Tab 8] Congressional Record

- [AR (Unclassified) Tab 18] Fax from Ginger Wright to David B. Smallman dated January 22, 2007 (of January 19, 2007 letter from Karen Tumolo to Valerie Wilson)

**Tab 23**



Washington, D.C. 20505

23 February 2007

David B. Smallman, Esq.
Frankfurt, Kurnit, Klein and Selz
488 Madison Avenue
New York, New York 10022

Dear Mr. Smallman:

I am writing in response to your letter of 16 February 2007
and to our telephone conversation earlier this afternoon.

We certainly appreciate and accept the commitment of
Ms. Wilson and her counsel to comply fully with all legal
obligations regarding the protection of classified information
while fully reserving any legal rights Ms. Wilson may have.  As
a result of our telephone conversation, I understand that you
have questions regarding what these legal obligations may be
with respect to the Agency's 10 February 2006 letter.  To be
clear, Ms. Wilson has a legal obligation to return the
10 February 2006 letter and any copies that she may have in her
possession.  The 10 February 2006 letter contains currently and
properly classified information.  We disagree with your
characterization of our 10 February 2006 letter as an official
acknowledgment of classified information that would require a
reclassification action to protect.  Please be advised that
reclassification is only required when classified information is
formally declassified by an official with declassification
authority.  Information that is properly classified by the
Executive branch and that is released by administrative error or
by another branch of Government without Executive branch
concurrence continues to retain its classification.  The prompt
return of the 10 February 2006 letter and copies would not
constitute a waiver of Ms. Wilson's ability to challenge, or a
ratification by her of, the Agency's position that the
information included in the letter is currently and properly
classified.  We fully recognize that she would be returning the

David B. Smallman, Esq.

letter and copies in order to comply with her legal obligations
to protect information that the Agency has determined is
classified while at the same time reserving any rights that she
may have to challenge that determination.

With respect to your letter of 16 February 2007, obviously,
we disagree with your characterization of the contents of our
9 February 2007 letter as false and self-serving.  The Agency's
Publications Review Board (PRB) has acted in good faith in its
discussions with Ms. Wilson at all times and has not engaged in
any dilatory conduct.  As we have indicated to you, Ms. Wilson's
manuscript raises very serious classification issues that have
required careful consideration by the Agency.  The discussions
with Ms. Wilson have been aimed at trying to develop an approach
that would allow Ms. Wilson to tell her story without revealing
classified information.  In such cases, the discussions between
the PRB staff and an author may extend beyond the 30-day
benchmark that the Agency tries to meet.  As we have further
indicated to you, any redactions required in Ms. Wilson's
manuscript would be to delete currently and properly classified
information in accordance with the terms of her secrecy
agreement, not to engage in any improper censorship or restraint
of Ms. Wilson's publication of her manuscript.

With respect to the record of the PRB's discussions with
Ms. Wilson, as you correctly note the PRB staff met with Ms.
Wilson 6 November 2006 and, on 21 November 2006, advised her
that it had denied approval for her to publish the first half of
her manuscript because the information in that portion of her
manuscript is currently and properly classified and provided her
with a list of required line-in/line-out edits that would render
the second half of her manuscript unclassified.  The PRB staff
met with Ms. Wilson on 1 December 2006 and 13 December 2006 to
discuss these issues.  At the 13 December 2006 meeting, Ms.
Wilson requested that the PRB staff provide her with a list of
line-in/line-out edits that could be made to the first half of
the manuscript in order to render that portion of the manuscript
unclassified.

2

David B. Smallman, Esq.

On 22 December 2006, the PRB advised Ms. Wilson that the first 124 pages of her manuscript contain statements that may be unclassified standing alone, but they become classified when they are linked with a specific time, such as an event in her personal life, or are included in another context that would reveal classified information.  The PRB also advised Ms. Wilson that there is more than one approach to revising the material in the first 124 pages of her manuscript in order to render it unclassified and that the particular approach taken to revise the material in the manuscript would significantly affect the line-in/line-out changes that would be required to render her manuscript unclassified.  Because a detailed discussion of how certain passages are classified because of the context in which they appear would itself be classified, and because the PRB wanted to provide Ms. Wilson with as much flexibility as possible, the PRB's 22 December 2006 letter to Ms. Wilson invited her to meet with members of the PRB staff to discuss these issues and to see if Ms. Wilson had a preference among the different revision approaches.  However, Ms. Wilson has indeed declined to meet with the PRB staff to discuss these specific issues.

As I explained in my 9 February 2007 letter, in light of the concerns regarding the time associated with the prepublication review of Ms. Wilson's manuscript that you raised in your 31 January 2007 letter and in an effort to be as helpful as possible, the PRB has selected an approach for revising the manuscript and has just completed its review of the first 124 pages of Ms. Wilson's manuscript using this approach.  I understand that the PRB plans to mail Ms. Wilson the deletions required for the first 124 pages of her manuscript in order to render it unclassified by the end of today.

After Ms. Wilson has an opportunity to review the revised unclassified manuscript, the PRB staff will be happy to meet with her to discuss any specific concerns she has.  I am available to discuss any concerns you may have as well.

3

David B. Smallman, Esq.

If you have any questions, please feel free to contact me at (703) 613-3029.

Sincerely,

Ginger A. Wright
Associate General Counsel

4

# FAX COVER SHEET

Number of Pages
(including cover):         7

To:                    **David Smallman**
Telephone:             (212) 826-5580
Fax Number:            (347) 438-2123

From:                  **Ginger A. Wright**
Telephone:             (703) 613-3029
Fax Number:            (703) 613-3003

Date:                  23 February 2007

Subject:               Letters

David,  These letters along with the first half of Ms. Wilson's
manuscript with the required deletions are being mailed to you. I will
be out of the office for most of the day on Monday. I will be back in
the office first thing Tuesday morning and will be available to discuss
any concerns or issues you may have at your convenience.  Ginger

**Tab 24**



Central Intelligence Agency

Washington, D.C. 20505

**Publications Review Board**
**1H11 IP Building**
**Washington, D.C. 20505**

Telephone: 703-613-3070
Facsimile: 703-613-3004
E-mail: prb@ucia.gov

23 February 2007

Ms. Valerie E. Wilson
4612 Charleston Terrace, NW
Washington, DC 20007

Dear Ms. Wilson:

On 21 November 2006, the Central Intelligence Agency's Publications Review Board (PRB or Board) advised you that it had completed a prepublication review of your manuscript for classified information and that it had denied approval for you to publish the manuscript as it is currently written. On 13 December 2006, you requested a list of required revisions to the first 124 pages of your manuscript that would render that portion of your manuscript unclassified. On 22 December 2006, we advised you that the first 124 pages of your manuscript contain statements that may be unclassified standing alone, but they become classified when they are linked with a specific time, such as an event in your personal life, or are included in another context that would reveal classified information. We advised you that there is more than one approach to revising the material in the first 124 pages of your manuscript in order to render it unclassified and that the particular approach taken to revise the material in the manuscript would significantly affect the line-in/line-out changes that would be required to render the manuscript unclassified. Because a detailed discussion of how certain passages are classified because of the context in which they appear would itself be classified, and because we wanted to provide you with as much flexibility as possible, our 22 December 2006 letter included an invitation for you to meet with the PRB staff to discuss these issues and to see if you had a preference among the different revision approaches. However, you have declined to meet with us to discuss these issues.

In light of the concerns regarding the time associated with the prepublication review of your manuscript that Mr. Smallman raised with the Counsel to the PRB and in an effort to be as helpful as possible, we have selected an approach for revising the manuscript and have reviewed the first 124 pages of your manuscript using this approach.

Ms. Valerie E. Wilson

In accordance with the terms of your secrecy agreement, the Board has determined that certain information contained within the first 124 pages of your manuscript cannot be approved for publication because it is currently and properly classified information, the disclosure of which could reasonably be expected to cause harm to national security, and, therefore, must be deleted prior to publication. In some instances, the deleted text is classified because it is linked with a specific time or is included in a particular context that reveals classified information. The PRB staff is available to work with you to discuss ways in which this deleted text could be modified in order to render it unclassified or could be used in other contexts so as to not reveal classified information.

Enclosed is a copy of the most recent version of the manuscript that you provided to the Board for review. Within this copy we have clearly indicated (1) that text (blacked out) that must be deleted from your original version because the information is classified and must be removed before publication, and (2) that text that is formally approved for publication in its current form. You will note that during the course of our review, the original pagination has changed. To ensure we are clearly identifying textual references in any subsequent discussions, we have added new page references so that we are not confusing specific text between versions.

As always, after you have had an opportunity to review these deletions, the PRB staff will be happy to meet with you to discuss any specific concerns and continue our discussion in an effort to assist you in publishing your manuscript while safeguarding classified information. Please keep in mind that if you add material to or change the text the Board has approved for publication, you must submit these additions or changes to us before giving them to your publisher or anyone else. In such a case, please mark or otherwise clearly indicate the new or changed material so we can expedite our review. Additional material that must be submitted includes, but is not limited to, photographs, photograph captions, footnotes, endnotes, illustrations, diagrams, tables, charts, or maps.

Please keep in mind that, because your original manuscript contains classified information, we require that you return to us for destruction any and all earlier, non-approved versions of this work, in whatever form, and remove those items from your hard drive.

Please do not hesitate to contact me if you have any questions or if we can be of further assistance.

Sincerely yours,

R. Puhl

R. Puhl
Chairman, Publications Review Board

Manuscript filed under seal

**Tab 25**

**Subject:** Re: URGENT: From Valerie Plame Wilson
**From:** "Joseph Wilson" <thewilsonswdc@hotmail.com>
**Date:** Mon, 02 Apr 2007 19:17:40 +0000
**To:** joyceah@ucia.gov

great.  i will have a copy of the redacted manuscript and the
original and we'll all do our best to cover the issues.  will wait
for your call at 9 am my time.

best, valerie


From: joyceah@ucia.gov
To: Joseph Wilson <thewilsonswdc@hotmail.com>
CC: richajp@ucia.gov
Subject: Re: URGENT:  From Valerie Plame Wilson
Date: Mon, 02 Apr 2007 10:21:34 -0400

Hello Valerie,

Richard and I will be available on 4 April as requested in your note
and will call you at 11am ET.  Hopefully we will be able to work
through any issues that you wish to discuss.  Regards, Joyce

Joseph Wilson wrote:
   Greetings.

   I would like to schedule a telephone call with you on Wednesday,
   April 4th.  I am now living in New Mexico and therefore on
   mountain time.  Are you free to begin at 9am MT or 11am ET?

   Now that I have the entire redacted manuscript, I look foward to
   working with you to look at each of the redacted
   sections/words/passages to determine if there is any way that they
   could be re-written to fulfill my obligation to protect classified
   information while still keeping some flow to the story.

   Please let me know at your earliest convenience if you are
   available for this call.  My new home telephone number is:
   505-983-1738.

   Thank you, Valerie

**Subject:** URGENT: From Valerie Plame Wilson
**From:** "Joseph Wilson" <thewilsonswdc@hotmail.com>
**Date:** Sun, 01 Apr 2007 14:32:16 +0000
**To:** richajp@ucia.gov, joyceah@ucia.gov

Greetings.

I would like to schedule a telephone call with you on Wednesday,
April 4th. I am now living in New Mexico and therefore on mountain
time. Are you free to begin at 9am MT or 11am ET?

Now that I have the entire redacted manuscript, I look foward to
working with you to look at each of the redacted
sections/words/passages to determine if there is any way that they
could be re-written to fulfill my obligation to protect classified
information while still keeping some flow to the story.

Please let me know at your earliest convenience if you are available
for this call. My new home telephone number is:  505-983-1738.

Thank you, Valerie

**Tab 26**

**Subject:** Re: from valerie wilson
**From:** "Joseph Wilson" <thewilsonswdc@hotmail.com>
**Date:** Mon, 09 Apr 2007 19:21:20 +0000
**To:** joyceah@ucia.gov

joyce,

thank you for your note.  i will wait to hear on wednesday when you
and richard are available to review the second half of the
manuscript in the same manner we did the first.

as far as the first half of the manuscript, there were quite a few
areas that you said you would "push back" and revisit.  i trust you
are working on those sections now.

thank you, valerie


From: joyceah@ucia.gov
To: Joseph Wilson <thewilsonswdc@hotmail.com>
CC: richajp@ucia.gov
Subject: Re: from valerie wilson
Date: Mon, 09 Apr 2007 15:13:29 -0400

Hello,

Thanks for the info below.  I don't have any firm news yet we are
still coordinating our response regarding the second half of the
manuscript. I hope to have more to tell you on Wednesday when you
get back.  I will have a note waiting for you one way or the other.

Regarding the first half of the manuscript, we are hesitant to
provide detailed additional input until we have received your
rewrite and can review it as to chronology, etc.  The feedback we
provide will be dependent on your new material and where it is
placed in the manuscript.  We would prefer to see what you have
before a detailed line-by-line review.  We are aware that you want
some input regarding the larger portions/topics -- such as
"training" -- prior to working on any rewrite. I will continue to
work on that so that you have some sense of appropriateness and
where to spend your effort.

Have a safe journey, Joyce

Joseph Wilson wrote:
  greetings.

  i will wait to hear from you today on our date to begin reviewing
  the second part of the manuscript.  just so you know, i will be
  traveling tuesday (tomorrow), back on wednesday morning.

thanks, valerie

**Subject:** from valerie wilson
**From:** "Joseph Wilson" <thewilsonswdc@hotmail.com>
**Date:** Mon, 09 Apr 2007 17:18:35 +0000
**To:** joyceah@ucia.gov

greetings.

i will wait to hear from you today on our date to begin reviewing
the second part of the manuscript.  just so you know, i will be
traveling tuesday (tomorrow), back on wednesday morning.

thanks, valerie

**Tab 27**

# WOLLMUTH MAHER & DEUTSCH LLP

500 FIFTH AVENUE
12TH FLOOR
NEW YORK, NEW YORK 10110

TELEPHONE: (212) 382-3300
FACSIMILE: (212) 382-0050

FAX TRANSMISSION COVER SHEET

| | | | |
|---|---|---|---|
| **Date:** | April 17, 2007 | | |
| **To:** | John Rizzo, Esq. | **Fax:** | 703-613-30 l3 |
| **Company:** | Central Intelligence Agency | **Phone:** | 703-613-30 l9 |
| **Subject:** | | **Direct Dial:** | |
| **From:** | David B. Smallman, Esq. | | |

YOU SHOULD RECEIVE 25 PAGE(S), INCLUDING THIS COVER SHEET. I F YOU
DO NOT RECEIVE ALL PAGES, PLEASE CALL (212) 382-3300

NOTE: THIS CONFIDENTIAL TRANSMISSION IS INTENDED SOLELY FOR ITS ADDRESSE S AND
THEIR AUTHORIZED DISTRIBUTEES. IF YOU HAVE RECEIVED THIS TRANSMISSION IN .R IOR,
PLEASE INFORM US IMMEDIATELY BY TELEPHONE AT (212) 382-3300

<u>Message:</u>   Please see attached.

# WOLLMUTH MAHER & DEUTSCH LLP

## 500 FIFTH AVENUE

### NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

<u>VIA FAX</u>                                          April 17, 2007
(703) 613-3003

John Rizzo, Esq.
Acting General Counsel
Office of General Counsel
Central Intelligence Agency
Washington, D.C. 20505

Dear Mr. Rizzo:

I am writing to follow up on our conference call of April 2, 2007 and two letters
from the Agency, each dated February 23, 2007 (copies attached). In connection with
Ms. Wilson's ongoing cooperation regarding pre-publication review of her memoir, and
in order to assist the Agency in complying with its legal obligations to ensure that her
pre-publication review process is reasonably structured to prevent publication only of
properly classified material, this letter and its attachments respond to the Agency's
request for additional information regarding official acknowledgment by CIA in February
2006 of Valerie Wilson's federal service dates. This letter also clarifies the indisputable
record of Valerie Wilson's past and present willingness to meet at all relevant times with
CIA's Publications Review Board ("PRB").

With regard to the Agency's official acknowledgment of Ms. Wilson's dates of
federal service, the Agency has requested a copy of a letter from CIA to Ms. Wilson
dated February 10, 2006 that was previously published in the Congressional Record on
January 16, 2007. Mindful of the need to cooperate with the Agency's information
request while protecting fully any classified National Security Information, we are
forwarding on behalf of Ms. Wilson a copy of the letter in the redacted form received
from Congressman Jay Inslee's office, together with the final floor statement in
connection with the Valerie Plame Wilson Compensation Act, H.R. 501, the bill as
introduced, and pages E118-E119 of the Congressional Record. This response, of course,
is subject to and conditioned upon the Agency's prior written acknowledgment that
providing a copy to the Agency of the requested letter is without prejudice to our legal
position regarding the non-classified status of that letter or any other versions, and Ms.
Wilson fully reserves all of her rights and remedies in this matter. This response is
further without prejudice to our legal position that the Agency waived any purported

John Rizzo, Esq.
April 17, 2007
Page 2 of 6

basis for seeking to restrict disclosure of the contents of that letter by its actions,
including, *inter alia*, prior disclosure by the Agency of the specific information at issue in
an official document that is now in the public domain.

The February 10, 2006 letter from CIA was an unclassified communication
delivered by regular mail on official CIA letterhead which acknowledged and disclosed
information regarding Valerie Wilson's eligibility to receive a deferred annuity under the
Federal Employees Retirement System (FERS) Special Category at the conclusion of her
government service in January 2006. The deferred annuity letter received by Valerie
Wilson contained no indicia whatsoever that the information disclosed by the Agency
therein was classified, nor was Valerie Wilson informed at the time of receipt (or for
almost a full year thereafter) that this official correspondence was purportedly classified
or subject to any restrictions that would prohibit her from providing a copy to Congress
in connection with proposed legislation that predated her receipt of the letter.

Thus, while the Agency had actual knowledge of the existence in unclassified
form of Valerie Wilson's deferred annuity letter from at least February 10, 2006 through
January 19, 2007, it took no steps whatsoever for nearly a year (1) to reclassify any
information contained in the February 10, 2006 letter, (2) to indicate any national security
classification of the contents of the letter through proper marking and redelivery of the
letter, (3) to retrieve the original letter, or (4) to restrict in any way dissemination of the
letter or any information contained therein. To the contrary, for approximately a full
year, none of the measures set forth in Executive Order 12958, as amended by Executive
Order No. 13292, 68 Fed. Reg. 15315 ("E.O. 12958") applicable to the handling of
"Classified National Security Information" were undertaken by the Agency with respect
to information about Valerie Wilson's federal service as set forth in the February 10,
2006 letter. For example, the Agency, as original classification authority, did not
identify, mark, or describe any aspect of that disclosure that "reasonably could be
expected to result in damage to national security," as required by E.O. §1.6 (5)(c), and it
still has not done so despite my repeated requests. Nor can the Agency seek to classify
information to "conceal administrative error," E.O. 12958 §1.7(a)(1), or to "prevent
embarrassment to . . . the [A]gency." E.O. 12958 §1.7(a)(2).

In any event, given that the information disclosed in CIA's official
correspondence was obviously not in classified form on February 10, 2006, and given
that the Agency has no reasonable basis to establish any damage caused to national
security arising from the information it disclosed about Ms. Wilson's life as published in
the Congressional Record on January 16, 2007, reclassification can only be undertaken if
"the information may be reasonably recovered." E.O. 12958 §1.7(4)(c)(2). That simply
cannot occur under the circumstances here because the specific information made public
through an official and documented disclosure by the Agency is irretrievably in the
possession of Congress through the legislative process and hence pursuant to the speech

John Rizzo, Esq.
April 17, 2007
Page 3 of 6

and Debate Clause of the Constitution. *See* U.S. CONST. art. I, § 6, cl. 1. Moreove, the exact information describing Valerie Wilson's federal service as set forth in the Agency's own official correspondence – which the Agency continues to assert may not be published by Ms. Wilson in her memoir – has been published in the Congressional Record and made available worldwide on the internet via the Library of Congress THOMAS website. *See* http://www.thomas.gov.

Because the Agency began to assert for the first time on January 19, 2007 ( three days *after* the January 16, 2007 publication of Ms. Wilson's deferred annuity letter in the Congressional Record) that CIA's disclosure in unclassified form of specific information regarding her dates of federal service was simply an "administrative error," I have requested repeatedly since January 31, 2007 that the Agency provide Ms. Wilson's counsel with a revised and remarked version of the February 10, 2006 letter that complies in good faith with any applicable provisions of E.O. 12958 §1.6. More than two months later, however, the Agency still has not done so. Now that Ms. Wilson and her counsel have complied with the Agency's request to provide it with a copy of the redacted deferred annuity letter already published in the Congressional Record, I am reiterating once again my prior requests. To the extent that the attached redacted version of Ms. Wilson's deferred annuity letter is coterminous with the Agency's determination of a version of the letter that would comply in good faith with any applicable provision of E.O. 12958 §1.6, or if the Agency has reached and can identify an alternate determination, please advise me immediately so that Ms. Wilson can comply with her legal obligations and respond appropriately to the Agency's January 19, 2007 letter seeking return of the original document.

With regard to the Agency's recent misstatements regarding Ms. Wilson's record of meeting with PRB whenever reasonably requested to do so, I am disappointed that it is again necessary for a second time to point out and correct obviously false and self-serving assertions by the Agency that unfairly distort Ms. Wilson's good faith discussions with PRB.[1] The following chronology demonstrates conclusively, however, that she has

---

[1] Notwithstanding actual facts to the contrary, the February 23, 2007 letter from the Agency's Associate General Counsel, Ginger A. Wright asserts – erroneously · that "Ms. Wilson . . . declined to meet with the PRB staff" to discuss "issues" concerning possible approaches to revision of her manuscript immediately upon receiving a letter to her dated December 22, 2006 (sent three days prior to the Christmas holiday). A letter from R. Puhl, the Chairman of PRB, also dated February 23, 2007, contains a similar inaccurate statement: "Our 22 December 2006 letter included an invitation for you to meet with PRB staff to discuss these issues and to see if you had a preference among the different revision approaches. However, you have declined to meet with us to discuss these issues." It is also my understanding that the Agency's director, General Michael V. Hayden, has repeated the same or similar mischaracterizations to Congress.

John Rizzo, Esq.
April 17, 2007
Page 4 of 6

always been willing to meet with the Agency at mutually convenient times in conr ec:ion
with the PRB review process and has never declined to meet with PRB to discuss a ay
issues concerning review of her memoir:

- December 13, 2006:  Ms. Wilson meets with PRB; at that meeting, PRI
  promises to release to her the first 124 pages of her manuscript in redac ed
  form.

- December 26, 2006:  A letter from the Agency dated December 22, 20( 5 .s
  delivered to Ms. Wilson's mother's home in Florida.  Ms. Wilson's mo her
  reads the letter to Ms. Wilson, who is on vacation with her family in Ut ih.
  The letter, which completely reverses course on PRB's prior agreement tc
  deliver to her a redacted version of the first half of the manuscript, state s in
  relevant part, as follows:

  > *The first 124 pages of your manuscript are replete with
  > statements that may be unclassified standing alone, but
  > they become classified when they are linked with a specific
  > time, such as an event in your personal life, or are included
  > in another context that would reveal classified information.
  > A detailed description of this information along with how
  > the timeframes and contexts are problematic would be
  > classified.  We are available to meet at your convenience to
  > discuss these issues in person.  However, we are not able to
  > communicate this information to you in an unclassified
  > correspondence.  Additionally, there is more than one
  > approach to revising the material in the first 124 pages of
  > your manuscript in order to render it unclassified . . . . We
  > recognize that these options might not be feasible in some
  > instances and that the only way to avoid revealing
  > classified information in those cases would be to recast that
  > information or fictionalize it . . . . We look forward to
  > hearing from you in the near future regarding how you
  > wish to proceed.*

- January 5, 2007:  Reflecting concerns about the publication review pro es ; for
  Ms. Wilson's manuscript, certain members of the House of Representa v:s
  and the Senate (and their staffs) inquire into that process and/or commu ic ate
  with the Agency and its director.

John Rizzo, Esq.
April 17, 2007
Page 5 of 6

- January 9, 2007: Michael David Grannis, a member of Senator Feinste n's staff, meets with the Agency regarding the PRB review process for Ms. Wilson's memoir. He is informed that the Agency will allow him to re iew the unredacted manuscript with permission from Ms. Wilson so that a p ssible compromise approach can be proposed to the Agency.

- January 9, 2007: Letter to the Agency from Ms. Wilson's counsel rega ding Agency's decision to renege on its agreement to release the redacted fir t alf of Ms. Wilson's manuscript and providing the Agency with an cpen source/public domain chart regarding Ms. Wilson.

- January 11, 2007: Ms. Wilson emails permission to R. Puhl at PRB to provide Mr. Grannis a copy of the unredacted first half of the manuscrij t.

- January 16, 2007: H.R. 501 introduced and related materials published in the Congressional Record.

- January 23, 2007: Despite email message to R. Puhl twelve days earlie , Mr. Grannis has still not yet received a copy of the unredacted Wilson manuscript from PRB.

- January 24, 2007: Ms. Wilson contacts PRB and is informed that Mr. Puhl will be out for "at least the next two weeks." Ms. Wilson emails the fir t part of the unredacted manuscript directly to Mr. Grannis.

- January 31, 2007: Agency provided by Ms. Wilson's counsel with cop c f materials published in the Congressional Record on January 16, 2007. Agency informed that its six month delay in conducting its review of th : manuscript appears to be dilatory and improper.

- February 9, 2007: Agency reverses course again and agrees to provide M :. Wilson with a redacted version of the first half of her manuscript

Contrary to the Agency's assertion that Ms. Wilson had declined to meet with the Agency, it is clear from the above chronology that Ms. Wilson, with the Agency's consent, had provided Mr. Grannis with the first half of her manuscript. It was her working assumption that she would meet with PRB *after* Mr. Grannis had completed his review in order to determine whether a compromise approach could be agreed upon. Therefore, any assertions by the Agency that Ms. Wilson "declined to meet with the PRB" staff during the relevant time period to discuss approaches to revising her manuscript are misleading and false. Rather, Ms. Wilson, with the Agency's knowledge, was considering and actively working on a proposed approach and compromise regarding

John Rizzo, Esq.
April 17, 2007
Page 6 of 6

redactions to the first half of the manuscript. She did not "decline" to meet with anyone, and the Agency should correct its misstatements that suggest otherwise.

As previously discussed with the Agency's lawyers during the many months that Ms. Wilson has worked diligently with PRB to reach a reasonable resolution of any possible national security issues arising from her memoir, Ms. Wilson is a loyal former officer who is not seeking *carte blanche* to discuss her entire government service or to reveal any classified information. Rather, because of newsworthy events concerning her government service, a fundamental public interest "lies in a proper accommodation that will preserve the intelligence mission of the Agency while not abridging the free flow of unclassified information." *Snepp v. United States*, 444 U.S. 507, 520 (1980) (Stevens, J., dissenting). The Agency, therefore, has an obligation to comply with the Constitution and laws of the United States with respect to disclosure of officially acknowledged information, and this extends to its legal duty to ensure that the Agency's pre-publication review process is reasonably structured to prevent publication only of properly classified materials.

Sincerely,

David B. Smallman

Attachments
cc:  Lisa E. Davis, Esq.

**Tab 27 A**

Central Intelligence Agency



Washington, D.C. 20505

Publications Review Board
1H11 IP Building
Washington, D.C. 20505

Telephone: 703-613-3( 70
Facsimile: 703-613-3( 14
E-mail: pri@ucia.gov

23 February 2007

Ms. Valerie E. Wilson
4612 Charleston Terrace, NW
Washington, DC  20007

Dear Ms. Wilson:

On 21 November 2006, the Central Intelligence Agency's Publications Review Board (PRB or Board) advised you that it had completed a prepublication review of your manuscript for classified information and that it had denied approval for you to publish the manuscript as it is currently written. On 13 December 2006, you requested a list of required revisions to the first 124 pages of your manuscript that would render that portion of your manuscript unclassified. On 22 December 2006, we advised you that the first 124 pages of your manuscript contain statements that may be unclassified standing alone, but they become classified when they are linked with a specific time, such as an event in your personal life, or are included in another context that would reveal classified information. We advised you that there is more than one approach to revising the material in the first 124 pages of your manuscript in order to render it unclassified and that the particular approach taken to revise the material in the manuscript would significantly affect the line-in/line-out changes that would be required to render the manuscript unclassified. Because a detailed discussion of how certain passages are classified because of the context in which they appear would itself be classified, and because we wanted to provide you with as much flexibility as possible, our 22 December 2006 letter included an invitation for you to meet with the PRB staff to discuss these issues and to see if you had a preference among the different revision approaches. However, you have declined to meet with us to discuss these issues.

In light of the concerns regarding the time associated with the prepublication review of your manuscript that Mr. Smallman raised with the Counsel to the PRB and in an effort to be as helpful as possible, we have selected an approach for revising the manuscript and have reviewed the first 124 pages of your manuscript using this approach.

Ms. Valerie E. Wilson

    In accordance with the terms of your secrecy agreement, the Board has determi ec that certain information contained within the first 124 pages of your manuscript cannot be a pproved for publication because it is currently and properly classified information, the disclosu : c : which could reasonably be expected to cause harm to national security, and, therefore, must b deleted prior to publication. In some instances, the deleted text is classified because it is linke( w.:h a specific time or is included in a particular context that reveals classified information. . he PRB staff is available to work with you to discuss ways in which this deleted text could be n odified in order to render it unclassified or could be used in other contexts so as to not reveal clas if :d information.

    Enclosed is a copy of the most recent version of the manuscript that you provid d :o the Board for review. Within this copy we have clearly indicated (1) that text (blacked out th :t must be deleted from your original version because the information is classified and must be removed before publication, and (2) that text that is formally approved for publication in its curr nt form. You will note that during the course of our review, the original pagination has changed T : ensure we are clearly identifying textual references in any subsequent discussions, we h ive added new page references so that we are not confusing specific text between versions.

    As always, after you have had an opportunity to review these deletion:, the PRE staff will be happy to meet with you to discuss any specific concerns and continue our discussion in an . effort to assist you in publishing your manuscript while safeguarding classified informa ion. Please keep in mind that if you add material to or change the text the Board has approv d for publication, you must submit these additions or changes to us before giving them to you r publisher or anyone else. In such a case, please mark or otherwise clearly indicate the r 'w or changed material so we can expedite our review. Additional material that must be subr it :d includes, but is not limited to, photographs, photograph captions, footnotes, endnotes, illustrations, diagrams, tables, charts, or maps.

    Please keep in mind that, because your original manuscript contains classified information, we require that you return to us for destruction any and all earlie:, non-app ov ed versions of this work, in whatever form, and remove those items from your hard drive.

    Please do not hesitate to contact me if you have any questions or if we can be of fu:ther assistance.

                   Sincerely yours,

                   R. Puhl

                   R. Puhl
           Chairman, Publications Review Board

**Tab 27 B**



Central Intelligence Agency

Washington, D.C. 20505

23 February 2007

David B. Smallman, Esq.
Frankfurt, Kurnit, Klein and Selz
488 Madison Avenue
New York, New York 10022

Dear Mr. Smallman:

I am writing in response to your letter of 16 February 2007 and to our telephone conversation earlier this afternoon.

We certainly appreciate and accept the commitment of Ms. Wilson and her counsel to comply fully with all legal obligations regarding the protection of classified information while fully reserving any legal rights Ms. Wilson may have. As a result of our telephone conversation, I understand that you have questions regarding what these legal obligations may be with respect to the Agency's 10 February 2006 letter. To be clear, Ms. Wilson has a legal obligation to return the 10 February 2006 letter and any copies that she may have in her possession. The 10 February 2006 letter contains currently and properly classified information. We disagree with your characterization of our 10 February 2006 letter as an official acknowledgment of classified information that would require a reclassification action to protect. Please be advised that reclassification is only required when classified information is formally declassified by an official with declassification authority. Information that is properly classified by the Executive branch and that is released by administrative error or by another branch of Government without Executive branch concurrence continues to retain its classification. The prompt return of the 10 February 2006 letter and copies would not constitute a waiver of Ms. Wilson's ability to challenge, or a ratification by her of, the Agency's position that the information included in the letter is currently and properly classified. We fully recognize that she would be returning the

David B. Smallman, Esq.

letter and copies in order to comply with her legal obligations
to protect information that the Agency has determined is
classified while at the same time reserving any rights that she
may have to challenge that determination.

With respect to your letter of 16-February 2007, obviously,
we disagree with your characterization of the contents of our
9 February 2007 letter as false and self-serving. The Agency's
Publications Review Board (PRB) has acted in good faith in its
discussions with Ms. Wilson at all times and has not engaged in
any dilatory conduct. As we have indicated to you, Ms. Wilson's
manuscript raises very serious classification issues that have
required careful consideration by the Agency. The discussions
with Ms. Wilson have been aimed at trying to develop an approach
that would allow Ms. Wilson to tell her story without revealing
classified information. In such cases, the discussions between
the PRB staff and an author may extend beyond the 30-day
benchmark that the Agency tries to meet. As we have further
indicated to you, any redactions required in Ms. Wilson's
manuscript would be to delete currently and properly classified
information in accordance with the terms of her secrecy
agreement, not to engage in any improper censorship or restraint
of Ms. Wilson's publication of her manuscript.

With respect to the record of the PRB's discussions with
Ms. Wilson, as you correctly note the PRB staff met with Ms.
Wilson 6 November 2006 and, on 21 November 2006, advised her
that it had denied approval for her to publish the first half of
her manuscript because the information in that portion of her
manuscript is currently and properly classified and provided her
with a list of required line-in/line-out edits that would render
the second half of her manuscript unclassified. The PRB staff
met with Ms. Wilson on 1 December 2006 and 13 December 2006 to
discuss these issues. At the 13 December 2006 meeting, Ms.
Wilson requested that the PRB staff provide her with a list of
line-in/line-out edits that could be made to the first half of
the manuscript in order to render that portion of the manuscript
unclassified.

2

David B. Smallman, Esq.

On 22 December 2006, the PRB advised Ms. Wilson that the first 124 pages of her manuscript contain statements that may be unclassified standing alone, but they become classified when they are linked with a specific time, such as an event in her personal life, or are included in another context that would reveal classified information. The PRB also advised Ms. Wilson that there is more than one approach to revising the material in the first 124 pages of her manuscript in order to render it unclassified and that the particular approach taken to revise the material in the manuscript would significantly affect the line-in/line-out changes that would be required to render her manuscript unclassified. Because a detailed discussion of how certain passages are classified because of the context in which they appear would itself be classified, and because the PRB wanted to provide Ms. Wilson with as much flexibility as possible, the PRB's 22 December 2006 letter to Ms. Wilson invited her to meet with members of the PRB staff to discuss these issues and to see if Ms. Wilson had a preference among the different revision approaches. However, Ms. Wilson has indeed declined to meet with the PRB staff to discuss these specific issues.

As I explained in my 9 February 2007 letter, in light of the concerns regarding the time associated with the prepublication review of Ms. Wilson's manuscript that you raised in your 31 January 2007 letter and in an effort to be as helpful as possible, the PRB has selected an approach for revising the manuscript and has just completed its review of the first 124 pages of Ms. Wilson's manuscript using this approach. I understand that the PRB plans to mail Ms. Wilson the deletions required for the first 124 pages of her manuscript in order to render it unclassified by the end of today.

After Ms. Wilson has an opportunity to review the revised unclassified manuscript, the PRB staff will be happy to meet with her to discuss any specific concerns she has. I am available to discuss any concerns you may have as well.

3

David B. Smallman, Esq.

    If you have any questions, please feel free to contact me at (703) 613-3029.

Sincerely,

Ginger A. Wright
Associate General Counsel

4

# Tab 27 C

Attachment filed in **TAB 3** of the
Classified Administrative Record

**Tab 27 D**

From: "Bonlender, Brian" <Brian.Bonlender@mail.house.gov>
To: "'Joseph Wilson (thewilsonswdc@hotmail.com)'"
<thewilsonswdc@hotmail.com>
Date: Tue, 16 Jan 2007 18:59:03 -0500

Attached is the bill we just introduced, the final floor statement, and the
redacted annuity letter submitted into the Congressional Record along with
the floor statement.

We had to name the bill in order to couple the statement with the bill
introduction.  The name of the bill is the Valerie Plame Wilson Compensation
Act.

I'll have somebody get a copy of it when the Congressional Record is
printed.  I'm not sure when that will be.

Thanks for all your patience on this,

Brian

Brian Bonlender
Chief of Staff
Congressman Jay Inslee
<http://www.house.gov/inslee> www.house.gov/inslee
202-225-6311
202-226-1606 fax

3 attachments —

    annuityletterredacted.pdf

    INSLEE_012_xml.pdf

    FloorStatementPlamebilljan2007final.doc

F:\M10\INSLEE\INSLEE_012.XML                                    H.L.C.

............................................................
(Original Signature of Member)

110TH CONGRESS
1ST SESSION

# H. R. _____

For the relief of Valerie Plame Wilson.

_____

## IN THE HOUSE OF REPRESENTATIVES

Mr. INSLEE introduced the following bill; which was referred to the Committee
on _____

_____

# A BILL

For the relief of Valerie Plame Wilson.

1    *Be it enacted by the Senate and House of Representa-*

2  *tives of the United States of America in Congress assembled,*

3  **SECTION 1. SHORT TITLE.**

4    This Act may be cited as the "Valerie Plame Wilson

5  Compensation Act".

6  **SEC. 2. VOLUNTARY RETIREMENT FROM THE CENTRAL IN-**

7             **TELLIGENCE AGENCY.**

8    For purposes of any determination of rights under

9  title III of the Central Intelligence Agency Retirement Act

10  (50 U.S.C. 2001 et seq.), Valerie Plame Wilson of Wash-

F:\M10\INSLEE\INSLEE_012.XML                                          H.L.C.

2

1  ington, District of Columbia, shall be considered to have

2  met the age and consent requirements that apply under

3  section 302(b) of such Act (50 U.S.C. 2152(b)) by virtue

4  of section 233(a) of such Act (50 U.S.C. 2053(a)).

# Tab 27 E

Attachment filed in **TABS 6, 7, and 8** of the
Classified Administrative Record

# Tab 28



Central Intelligence Agency

Washington, D.C. 20505

Publications Review Board
1H11 IP Building
Washington, D.C. 20505

Telephone: 703-613-3070
Facsimile: 703-613-3004
E-mail: prb@ucia.gov

19 April 2007

Valerie E. Wilson
123 North Guadalupe St. #549
Santa Fe, New Mexico 87501

Dear Ms. Wilson:

In light of the recent telephone and e-mail conversations you have had with representatives of the Publications Review Board (PRB or Board), I wanted to take this opportunity to confirm the status of the Board's review of your manuscript entitled, *Fair Game*.

The Board had determined that certain information included within your manuscript could not be approved for publication as written because the information was (and is) currently and properly classified, the disclosure of which could reasonably be expected to cause harm to national security and, therefore, must be deleted prior to publication. Our 21 November 2006 and 23 February 2007 letters to you, and the attachment to our 23 February 2007 letter, identified the information that would have to be deleted from your manuscript in order to render your manuscript unclassified so that the Board could approve it for publication.

Our letters also advised you of the Board's availability to discuss with you how you could modify the deleted text or use it in other contexts so as to not reveal classified information, if you wished to explore those options. To this end, we met with you on 1 December 2006 and 13 December 2006 and had a telephone conference call with you on 4 April 2007. During these meetings and the conference call, we discussed your concerns regarding the classification determinations reflected in the Board's review of your manuscript and certain writing techniques (e.g., changing or obscuring the chronological timing of an event, placing text in another part of the manuscript, etc.) that you could use to rewrite some of the deleted material to render it unclassified. This letter memorializes the guidance we provided to you during our conversations that, based on the Board's review of the additional information you provided, we have withdrawn our objections to your publication of the names of individuals that appear throughout both parts of your manuscript.

In your 10 April 2007 telephone conversation with a representative of the PRB staff, you stated that you had decided that you would not rewrite or change the chronology of significant portions of the first half of your manuscript. As it appears that you no longer wish to explore the options regarding how you could modify the majority of the deleted text or use it in other contexts in the manuscript so as to not reveal classified information, please make all of the required deletions to your manuscript that we identified for you in our previous correspondence and forward the entire manuscript to us, with the copies of the modified pages clearly marked. When we confirm that you have made all of the required deletions and that all classified information has been removed from the text, we will approve your manuscript for publication and provide you with the required disclaimer language and information regarding the destruction of the non-approved versions of the manuscript. We also require a final review of the galley proofs so that we can verify that the published version is the approved version. Your responsibility as the author is to ensure that the publisher releases only the Board-approved version. Please note that the Board gives galley reviews high priority because the material has undergone a prior review.

If your plans change and you decide to add material to your manuscript or change the text the Board has approved for publication, you must submit these additions or changes to us before giving them to your publisher or anyone else. In such a case, please mark or otherwise clearly indicate the new material so we can expedite our review. Additional material that must be submitted includes, but is not limited to, photographs, photograph captions, illustrations, diagrams, tables, charts, or maps.

With limited exceptions, the classified information the PRB identified in your manuscript relates to a single issue, of which you are aware, and reflects the classification determination made by the Director of the Agency. Because the Agency has provided you with a level of administrative process that exceeds the requirements of the applicable Agency regulations, you have exhausted your administrative remedies with respect to this classification determination.

With respect to the PRB's required deletions that relate to classified information other than the main issue we have discussed, you may appeal these Board determinations within 30 days of the date of this letter. Appeals must be in writing and must be sent to the Board's Chairman. In accordance with applicable Agency regulations, the Associate Deputy Director of the Agency adjudicates appeals of PRB decisions and will issue the final Agency decision. Appeal documentation must include the material intended for publication and any supporting material you would like the Associate Deputy Director to consider.

As you know, until the Board provides you with written approval to publish your manuscript, you may not disclose your manuscript to any publisher, editor, literary agent, co-author, ghost-writer, reviewer, attorney, or any other member of the public. Disclosure of your manuscript, without the written approval of the Board, would be considered a willful and deliberate breach of your secrecy agreement that may subject you to civil and criminal penalties, to an injunction preventing the publication of any unapproved version of the book, and to the forfeiture of any and all proceeds obtained from publication of the book.

We look forward to hearing from you in the near future regarding how you wish to proceed. If you have any questions, please do not hesitate to contact me.

Sincerely,

R. Puhl
Chairman, Publications Review Board

# Tab 29

## CENTRAL INTELLIGENCE AGENCY

**WASHINGTON, D.C. 20505**

Office of General Counsel

24 April 2007

David B. Smallman, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
12th Floor
New York, New York 10110

Dear Mr. Smallman:

I am responding to your letter of 17 April and also sending you a copy of the Publications Review Board's (PRB) recent letter to your client, Valerie Wilson, confirming the status of the Board's review of her manuscript.

As you know, during our 2 April conference call I reiterated the need for Ms. Wilson to return to CIA the 10 February 2006 letter mistakenly sent to her along with any copies of the letter that she retains. I appreciated that once again you gave your assurances that she intends to comply with her continuing legal obligation to protect classified information. I am also relying on your assurances during that call that Ms. Wilson is prepared to return the original letter and any copies in her possession. To that end, and pursuant to the process we agreed upon, please find enclosed a copy of the 10 February 2006 letter that reflects the proper classification markings and that has been approved for release in redacted form as a result of a declassification review. I trust that now that we have provided it to you as you requested, you will ensure Ms. Wilson fulfills her legal obligation to protect classified information and return to us promptly the original letter and any copies that she may have retained. The PRB is prepared to make arrangements to receive the letter from Ms. Wilson.

Also enclosed is a copy of the PRB Chairman's 19 April 2007 letter to Ms. Wilson confirming the status of the Board's review of her manuscript entitled, *Fair Game*. The Board has clearly summarized the current status of its review of Ms. Wilson's manuscript. It also sets forth various options for Ms. Wilson as she considers how best to move toward publication of her manuscript.

David B. Smallman, Esq.


Finally, I must say I was disappointed to learn that, notwithstanding the progress I thought we made in our conference call, Ms. Wilson subsequently decided not to make any rewrites or any changes to the chronology of significant portions of the first half of the manuscript. Nevertheless, I continue to strongly encourage Ms. Wilson to work closely with the Board to ensure she takes the appropriate steps to protect classified information, which as a former CIA employee she has a continuing legal obligation to do.

Sincerely,

John A. Rizzo
Acting General Counsel

Enclosures:
1. Redacted copy of 10 February 2006 letter
2. PRB Chairman's 19 April 2007 letter

2

**Tab 29 A**

Central Intelligence Agency



Washington, D.C. 20505

Publications Review Board
1H11 IP Building
Washington, D.C. 20505

Telephone: 703-613-3070
Facsimile: 703-613-3004
E-mail: prb@ucia.gov

19 April 2007

Valerie E. Wilson
123 North Guadalupe St. #549
Santa Fe, New Mexico 87501

Dear Ms. Wilson:

In light of the recent telephone and e-mail conversations you have had with representatives of the Publications Review Board (PRB or Board), I wanted to take this opportunity to confirm the status of the Board's review of your manuscript entitled, *Fair Game*.

The Board had determined that certain information included within your manuscript could not be approved for publication as written because the information was (and is) currently and properly classified, the disclosure of which could reasonably be expected to cause harm to national security and, therefore, must be deleted prior to publication. Our 21 November 2006 and 23 February 2007 letters to you, and the attachment to our 23 February 2007 letter, identified the information that would have to be deleted from your manuscript in order to render your manuscript unclassified so that the Board could approve it for publication.

Our letters also advised you of the Board's availability to discuss with you how you could modify the deleted text or use it in other contexts so as to not reveal classified information, if you wished to explore those options. To this end, we met with you on 1 December 2006 and 13 December 2006 and had a telephone conference call with you on 4 April 2007. During these meetings and the conference call, we discussed your concerns regarding the classification determinations reflected in the Board's review of your manuscript and certain writing techniques (e.g., changing or obscuring the chronological timing of an event, placing text in another part of the manuscript, etc.) that you could use to rewrite some of the deleted material to render it unclassified. This letter memorializes the guidance we provided to you during our conversations that, based on the Board's review of the additional information you provided, we have withdrawn our objections to your publication of the names of individuals that appear throughout both parts of your manuscript.

In your 10 April 2007 telephone conversation with a representative of the PRB staff, you stated that you had decided that you would not rewrite or change the chronology of significant portions of the first half of your manuscript. As it appears that you no longer wish to explore the options regarding how you could modify the majority of the deleted text or use it in other contexts in the manuscript so as to not reveal classified information, please make all of the required deletions to your manuscript that we identified for you in our previous correspondence and forward the entire manuscript to us, with the copies of the modified pages clearly marked. When we confirm that you have made all of the required deletions and that all classified information has been removed from the text, we will approve your manuscript for publication and provide you with the required disclaimer language and information regarding the destruction of the non-approved versions of the manuscript. We also require a final review of the galley proofs so that we can verify that the published version is the approved version. Your responsibility as the author is to ensure that the publisher releases only the Board-approved version. Please note that the Board gives galley reviews high priority because the material has undergone a prior review.

If your plans change and you decide to add material to your manuscript or change the text the Board has approved for publication, you must submit these additions or changes to us before giving them to your publisher or anyone else. In such a case, please mark or otherwise clearly indicate the new material so we can expedite our review. Additional material that must be submitted includes, but is not limited to, photographs, photograph captions, illustrations, diagrams, tables, charts, or maps.

With limited exceptions, the classified information the PRB identified in your manuscript relates to a single issue, of which you are aware, and reflects the classification determination made by the Director of the Agency. Because the Agency has provided you with a level of administrative process that exceeds the requirements of the applicable Agency regulations, you have exhausted your administrative remedies with respect to this classification determination.

With respect to the PRB's required deletions that relate to classified information other than the main issue we have discussed, you may appeal these Board determinations within 30 days of the date of this letter. Appeals must be in writing and must be sent to the Board's Chairman. In accordance with applicable Agency regulations, the Associate Deputy Director of the Agency adjudicates appeals of PRB decisions and will issue the final Agency decision. Appeal documentation must include the material intended for publication and any supporting material you would like the Associate Deputy Director to consider.

As you know, until the Board provides you with written approval to publish your manuscript, you may not disclose your manuscript to any publisher, editor, literary agent, co-author, ghost-writer, reviewer, attorney, or any other member of the public. Disclosure of your manuscript, without the written approval of the Board, would be considered a willful and deliberate breach of your secrecy agreement that may subject you to civil and criminal penalties, to an injunction preventing the publication of any unapproved version of the book, and to the forfeiture of any and all proceeds obtained from publication of the book.

We look forward to hearing from you in the near future regarding how you wish to proceed. If you have any questions, please do not hesitate to contact me.

Sincerely,

R. Puhl
Chairman, Publications Review Board

**Tab 29 B**

SECRET//20320110



Central Intelligence Agency



Washington, D.C. 20505

February 10, 2006

APPROVED FOR RELEASE
DATE:    APR 2007

Mrs. Valerie Wilson
4612 Charleston Terrace, NW
Washington, DC 20007

Dear Mrs. Wilson,

    This letter is in response to your recent telephone conversation with [           ] regarding when you would be eligible to receive your deferred annuity. Per federal statute, employees participating under the Federal Employees Retirement System (FERS) Special Category, who have acquired a minimum of 20 years of service, are eligible to receive their deferred annuity at their Minimum Retirement Age (MRA).

SECRET//20320110

SECRET//20320110

| | Dates of Service | Years/Months/Days |
|---|---|---|
| CIA (P/T 40) | 01/01/2002 - 12/31/2002 | 01 year,  00 months, 00 days |
| CIA (P/T 40) | 01/01/2003 - 12/31/2003 | 01 year,  00 months, 00 days |
| CIA (P/T 40) | 01/01/2004 - 08/07/2004 | 00 years, 07 months, 07 days |
| CIA (LWOP) | 08/08/2004 - 12/31/2004 | 00 years, 04 months, 23 days (no excess) |
| CIA | 01/01/2005 – 01/09/2006 | 01 years, 00 months, 09 days |

The above figures are estimates for your planning purposes.  The Office of Personnel Management, as the final adjudicator of creditable service and annuity computations, determines final annuity amounts.  Please let me know if I can be of any further assistance.

Sincerely,

Chief, Retirement & Insurance Services

**Tab 30**

**Subject:** Re: from valerie wilson
**From:** "Joseph Wilson" <thewilsonswdc@hotmail.com>
**Date:** Wed, 25 Apr 2007 20:53:13 +0000
**To:** joyceah@ucia.gov

thank you.


From: joyceah@ucia.gov
To: Joseph Wilson <thewilsonswdc@hotmail.com>
CC: thomapb@ucia.gov, richajp@ucia.gov
Subject: Re: from valerie wilson
Date: Tue, 24 Apr 2007 15:37:08 -0400

Here we go:  Tom can be reached at (703) 482-0968 rpt 482-0968.  I
also gave him your address/phone#.

Joseph Wilson wrote:

  joyce,

  i have not yet recieved the letter (although i don't expect to
  until monday at the earliest...).

  i have a unrelated favor to ask.  i have received several strange
  telephone calls to my number here and i would like to report them
  to the security office.  in the move, i have misplaced the number
  and name of the person with whom i usually dealt and informed when
  this happened. would you kindly try to find an appropriate contact
  for me and number so i can convey the information?

  thank you so much.  valerie


  From: joyceah@ucia.gov
  To: Joseph Wilson <thewilsonswdc@hotmail.com>
  CC: richajp@ucia.gov
  Subject: Re: from valerie wilson
  Date: Thu, 19 Apr 2007 10:48:40 -0400

  Valerie,

  A letter to you regarding the entire manuscript will be mailed
  today.

  Joyce

  Joseph Wilson wrote:

    good morning.

do you have any word on when the final redaction decisions will
be made on the second part of my manuscript?

thank you.   valerie

**Subject:** Re: from valerie wilson
**From:** "Joseph Wilson" <thewilsonswdc@hotmail.com>
**Date:** Mon, 23 Apr 2007 02:30:41 +0000
**To:** joyceah@ucia.gov

joyce,

i have not yet recieved the letter (although i don't expect to until
monday at the earliest...).

i have a unrelated favor to ask.  i have received several strange
telephone calls to my number here and i would like to report them to
the security office.  in the move, i have misplaced the number and
name of the person with whom i usually dealt and informed when this
happened. would you kindly try to find an appropriate contact for me
and number so i can convey the information?

thank you so much.  valerie


From: joyceah@ucia.gov
To: Joseph Wilson <thewilsonswdc@hotmail.com>
CC: richajp@ucia.gov
Subject: Re: from valerie wilson
Date: Thu, 19 Apr 2007 10:48:40 -0400

Valerie,

A letter to you regarding the entire manuscript will be mailed
today.

Joyce

Joseph Wilson wrote:
  good morning.

  do you have any word on when the final redaction decisions will be
  made on the second part of my manuscript?

  thank you.  valerie

**Subject:** from valerie wilson
**From:** "Joseph Wilson" <thewilsonswdc@hotmail.com>
**Date:** Tue, 17 Apr 2007 15:22:09 +0000
**To:** joyceah@ucia.gov

good morning.

do you have any word on when the final redaction decisions will be
made on the second part of my manuscript?

thank you.   valerie

# Tab 31

# WOLLMUTH MAHER & DEUTSCH LLP

### 500 FIFTH AVENUE

### NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

<u>VIA FAX</u>                                     April 27, 2007
(703) 482-1959

John A. Rizzo, Esq.
Acting General Counsel
Office of General Counsel
Central Intelligence Agency
Washington, D.C. 20505

Dear Mr. Rizzo:

    I am responding to your letter dated April 24, 2007 ("April 24 Letter"), which I received via fax on April 25, 2007.

    As an initial matter, the April 24 Letter mischaracterizes in all material respects our April 2, 2007 telephone conversation and inaccurately describes my statements to you. Furthermore, we agreed from the outset that our April 2, 2007 conference call would be for settlement purposes only. Accordingly, even if you had not erroneously summarized our conversation for self-serving reasons that do not reflect what was actually discussed, you are ethically bound not to make any improper disclosure or use of our settlement discussions. While I must reserve all rights in that regard, I trust further reminder of your obligations will not be necessary.

    With regard to the April 19, 2007 letter from CIA's Publications Review Board ("PRB") Chairman R. Puhl to "Valerie E. [sic]Wilson" ("April 19 Letter"), we will respond at an appropriate time to that letter, which also contains self-serving mischaracterizations of fact and erroneous conclusions of law. Accordingly, Ms. Wilson fully reserves all of her rights and remedies with respect to both the April 24 Letter from the Office of General Counsel and the April 19 Letter from PRB.

    Finally, enclosed is a copy of my letter today to J. Michael McConnell, Director of National Intelligence, pursuant to his statutory oversight authority under 50 U.S.C. § 103-1(f)(1)(B)(4).

Sincerely,

David B. Smallman

Attachment
cc: Lisa E. Davis, Esq.

# Tab 31 A

04/27/2007 22:54 FAX 212-345 9306 SJ   Downloath MAHER DEUTSCH 06/28/2007   Page 74 of 121

# WOLLMUTH MAHER & DEUTSCH LLP

### 500 FIFTH AVENUE

### NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

**VIA FEDERAL EXPRESS and FAX** ·      April 27, 2007
(202) 201-1124

J. Michael McConnell
Director of National Intelligence
Office of the Director of National Intelligence
Washington, D.C. 20505

Dear Mr. McConnell:

I represent Valerie Plame Wilson and am writing in connection with CIA's pre-publication review of her memoir entitled "Fair Game" and your statutory oversight authority, as the Director of National Intelligence ("DNI"), "to ensure compliance with the Constitution and laws of the United States by the Central Intelligence Agency . . . ." 50 U.S.C. § 403 1(f)(1)(B)(4).

Ms. Wilson, who loves her country and devoted her career to protecting national security, has done everything possible to cooperate with an agency that she served with loyalty and distinction. Nevertheless, it is necessary to bring to your attention CIA's violation of clearly established First Amendment law by seeking to prohibit publication of specific information about Ms. Wilson's dates of federal service that were "officially acknowledged" by the Agency in its own unclassified letter now in the public domain through publication in the Congressional Record.[1] By unreasonably interfering with the publication of Ms. Wilson's book, this conduct continues to prevent important information from reaching the American public at a critical time in our nation's history.

---

[1] The February 10, 2006 letter from CIA was an unclassified communication delivered by regular mail on official CIA letterhead from CIA's "Chief, Retirement & Insurance Services." As published in the Congressional Record, the letter acknowledged and disclosed information regarding Valerie Wilson's eligibility to receive a deferred annuity under the Federal Employees Retirement System (FERS) Special Category at the conclusion of her government service in January 2006. The deferred annuity letter contained no indicia whatsoever that the information disclosed by the Agency therein was classified, nor was Valerie Wilson informed at the time of receipt (or for almost a full year thereafter) that this official correspondence was purportedly classified or subject to any restrictions that would prohibit her from providing a copy to Congress in connection with proposed legislation that predated her receipt of the letter. Numerous federal courts have held that to be "officially acknowledged" by an agency, information must meet three criteria: First, the information at issue must be as specific as the information previously released. Second, the information at issue must match the information previously disclosed. Third, the information at issue must have been made public through an official and documented disclosure. *See*, *e.g.*, *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007); *Peay v. DOJ*, No. 04-1859 (CKK), 2007 U.S. Dist. LEXIS 17386 *10-11 (D.D.C. March 14, 2007) (applying three part test and requiring disclosure). Obviously, because Ms. Wilson seeks only to disclose the specific information about her federal service dates already disclosed in CIA's indisputably authorized, official letter published in the January 16, 2007 Congressional Record (see attached email dated January 16, 2007 from Brian Bonlender to Valerie Wilson and excerpt from Congressional Record), all three criteria are plainly satisfied in this instance, and CIA has waived any possible bases for treating that information as "secret" information either subject to classification or reclassification.

J. Michael McConnell
Director of National Intelligence
April 27, 2007
Page 2

Furthermore, in order to conceal what CIA characterizes as merely an "administrative error," CIA's Acting General Counsel, John A. Rizzo, asserted in a letter to me this week that the Agency had reclassified – as of April 24, 2007 – the information it had previously disclosed in February 2006 (now published in Congressional Record) as "secret." However, the Executive Order governing classification of national security information, Exec. Order 12958, as amended by Exec. Order 13292, 68 Fed. Reg. 15315 ("Exec. Order 13292"), expressly prohibits the Agency from doing so under the circumstances presented here: CIA cannot seek to classify information to "conceal . . . administrative error," Exec. Order 13292 §1.7(a)(1), or to "prevent embarrassment to . . . [the] [A]gency." Exec. Order 13292 §1.7(a)(2). Nor can CIA assert that an "unauthorized disclosure" somehow entered the public domain without the Agency's full awareness because CIA's Chief, Retirement & Insurance Services had presumptive authority to prepare and mail the February 10, 2006 letter and CIA undeniably had knowledge of its contents. Given CIA's presumed expertise in handling classified information, it is indisputable that the Agency did not from the outset comply with its own mandatory procedures for designating or handling classified information with respect to the February 10, 2006 letter, *see* Exec. Order 13292 § 1.6, and knew *for almost a full year* that it had disclosed Ms. Wilson's federal service dates in unclassified and authorized form without taking any measures whatsoever to retrieve or protect that information.

As recently underscored in her sworn testimony before Congress, Ms. Wilson's 20 years of dedicated service to the United States ended prematurely when she was "outed" as an undercover officer by government officials entrusted to protect that information. Having deprived Ms. Wilson of her chosen career and our nation from the continued benefit of her years of training, certain officials within the Executive Branch may now be seeking to impair the American public's First Amendment right to know unclassified information about Ms. Wilson's government service prior to 2002. While we do not have sufficient information at this time to determine whether political pressure has been brought to bear for the purpose of punishing Ms. Wilson by delaying publication of her memoir or interfering with her ability to shape a narrative by demanding that she fictionalize known facts in the public domain, CIA's current position certainly has that practical effect. Whatever the motivation for CIA's conduct, DNI is statutorily empowered to correct such abuses as they occur.

While CIA's Director and its Acting General Counsel may be understandably embarrassed by the Agency's own unclassified disclosure of Ms. Wilson's dates of federal service, CIA is not above the law. Hence, despite the importance of its mission, CIA should not be permitted to undermine the very liberties that it exists to protect. Whether through bureaucratic ineptitude, or, more likely, a genuine belief by the senior CIA official who prepared the official disclosure that Ms. Wilson's dates of federal service were no longer classified, the legal analysis and outcome is the same: the February 10, 2006 letter was not an "unauthorized disclosure," *see* Exec. Order § 1.1(b), and by its conduct, CIA has effectively waived any argument that the information it released about Ms. Wilson's dates of service can now be

J. Michael McConnell
Director of National Intelligence
April 27, 2007
Page 3

properly classified. In any event, CIA's desire to conceal its embarrassment by silencing Ms. Wilson not only violates established law, it also defies logic and common sense. The ugh once a classified secret that justified criminal referral in 2003 for the unauthorized leak of her identity, friends and foes around the globe now know in 2007 that Valerie Plame Wilson was an undercover operative and that her employment by CIA began long ago.

    As Director of National Intelligence, you have broad authority to protect the institutional interests of the Intelligence Community. Similarly, you have the power to avoid bur ening the courts with a dispute that could be speedily resolved by overruling CIA's erroneous determination. And because of your oversight function and ultimate responsibility to prevent CIA from violating the First Amendment and other laws of the United States, it is the duty of the Director of National Intelligence to require that CIA's Director allow Ms. Wilson to reveal the start date and duration of her CIA employment and to rescind immediately CIA's un awful effort to reclassify information which its official acknowledgment caused to enter the public domain irretrievably.

    In considering this request for direct intervention by the DNI, please be assured that Ms. Wilson, a loyal former CIA officer, is not seeking *carte blanche* to discuss her entire government service or to reveal any classified information. For more than ten months, she has diligently worked with CIA's Publications Review Board ("PRB") to reach a reasonable resolution of any possible national security issues arising from her memoir. Nor does this matter involve any challenge to the Intelligence Community's recognized expertise and necessary discretion regarding its review of the manuscripts of former intelligence officers to prevent disclosure of any information that could possibly compromise national security. Rather, consistent with the law of the land, the public is entitled to know about Ms. Wilson's employment affiliation prior to 2002 because *CIA itself officially acknowledged and voluntarily disclosed that specific information in an unclassified letter on official CIA letterhead dated February 10, 2006, which was published by the Legislative Branch of the U.S. government in connection with pending legislation and is now irretrievably in the public domain.* Under this set of facts, Ms. Wilson and her New York-based publisher, Simon & Schuster, have a well recognized First Am ndment right to publish unclassified information about her life and a corresponding interest in ensuring that the Agency's pre-publication review process is reasonably structured to prevent publication only of *properly* classified material. *See Snepp v. United States,* 444 U.S. 507, 520 (1980) (Stevens, J., dissenting) (a fundamental public interest "lies in a proper accommodation that will preserve the intelligence mission of the Agency while not abridging the free flow of unclassified information"). *See also McGehee v. Casey,* 718 F.2d 1137, 1148 (D.C. Cir. 1983) (author has "strong [F]irst [A]mendment interest in ensuring that CIA censorship of his article results from a *proper* classification of the censored portions") (citing *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d. 1362, 1367 (4th Cir.) ("the deletion items should be suppressed only if they are found to be both classified and classifiable under the Executive Order"), *cert denied,* 421 U.S. 992, 9 S.Ct. 1999, 44 L.Ed.2d 482 (1975); *Stillman v. CIA,* 2007 U.S. Dist. LEXIS 24206 *13 n.4 (D.I .C. March

J. Michael McConnell
Director of National Intelligence
April 27, 2007
Page 4

30, 2007) ("Court recognizes, however, that any secrecy agreement which purports to prevent disclosure of unclassified information would contravene *First Amendment* rights" (ci ing *United States v. Marchetti*, 466 F.2d 1309, 1317 (4th Cir. 1972) ("We would decline enforce ment of the secrecy oath signed when he left the employment of the CIA to the extent that it purports to prevent disclosure of unclassified information, for, to that extent, the oath would be in contravention of his *First Amendment* rights.")).

   For your convenience in responding to our request for intervention by the DNI, the background of this First Amendment dispute is more fully set forth in the attached correspondence with CIA's Office of General Counsel between January 31, 2007 and April 24, 2007. Exhibits to those letters demonstrate that while the Agency had actual knowle lge of the existence in unclassified form (and its disclosure of) Valerie Wilson's deferred annu ty letter from at least February 10, 2006 through January 19, 2007, it took no steps whatsoev r for nearly a year to: (1) reclassify any information contained in the February 10, 2006 letter, (2) indicate any national security classification of the contents of the letter through proper marki g and redelivery of the letter, (3) retrieve the original letter, or (4) restrict in any way disse nination of the letter or any information contained therein. To the contrary, for approximately a full year, none of the measures set forth in Exec. Order 13292 applicable to the handling of "C lassified National Security Information" were undertaken by the Agency with respect to infor nation about Valerie Wilson's federal service as set forth in the February 10, 2006 letter. F r example, the Agency, as original classification authority, did not identify, mark, or describe a y aspect of that disclosure that "reasonably could be expected to result in damage to national se unity," as required by Exec. Order 13292 §1.6(5)(c).

   Only after the unclassified letter was in the possession of Congress for legisl tive purposes and in the public domain (because of publication in the Congressional Rec rd), did CIA first seek to assert that the letter contained purportedly classified information, a id that its disclosure had been an "administrative error."[2]  But in any event, given that the info mation disclosed in CIA's official correspondence was obviously not in classified form on I ebruary 10, 2006, and given that the Agency has no reasonable basis to establish any damage ca used to national security arising from the information it disclosed about Ms. Wilson's life as published in the Congressional Record on January 16, 2007, reclassification can only be undertal en if "the information may be reasonably recovered." Exec. Order 13292 §1.7(4)(c)(2). That simply cannot occur under the circumstances here because the specific information made p blic through an official and documented disclosure by the Agency is irretrievably in the possessi n of Congress through the legislative process and hence privileged from return to CIA p rsuant to the Speech and Debate Clause of the Constitution. *See* U.S. CONST. art. I, § 6, cl. 1. M reover, the

_____

   [2] The Agency began to assert for the first time on January 19, 2007 (three days *after* the Jar ary 16, 2007 publication of Ms. Wilson's deferred annuity letter in the Congressional Record) that CIA's disclosi e in unclassified form of specific information regarding her dates of federal service was merely an "adm uistrative error."

J. Michael McConnell
Director of National Intelligence
April 27, 2007
Page 5

CIA letter specifying Valerie Wilson's dates of federal service has been published in the Congressional Record and made available worldwide on the Internet via the Library of Congress THOMAS website. *See* http://www.thomas.gov. The Agency cannot therefore "reasonably recover" the letter or the information it has disclosed.

To reiterate, Ms. Wilson has worked diligently for months with PRB to fulfil her obligations to protect national security. Ms. Wilson is not seeking *carte blanche* to discuss her entire government service or to reveal any classified information, and she has scrupulously complied in every respect with her legal obligations. CIA also has an obligation to comply with the Constitution and laws of the United States with respect to disclosure of officially acknowledged information. This obligation extends to its legal duty to ensure that the Agency's pre-publication review process is reasonably structured to prevent publication only of properly classified materials. When CIA fails to do so, as has occurred here, the DNI can and should require prompt corrective action. Because of the First Amendment injury at stake in this matter, I will contact the Office of the Director of National Intelligence on Tuesday, May 1, 2007, through its General Counsel, Benjamin A. Powell, Esq., to follow up on this urgent request.

Sincerely,

David B. Smallman

Attachments
cc:     Sen. Dianne Feinstein
        Rep. Henry A. Waxman
        Benjamin A. Powell, Esq.
        Lisa E. Davis, Esq.

The following documents were attached to this letter [AR (Unclassified) Tab 31A]:

- [AR (Unclassified) Tab 27D] Email dated January 16, 2007 from Brian Bonlender to Valerie Wilson, attaching the following: February 10, 2006 redacted annuity letter; Valerie Plame Wilson Compensation Act; Floor Statement introducing the Valerie Plame Wilson Compensation Act

- [AR (Classified) Tab 8] Congressional Record

- [AR (Unclassified) Tab 27] April 17, 2007 letter from David B. Smallman to John Rizzo, with the following attachments: February 23, 2007 letter from R. Puhl to Valerie Wilson; February 23, 2007 letter from Ginger Wright to David B. Smallman; email dated January 16, 2007 from Brian Bonlender to Valerie Wilson (with the following attachments: February 10, 2006 redacted annuity letter; Valerie Plame Wilson Compensation Act; Inslee Remarks)

- [AR (Unclassified) Tab 29] April 24, 2007 letter from John Rizzo to David B. Smallman (with the following attachments: April 19, 2007 letter from R.Puhl to Valerie Wilson; February 10, 2006 redacted letter from Karen Tumolo to Valerie Wilson)

- [AR (Unclassified) Tab 20] January 31, 2007 letter from David B. Smallman to Ginger Wright (with the following attachments: January 22, 2007 fax from Ginger Wright to David B. Smallman of the January 19, 2007 letter from Karen Tumolo to Valerie Wilson; Library of Congress printout of Valerie Plame Wilson Compensation Act; Congressional Record)

- [AR (Unclassified) Tab 21] February 9, 2007 letter from Ginger Wright to David B. Smallman

- [AR (Unclassified) Tab 22] February 16, 2007 letter from David B. Smallman to Ginger Wright

**Tab 32**

# WOLLMUTH MAHER & DEUTSCH LLP

### 500 FIFTH AVENUE

### NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

**VIA FAX**                                     May 2, 2007
(202) 201-1198

Benjamin A. Powell, Esq.
General Counsel
Office of the Director of National Intelligence
Washington, D.C. 20505

Dear Mr. Powell:

I represent Valerie Plame Wilson and am writing in connection with CIA's pre-publication review of her memoir entitled "Fair Game" and to follow up on my April 27 letter to J. Michael McConnell ("April 27 Letter") regarding Mr. McConnell's statutory oversight authority, as the Director of National Intelligence ("DNI"), "to ensure compliance with the Constitution and laws of the United States by the Central Intelligence Agency . . . ." 50 U.S.C. § 403-1(f)(1)(B)(4).

My office confirmed your receipt of a copy of the April 27 Letter, with attachments, on Monday morning, April 30, 2007. In response to my request to schedule a telephone call regarding the matters addressed in the April 27 Letter, my office was informed that you were unavailable to speak with me this week, but that "an appropriate staff member" was reviewing the April 27 Letter. In response to a subsequent request for the name of the staff member to whom you had assigned the task of looking into the April 27 Letter, my office was informed that the name of the staff member could not be provided until the end of this week

I appreciate, as indicated by your staff, that there are many pressing demands at present upon your time and Mr. McConnell's time. Nevertheless, because of the First Amendment injury described in the April 27 Letter and the urgent nature of the request to Mr. McConnell set forth therein, a full week provides a sufficient time frame for your office and the DNI to review and respond appropriately to the April 27 Letter. With all due respect, any further delay in providing a proper response beyond that time would be unreasonable under the circumstances presented.

As more fully described in the April 27 Letter, Ms. Wilson has worked diligently for months with CIA's Publications Review Board to fulfill her obligations to protect national security. Ms. Wilson is not seeking *carte blanche* to discuss her entire government service or to reveal any classified information, and she has scrupulously complied in every respect with her legal obligations. CIA also has an obligation to comply with the Constitution and laws of the United States with respect to disclosure of officially acknowledged information. *Compare Wolf*

Benjamin A. Powell, Esq.
General Counsel
Office of the Director of National Intelligence
May 2, 2007
Page 2

*v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (explaining "official acknowledgment doctrine applied by federal courts) and *Peay v. DOJ*, No. 04-1859 (CKK), 2007 U.S. Dist. LE: IS 17586 *10-11 (D.D.C. March 14, 2007) (applying three part test and requiring disclosure) *wi h* "anuary 16, 2007 Cong. Rec. E118-E119 (Introduction of the Valerie Plame Wilson Compensation Act - Extensions of Remarks) (reprinting redacted annuity letter dated February 10, 2006 from CIA listing dates of Ms. Wilson's federal service) (visited May 2, 2007) <http://www.thoma s.gov>.

As stated in the April 27 Letter, CIA's obligation extends to its legal duty to ensure that the Agency's pre-publication review process is reasonably structured to prevent publication only of properly classified materials. When CIA fails to do so, as has occurred here, the DI I can and should require prompt corrective action.

I am available to speak with you at your convenience, and although I will be out of town for the rest of the week, can be reached at any time by cell phone (917.414.0182) or t rc igh my office during regular business hours (212.382.3300, ext. 349). If I do not receive a fu l response from your office or the DNI by 6 p.m. EDT on Friday, May 4, 2007, I will assum : :iat Mr. McConnell, in his official capacity as DNI, does not intend to take any action with res ect to the April 27 Letter. Ms. Wilson, of course, fully reserves all of her rights and re medies in connection with the matters addressed above.

Sincerely,

David B. Smallman

cc:     Lisa E. Davis, Esq.

**Tab 33**

OFFICE OF GENERAL COUNSEL
WASHINGTON, DC 20511

May 4, 2007

David B. Smallman, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
12th Floor
New York, NY 10110

Dear Mr. Smallman:

As I stated in my voice mail message to you earlier today, I am currently reviewing the extensive material that you faxed to this office regarding Ms. Wilson's desire to publish certain information pertaining to her service in the CIA in her memoir. I have been out of the office for the last two days and did not receive your subsequent fax seeking an immediate response from this office until this morning.

I have spoken with the General Counsel and you can be assured that your materials are receiving appropriate attention. However, your request for a "full response" from this office by close of business today is entirely unreasonable. This matter remains under review and it would not be appropriate for you to make any assumptions regarding actions of the Office of the Director of National Intelligence at this time.

Sincerely,

Tricia S. Wellman
Associate General Counsel

**Tab 34**

# WOLLMUTH MAHER & DEUTSCH LLP

## 500 FIFTH AVENUE

## NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

VIA FAX                                    May 4, 2007
(202) 201-1198

Tricia S. Wellman, Esq.
Associate General Counsel
Office of the Director of National Intelligence
Office of General Counsel
Washington, D.C. 20511

Dear Ms. Wellman:

I have received your May 4, 2007 letter. While I disagree with your assertion that it would be unreasonable to expect a full response today to the letter received by Mr. McConnell a week ago, I do understand that you were out of your office for the past two days and did not have the opportunity to review my May 2, 2007 letter to Mr. Powell until this morning. Based upon the representations in your letter and the assurance that the matters raised in my April 27, 2007 and May 2, 2007 letters remain under review by the Office of General Counsel, I will follow up with you regarding those matters on Tuesday, May 8th.

                          Sincerely,

                          David B. Smallman / MB

                          David B. Smallman

cc: Lisa E. Davis, Esq.

**Tab 35**

# WOLLMUTH MAHER & DEUTSCH LLP

### 500 FIFTH AVENUE

### NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

<u>VIA FAX</u>                                    May 11, 2007
(202) 201-1198

Tricia S. Wellman, Esq.
Associate General Counsel
Office of the Director of National Intelligence
Office of General Counsel
Washington, D.C. 20511

> Re:    <u>Prior Restraint of Publication of Valerie Plame Wilson's Memoir</u>

Dear Ms. Wellman:

Following our telephone call on Wednesday, May 9, we agreed to speak again on Friday, May 11. Today, I attempted twice to contact you by telephone at your office, first at approximately noon, then again at about 4 p.m. Both times, I left voicemail messages requesting that you contact me today. My initial message also noted that the Director of National Intelligence ("DNI") has an obligation to act promptly to approve or disapprove the request for his intervention in the pending dispute with CIA, as described in my letters dated April 27, 2007 and May 2, 2007 to Mr. McConnell and Mr. Powell, respectively. Neither call was returned during regular business hours. As of 9:45 p.m. this evening, I still have not received any response from you or anyone at the Office of the Director of National Intelligence ("ODNI").

During our May 9 telephone call, you informed me that matters addressed in the aforementioned letters "remain under review" by the Office of General Counsel. When I inquired about the timeframe for completion of the review, you could not provide me with any specific time limit and said that you would contact me when the review was completed. I stated to you that while I understood that DNI needed a reasonable opportunity to review the request, ODNI's review could not be open ended or continue indefinitely because of the ongoing prior restraint at issue, and that my clients would be obligated to take appropriate measures in the event a timely determination could not be reached. You stated that you understood.

As of this evening, May 11, it has been a full two weeks from the date the DNI received my April 27, 2007 letter requesting review of CIA's conduct in violation of the First Amendment. In the absence of a specific and reasonable time limit on official decision making regarding DNI's oversight role pursuant to 50 U.S.C. § 403-1(f)(1)(B)(4), and given the objectively reasonable amount of time your office has had to review the materials received under the circumstances presented, further delay would impermissibly provide DNI with essentially unreviewable authority to suppress speech arising from CIA's content-based, unconstitutional prior restraint of officially acknowledged information in the public domain. *See, e.g., United*

Tricia S. Wellman, Esq.
Associate General Counsel
May 11, 2007
Page 2

*States v. Marchetti*, 466 F.2d 1309, 1317 (4th Cir. 1972) ("CIA must act promptly to approve or disapprove any material which may be submitted to it . . . . Undue delay would impair the reasonableness of the restraint, and that reasonableness is to be maintained if the restraint is to be enforced"); *United States v. Quattrone*, 402 F.23d 304, 310 n.5 (2d Cir. 2005) ("Governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated"). *Cf. Beal v. Macdonald*, 184 F.3d 117, 127-298 2d Cir. 1999) ("prior restraint schemes that fail to place specific and reasonable time limits on official decisionmaking and to provide for prompt judicial review of adverse decisions are impermissible") (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 228, 107 L. Ed. 2d 503, 110 S. Ct. 596 (1990) and *Freedman v. Maryland*, 380 U.S. 51, 58-59, 13 L. 3d. 2d 649, 85 S. Ct. 734 (1965)).

As Director of National Intelligence, Mr. McConnell has broad authority to protect the institutional interests of the Intelligence Community. CIA has an obligation to comply with the Constitution and laws of the United States with respect to disclosure of officially acknowledged information. This obligation extends to its legal duty to ensure that the Agency's pre-publication review process is reasonably structured to prevent publication only of properly classified materials. When CIA fails to do so, as occurred in connection with Valerie Wilson's manuscript, the DNI can and should require prompt corrective action.

Because of DNI's oversight function and ultimate responsibility to prevent CIA from violating the First Amendment and other laws of the United States, it was the duty of the DNI to require that CIA and its Director, General Hayden, allow Valerie Wilson and Simon & Schuster to publish the start date and duration of her CIA employment previously disclosed by the Agency and to rescind immediately CIA's unlawful effort to classify or reclassify information which its official acknowledgment caused to enter the public domain irretrievably. By letter dated April 27, 2007, Valerie Wilson, through her counsel, requested that Mr. McConnell, in his official capacity as DNI, overrule CIA's erroneous determination. To date, Mr. McConnell has declined to do so, and has therefore failed to carry out DNI's legal obligation to ensure CIA's compliance with the Constitution and laws of the United States.

Please contact me at 917.414.0182 if you wish to discuss this letter.

Sincerely,

David B. Smallman

cc:  Lisa E. Davis, Esq.

**Tab 36**

# CENTRAL INTELLIGENCE AGENCY

**WASHINGTON, D.C. 20505**

Office of General Counsel

17 May 2007

David B. Smallman, Esq.
Wollmuth, Maher & Deutsch LLP
500 Fifth Avenue
12th Floor
New York, NY  10110

Dear Mr. Smallman:

I have received your letter of 27 April 2007 along with a copy of your letter to J. Michael McConnell, Director of National Intelligence.

We disagree with your characterization of the contents of my letter of 24 April 2007 as erroneous and self-serving.  We also disagree with your assertions that the 19 April 2007 letter from the Agency's Publications Review Board (PRB) to Ms. Wilson contained self-serving mischaracterizations of fact and erroneous conclusions of law.

We remain hopeful that should Ms. Wilson respond to the PRB's 19 April 2007 letter, as you indicated that she plans to do, she will work with the PRB to ensure that she takes the appropriate steps to protect classified information.  We also expect that Ms. Wilson will fulfill her legal obligation to protect classified information by returning to the CIA the 10 February 2006 letter mistakenly sent to her along with any copies of the letter that she retains.

Sincerely,

John A. Rizzo



Central Intelligence Agency
Office of General Counsel
Washington, DC  20505

*18 May 2007*

| | |
|---|---|
| *To:* | David B. Smallman, Esq. |
| *Organization:* | Wollmuth, Maher & Deutsch LLP |
| *Phone:* | 212-382-3300 |
| *Fax:* | 212-382-0050 |
| *Subject:* | Response to Your 27 April 2007 Letter |
| *From:* | John A. Rizzo<br>Associate General Counsel |
| *Organization:* | CIA/Office of General Counsel |
| *Phone:* | 703-482-1951 |
| *Fax:* | 703-482-1959 |

Number of Pages (*Including Cover*)    ☐ 2 ☐

Case 1:07-cv-04595-BSJ Transmission Result Report Filed 06/28/2007 18:27 Page 93 of 121
CIA/OGC

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••• (AUTO) ••••••••••••••••••

THE FOLLOWING FILE(S) ERASED

| FILE | FILE TYPE | OPTION | TEL. NO. | PAGE | RESULT |
|------|-----------|--------|----------|------|--------|
| 044 | TRANSMISSION | | 912123820050 | 02 | OK |

ERRORS

1) HANG UP OR LINE FAIL    2) BUSY    3) NO ANSWER    4) NO FACSIMILE CONNECTION

**Tab 37**

# WOLLMUTH MAHER & DEUTSCH LLP

### 500 FIFTH AVENUE

### NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

<u>VIA FAX</u>                          May 17, 2007
(202) 201-1198

Tricia S. Wellman, Esq.
Associate General Counsel
Office of the Director of National Intelligence
Office of General Counsel
Washington, D.C. 20511

> Re:   <u>Prior Restraint of Publication of Valerie Plame Wilson's Memoir</u>

Dear Ms. Wellman:

Following our telephone call on Monday, May 14, we agreed to speak again on Wednesday, May 16. During that call, I also requested a specific timeframe for a response from the DNI to our pending request, but you would not provide one. I attempted to reach you by telephone at your office yesterday at approximately 6 p.m. I left a voicemail message requesting that you contact me on my cell phone to let me know whether a response was available to the prior communications delivered to your office.

I again attempted to reach you by telephone today, but as of 2:30 pm, Thursday May 17, I have not received a response to my telephone calls on Wednesday or today, or to the request received by the DNI on April 27, 2007. The DNI has the authority to protect the institutional interests of the Intelligence Community. CIA has an obligation to comply with the Constitution and laws of the United States with respect to disclosure of officially acknowledged information. This obligation extends to its legal duty to ensure that the Agency's pre-publication review process is reasonably structured to prevent publication only of properly classified materials. When CIA fails to do so, as occurred in connection with Valerie Wilson's manuscript, the DNI can and should require prompt corrective action.

I am disappointed that the DNI has repeatedly declined to provide a specific timeframe for a response to the April 27, 2007 request, and, to date, has also declined to provide a substantive response to the April 27, 2007 request and my subsequent letter to Mr. Powel. Because the DNI has failed to carry out his legal obligation to ensure CIA's compliance with the Constitution and laws of the United States, Valerie Wilson and her publisher fully reserve their rights to pursue any available rights and remedies they may have under applicable law.

> Sincerely,
>
> David B. Smallman/ms
>
> David B. Smallman

cc:    Elisa M. Rivlin, Esq.
       Lisa E. Davis, Esq.

**Tab 38**

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
GENERAL COUNSEL
WASHINGTON, DC 20511

May 18, 2007

David B. Smallman, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
12th Floor
New York, NY 10110

Dear Mr. Smallman:

This responds to your 27 April 2007 letter to the Director of National Intelligence (DNI) regarding the classification status of the 10 February 2006 letter from the CIA to your client, Valerie Plame Wilson. The DNI has asked me to respond to you on his behalf.

Based on a review of the extensive materials that you provided with your 27 April letter, as well as discussions with the CIA, we concur with the CIA's classification determination regarding this letter.

As you know, the CIA's Publications Review Board (PRB) has identified for Ms. Wilson the information that would have to be deleted from her manuscript in order to render the manuscript unclassified. The PRB has advised Ms. Wilson of its availability to discuss with her the ways in which she could modify the deleted text or use it in other contexts so as to not reveal classified information. The PRB remains available to discuss these alternative approaches with Ms. Wilson. We strongly encourage you and Ms. Wilson to continue to work with the PRB to meet her needs while respecting her continuing obligation to protect classified information.

Sincerely,

Benjamin A. Powell

**Tab 39**

ADMINISTRATIVE - INTERNAL USE ONLY

**Date:** 07/22/2005

**Category:** ▮ - Public Affairs    **OPR:** ▮

**Title:** ▮▮▮    (U) AGENCY PREPUBLICATION REVIEW OF CERTAIN MATERIAL PREPARED FOR PUBLIC DISSEMINATION



This regulation was written by ▮▮▮▮▮▮▮ ▮▮▮▮.

## 2. AGENCY PREPUBLICATION REVIEW OF CERTAIN MATERIAL PREPARED FOR PUBLIC DISSEMINATION

**SYNOPSIS: This regulation sets forth CIA polices and procedures for the submission and review of material proposed for publication or public dissemination by current and former employees and contractors and other individuals obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contact with the CIA. This regulation applies to all forms of dissemination, whether in written, oral, electronic, or other forms, and whether intended to be an official or nonofficial (that is, personal) publication.**

## a. AUTHORITY

The National Security Act of 1947, as amended, the CIA Act of 1949, as amended, and Executive Order 12333 require the protection of intelligence sources and methods from unauthorized disclosure. Executive Order 12958, as amended, requires protection of classified information from unauthorized disclosure. 18 U.S.C. section 209 prohibits a federal employee from supplementation of salary from any source other than the U.S. Government as compensation for activities related to the employee's service as a Government employee. The *Standards of Ethical Conduct for Employees of the Executive Branch* (5 C.F.R. 2635) are the Government-wide ethics regulations that govern Federal employees. Those regulations include restrictions on outside activities and compensation for teaching, speaking, and writing related to official duties. In Snepp v. U.S., 444 U.S. 507 (1980), the Supreme Court held that individuals who have been authorized access to CIA information the public disclosure of which could harm the national security hold positions of special trust and have fiduciary obligations to protect such information. These obligations are reflected in this regulation and in CIA secrecy agreements.

## b. GENERAL REQUIREMENTS AND DEFINITIONS

(1) The CIA requires all current and former Agency employees and contractors, and others who are obligated by CIA secrecy agreement, to submit for prepublication review to the CIA's Publications Review Board (PRB) all intelligence-related materials intended for publication or public dissemination, whether they will be communicated in writing, speeches, or any other method; and whether they are officially sanctioned or represent personal expressions, except as noted below.

(2) The purpose of prepublication review is to ensure that information damaging to the national security is not disclosed inadvertently; and, for current employees and contractors, to ensure that neither the author's performance of duties, the Agency's mission, nor the foreign relations or security of the U.S. are adversely affected by publication.

(3) The prepublication review requirement does not apply to material that is unrelated to intelligence, foreign relations, or CIA employment or contract matters (for example, material that relates to cooking, stamp collecting, sports, fraternal organizations, and so forth).

(4) Agency approval for publication of nonofficial, personal works (including those of current and former employees and contractors and covered non-Agency personnel) does not represent Agency endorsement or verification of, or agreement with, such works. Therefore, consistent with cover status, authors are required, unless waived in writing by the PRB, to publish the following disclaimer:

"All statements of fact, opinion, or analysis expressed are those of the author and do not reflect the official positions or views of the Central Intelligence Agency (CIA) or any other U.S. Government agency. Nothing in the contents should be construed as asserting or implying U.S. Government authentication of information or CIA endorsement of the

author's views. This material has been reviewed by the CIA to prevent the disclosure of classified information."

(5) Those who are speaking in a nonofficial capacity must state at the beginning of their remarks or interview that their views do not necessarily reflect the official views of the CIA.

(6) A nonofficial or personal publication is a work by anyone who has signed a CIA secrecy agreement (including a current or former employee or contractor), who has prepared the work as a private individual and who is not acting in an official capacity for the Government.

(7) An official publication is a work by anyone who has signed a CIA secrecy agreement, (including a current employee or contractor), such as an article, monograph, or speech, that is intended to be unclassified and is prepared as part of their official duties as a Government employee or contractor acting in an official capacity.

(8) "Publication" or "public dissemination" in this context means:
   (a) for nonofficial (that is, personal) works -- communicating information to one or more persons; and
   (b) for official works - communicating information in an unclassified manner where that information is intended, or is likely to be, disseminated to the public or the media.

(9) Covered non-Agency personnel means individuals who are obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contact with the CIA.

## c. THE PUBLICATIONS REVIEW BOARD

(1) The PRB is the Agency body charged with reviewing, coordinating, and formally approving in writing all proposed nonofficial, personal publications that are submitted for prepublication. It is also responsible for coordinating the official release of certain unclassified Agency information to the public. The Board consists of a Chair and an Executive Secretary -- designated by and reporting directly to the Chief, Information Management Services (IMS) – with the rest of the Board membership composed of senior representatives from the Director of CIA Area, the Directorate of Operations (DO), the Directorate of Support, the Directorate of Science and Technology, the Directorate of Intelligence, the Security Center, and the DO's Global Deployment Center, who are designated by the appropriate Deputy Director, or Operating Official with C/IMS concurrence. The Office of General Counsel (OGC) provides a nonvoting legal advisor.

(2) The PRB shall adopt and implement all lawful measures to prevent the publication of information that could damage the national security or foreign relations of the U.S. or adversely affect the CIA's functions or the author's performance of duties, and to ensure that individuals given access to classified information understand and comply with their contractual obligations not to disclose it. When the PRB reviews submissions that

involve the equities of any other agency, the PRB shall coordinate its review with the equity owning agency.

(3) The PRB Chair is authorized unilaterally to represent the Board when disclosure of submitted material so clearly would not harm national security that additional review is unnecessary or when time constraints or other unusual circumstances make it impractical or impossible to convene or consult with the Board. The Chair may also determine that the subject of the material is so narrow or technical that only certain Board members need to be consulted.



### d. CONTACTING THE PRB

(1) <u>Former employees and contractors and other covered non-Agency personnel</u> must submit covered nonofficial (personal) materials intended for publication or public dissemination to the PRB by mail, fax, or electronically as follows:



(2) <u>Current employees and contractors</u> must submit covered nonofficial and official materials intended for publication or public dissemination to the PRB by mail, fax, or electronically as follows:

Internal Mail: ███████████████████

Classified Facsimile: ███████████████

Email: ████████████████

Secure Phone: ████████

(3) <u>Current employees and contractors intending to publish or speak on a nonofficial, personal basis</u> must also complete and submit to the PRB an electronic cover memorandum identifying their immediate supervisor or contracting officer. The PRB will notify the appropriate Agency manager or contracting officer, whose concurrence is necessary for publication.

(4) <u>Review Timelines</u>. As a general rule, the PRB will complete prepublication review for nonofficial publications within 30 days of receipt of the material. Relatively short, time-sensitive submissions (for example, op-ed pieces, letters to the editor, and so forth) will be handled as expeditiously as practicable. Lengthy or complex submissions may require a longer period of time for review, especially if they involve intelligence sources and methods issues. Authors are strongly encouraged to submit drafts of completed works, rather than chapters or portions of such works.

e. **WHAT IS COVERED**

(1) <u>Types of Materials</u>. The prepublication review obligation applies to any written, oral, electronic, or other presentation intended for publication or public dissemination, whether personal or official, that mentions CIA or intelligence data or activities or material on any subject about which the author has had access to classified information in the course of his employment or other contact with the Agency. The obligation includes, but is not limited to, works of fiction; books; newspaper columns; academic journal articles; magazine articles; resumes or biographical information on Agency employees (submission to the PRB is the exclusive procedure for obtaining approval of proposed resume text); draft *Studies in Intelligence* submissions (whenever the author is informed by the *Studies* editor that the draft article is suitable for *Studies* Editorial Board review); letters to the editor; book reviews; pamphlets; scholarly papers; scripts; screenplays; Internet blogs, e-mails, or other writings; outlines of oral presentations; speeches; or testimony prepared for a Federal or state or local executive, legislative, judicial, or administrative entity; and Officers in Residence speeches and publications (although oral and written materials prepared by OIRs exclusively for their classroom instructional purposes are not covered, OIRs must take particular care to ensure that any anecdotes or other classroom discussions of their Agency experiences do not inadvertently reveal classified information). Materials created for submission to the Inspector General and/or the Congress under the Whistleblower Protection Act and CIA implementing regulations

are nonofficial, personal documents when they are initially created and the author is entitled to seek a review by the PRB to determine if the materials contain classified information and, if so, the appropriate level of classification of the information. If, at any point during or after the whistleblower process, the author wishes to disseminate his whistleblower complaint to the public, the author must submit his complaint to the PRB for full prepublication review under this regulation. If the author is a current employee or contractor who intends to disseminate his whistleblower complaint to the public, the author must also obtain PRB review of his materials under paragraph g below.

(2) Review of Draft Documents. Written materials of a nonofficial, personal nature covered by the regulation must be submitted to the PRB at each stage of their development before being circulated to publishers, editors, literary agents, coauthors, ghost writers, reviewers, or the public (that is, anyone who does not have the requisite clearance and need-to-know to see information that has not yet been reviewed, but may be classified). This prepublication review requirement is intended to prevent comparison of different versions of such material, which would reveal the items that the Agency has deleted. For this reason, PRB review of the material only after it has been submitted to publishers, reviewers, or other outside parties violates the author's prepublication review obligation. The Agency reserves the right to conduct a post-publication review of any such material in order to take necessary protective action to mitigate damage caused by such a disclosure. Such post-publication review and action does not preclude the U.S. Government or the CIA from exercising any other legal rights otherwise available as a result of this prepublication violation. Additionally, the Agency reserves the right to require the destruction or return to CIA of classified information found to have been included in earlier versions of a work regardless of the form of the media involved (for example, paper, floppy disk, hard disk, or other electronic storage methods).

(3) Public Presentations:

   (a) With respect to current and former employees and contractors and covered non-Agency personnel making intelligence-related speeches, media interviews, or testimony, they must submit all notes, outlines, or any tangible preparatory material to the PRB for review. Where no written material has been prepared specifically in contemplation of the speech, interview, or oral testimony, the individual must contact the PRB Chair or his representative to provide a summary of any and all topics that it is reasonable to assume may be discussed, and points that will or may be made. Unprepared or unrehearsed oral statements do not exempt an individual from possible criminal liability in the event they involve an unauthorized disclosure of classified information.

   (b) In addition, with respect to current employees and contractors making official or nonofficial oral intelligence-related statements to the media or to groups where the media will likely be in attendance, prior to granting interviews or making public appearances, the speaker shall contact the PRB for guidance. The PRB will coordinate the review of proposed speeches or media interviews with the component involved, the Office of Public Affairs for guidance regarding media or press relations, and other offices as necessary.

(c) <u>Current employees</u> who must make court appearances or respond to subpoenas must contact OGC for guidance.

(4) <u>Official Publications</u>. The publication or public dissemination of official Agency information by any means, including electronic transmissions, such as Internet and unclassified facsimile, is subject to prepublication review. In addition to the types of materials listed in paragraph e(1) above, official publications subject to this review include unclassified monographs; organizational charts; brochures; booklets; flyers; posters; advertisements; films; slides; videotapes; or other issuances, irrespective of physical media such as paper, film, magnetic, optical, or electronic, that mention CIA or intelligence data or activities or material on any subject about which the author has had access to classified information in the course of his employment or other association with the Agency.



(6) <u>Additional PRB Guidance</u>. It is not possible to anticipate all questions that may arise about which materials require prepublication review. Therefore, it is the author's obligation to seek guidance from the PRB on all prepublication review issues not explicitly covered by this regulation.

## f.  PREPUBLICATION REVIEW GUIDELINES FOR FORMER EMPLOYEES AND CONTRACTORS, AND COVERED NON-AGENCY PERSONNEL

(1) All material proposed for publication or public dissemination must be submitted to the PRB Chair, as described in paragraph d(1) above. The PRB Chair will have the responsibility for the review, coordination, and formal approval in writing of submissions in coordination with appropriate Board members.

(2) The PRB will review material proposed for publication or public dissemination solely to determine whether it contains any classified information. Permission to publish will not be denied solely because the material may be embarrassing to or critical of the Agency. Former employees, contractors, or non-Agency personnel must obtain the written approval of the PRB prior to publication.

(3) When it is contemplated that a co-author who has not signed a CIA secrecy agreement will contribute to a publication subject to prepublication review, the final version of the publication must clearly identify those portions of the publication that were authored by the individual subject to the secrecy agreement. Where there is any ambiguity concerning which individual wrote a section, and the section was not submitted for review, the Agency reserves the right to consider the section to be entirely written by the individual subject to the secrecy agreement and therefore in violation of the individual's prepublication review obligations.

(4) When otherwise classified information is also available independently in open sources and can be cited by the author, the PRB will consider that fact in making its determination on whether that information may be published with the appropriate citations. Nevertheless, the Agency retains the right to disallow certain open-source information or citations where, because of the author's Agency affiliation or position, the reference might confirm the classified content.





### h. APPEALS

(1) If the PRB denies all or part of a proposed nonofficial publication, the author may submit additional material in support of publication and request reconsideration by the PRB. In the event the PRB denies the request for reconsideration, the author may appeal. PRB decisions involving nonofficial publications may be appealed to the Executive Director (EXDIR) within 30 days of the decision. Such an appeal must be in writing and must be sent to the PRB Chair. Appeal documentation must include the material intended for publication and any supporting materials the appealing party wishes the EXDIR to consider. The PRB Chair will forward the appeal and relevant documentation through the components that objected to publication of the writing or other product at issue. The Deputy Director or Head of Independent Office will affirm or recommend revision of the

decision affecting his or her component's equities and will forward that recommendation to OGC. OGC will review the recommendations for legal sufficiency and will make a recommendation to the EXDIR for a final Agency decision. The PRB Chair is responsible for staff support to the EXDIR. The EXDIR will render a written final decision on the appeal. Best efforts will be made to complete the appeal process within 30 days from the date the appeal is submitted.

(2) This regulation is intended to provide direction and guidance for those persons who have prepublication review obligations and those who review material submitted for nonofficial or official publication. Nothing contained in this regulation or in any practice or procedure that implements this regulation is intended to confer, or does confer, any substantive or procedural right or privilege on any person or organization beyond that expressly stated herein.

### i. BREACH OF SECRECY AGREEMENT

Failure to comply with prepublication review obligations can result in the imposition of civil penalties or damages. When the PRB becomes aware of a potential violation of a CIA secrecy agreement, it will notify OGC and the Security Center. After Security Center review and investigation of the case is completed, if further action is deemed warranted, the Security Center will refer the matter to OGC, which will report all potentially criminal conduct to the Department of Justice (DoJ) and consult with DoJ regarding any civil remedies that may be pursued.

/s/
Porter J. Goss
Director of the Central Intelligence Agency

**Tab 40**

ADMINISTRATIVE - INTERNAL USE ONLY

**Date:**  06/03/97

**Category:** ██ Information and Records Management    **OPR:** ██

**Title:** ████████████████ DECLASSIFICATION
AUTHORITIES

████████████████████████████████████

████████████████████████████████████████████████████████

*This regulation was written* ████████████████████████████

### DECLASSIFICATION AUTHORITIES

In addition to the Director of Central Intelligence, the Agency officials listed below are delegated declassification authority.  All previous delegations of declassification authority are hereby rescinded.

████████████████████████████████████████████████

| | | |
|---|---|---|
| Chief, ▇▇ Support Division | ▇▇▇ | Top Secret |
| Chief, ▇▇▇ Training Center | ▇▇▇ | Top Secret |
| Chief, Information, Privacy and Classification Review Division | ▇▇ | Top Secret |
| Chief, Records Declassification Program (RDP) | TBD | Top Secret |
| Deputy Chief, RDP | TBD | Top Secret |

### DA (Continued)

| | | |
|---|---|---|
| Chief, DA Team, RDP | TBD | Top Secret |
| Chief, DI Team, RDP | TBD | Top Secret |
| Chief, DST Team, RDP | TBD | Top Secret |
| Chief, DO Team, RDP | TBD | Top Secret |
| Member, DO Team, RDP | TBD | Top Secret |
| Chief, ▇▇▇▇ Unit, RDP | TBD | Top Secret |
| Chief, ▇▇ Branch, RDP | TBD | Top Secret |





**DA**

| Position Title | Position Number | Declassification Level |
|---|---|---|
| Deputy Director for Administration | ■■■■ | Top Secret |
| Associate Deputy Director for Administration | ■■■■ | Top Secret |
| Associate Deputy Director for Administration for Information Services | ■■■■ | Top Secret |
| Director of Information Management | ■■■■ | Top Secret |
| Information Review Officer | ■■■■ | Top Secret |











_/s/_
Acting Director of Central Intelligence

# Tab 41



## SECURITY REGULATIONS CERTIFICATION

Date ███████████

I CERTIFY THAT I HAVE READ THE SECURITY REGULA-
TIONS MANUAL OF THE CENTRAL INTELLIGENCE AGENCY.
I UNDERSTAND THESE REGULATIONS AND WILL ABIDE BY
THEIR PROVISIONS.

*Valerie E. Plame*
Signature

*Valerie E. Plame*
NAME (typed or printed)

FORM
6-63   2108                                                    (4-12)

1. I, **Valerie Elise Plame** (print full name), hereby agree to accept as a prior condition of my being employed by, or otherwise retained to perform services for, the Central Intelligence Agency, or for staff elements of the Director of Central Intelligence (hereinafter collectively referred to as the "Central Intelligence Agency"), the obligations contained in this agreement.

2. I understand that in the course of my employment or other service with the Central Intelligence Agency I may be given access to information which is classified in accordance with the standards set forth in Executive Order 12356 as amended or superseded, or other applicable Executive Order, and other information which, if disclosed in an unauthorized manner, would jeopardize intelligence activities of the United States Government. I accept that by being granted access to such information I will be placed in a position of special confidence and trust and become obligated to protect the information from unauthorized disclosure.

3. In consideration for being employed or otherwise retained to provide services to the Central Intelligence Agency, I hereby agree that I will never disclose in any form or any manner any of the following categories of information or materials, to any person not authorized by the Central Intelligence Agency to receive them:

    a. information which is classified pursuant to Executive Order and which I have obtained during the course of my employment or other service with the Central Intelligence Agency;

    b. information, or materials which reveal information, classifiable pursuant to Executive Order and obtained by me in the course of my employment or other service with the Central Intelligence Agency.

4. I understand that the burden will be upon me to learn whether information or materials within my control are considered by the Central Intelligence Agency to fit the descriptions set forth in paragraph 3, and whom the Agency has authorized to receive it.

5. As a further condition of the special confidence and trust reposed in me by the Central Intelligence Agency, I hereby agree to submit for review by the Central Intelligence Agency all information or materials including works of fiction which contain any mention of intelligence data or activities, or contain data which may be based upon information classified pursuant to Executive Order, which I contemplate disclosing publicly or which I have actually prepared for public disclosure, either during my employment or other service with the Central Intelligence Agency or at any time thereafter, prior to discussing it with or showing it to anyone who is not authorized to have access to it. I further agree that I will not take any steps toward public disclosure until I have received written permission to do so from the Central Intelligence Agency.

6. I understand that the purpose of the review described in paragraph 5 is to give the Central Intelligence Agency an opportunity to determine whether the information or materials which I contemplate disclosing publicly contain any information which I have agreed not to disclose. I further understand that the Agency will act upon the materials I submit and make a response to me within a reasonable time. I further understand that if I dispute the Agency's initial classification determinations on the basis that the information in question derives from public sources, I may be called upon to specifically identify such sources. My failure or refusal to do so may by itself result in denial of permission to publish or otherwise disclose the information in dispute.

7. I understand that all information or materials which I may acquire in the course of my employment or other service with the Central Intelligence Agency which fit the descriptions set forth in paragraph 3 of this agreement are and will remain the property of the United States Government. I agree to surrender all materials reflecting such information which may have come into my possession or for which I am responsible because of my employment or other service with the Central Intelligence Agency, upon demand by an appropriate official of the Central Intelligence Agency, or upon the conclusion of my employment or other service with the Central Intelligence Agency.

8. I agree to notify the Central Intelligence Agency immediately in the event that I am called upon by judicial or congressional authorities to testify about, or provide, information which I have agreed herein not to disclose.

9. I understand that nothing contained in this agreement prohibits me from reporting intelligence activities which I consider to be unlawful or improper directly to the Intelligence Oversight Board established by the President or to any successor body which the President may establish. I recognize that there are also established procedures for bringing such matters to the attention of the Agency's Inspector General or to the Director of Central Intelligence. I further understand that any information which I may report to the Intelligence Oversight Board continues to be subject to this agreement for all other purposes and that such reporting does not constitute public disclosure or declassification of that information.

FORM 1-83    **368**    OBSOLETE PREVIOUS EDITIONS

10. I understand that any breach of this agreement by me may result in the Central Intelligence Agency taking administrative action against me, which can include temporary loss of or termination of my employment or other service with the Central Intelligence Agency. I also understand that if I violate the terms of this agreement, the United States Government may institute a civil proceeding to seek compensatory damages or other appropriate relief. Further, I understand that the disclosure of information which I have agreed herein not to disclose can, in some circumstances, constitute a criminal offense.

11. I understand that the United States Government may, prior to any unauthorized disclosure which is threatened by me, choose to apply to any appropriate court for an order enforcing this agreement. Nothing in this agreement constitutes a waiver on the part of the United States to institute a civil or criminal proceeding for any breach of this agreement by me. Nothing in this agreement constitutes a waiver on my part of any possible defenses I may have in connection with either civil or criminal proceedings which may be brought against me.

12. In addition to any other remedy to which the United States Government may become entitled, I hereby assign to the United States Government all rights, title, and interest in any and all royalties, remunerations, and emoluments that have resulted or will result or may result from any divulgence, publication or revelation of information by me which is carried out in breach of paragraph 5 of this agreement or which involves information prohibited from disclosure by the terms of this agreement.

13. I understand and accept that, unless I am provided a written release from this agreement or any portion of it by the Director of Central Intelligence or the Director's representative, all the conditions and obligations accepted by me in this agreement apply both during my employment or other service with the Central Intelligence Agency, and at all times thereafter.

14. I understand that the purpose of this agreement is to implement the responsibilities of the Director of Central Intelligence, particularly the responsibility to protect intelligence sources and methods, as specified in the National Security Act of 1947, as amended.

15. I understand that nothing in this agreement limits or otherwise affects provisions of criminal or other laws protecting classified or intelligence information, including provisions of the espionage laws (sections 793, 794 and 798 of Title 18, United States Code) and provisions of the Intelligence Identities Protection Act of 1982 (P. L. 97-200; 50 U. S. C., 421 et seq).

16. Each of the numbered paragraphs and lettered subparagraphs of this agreement is severable. If a court should find any of the paragraphs or subparagraphs of this agreement to be unenforceable. I understand that all remaining provisions continue in full force.

17. I make this agreement in good faith, and with no purpose of evasion.

_Valerie E. Plame_
Signature

[ ]
Date

The execution of this agreement was witnessed by the undersigned, who accepted it on behalf of the Central Intelligence Agency as a prior condition of the employment or other service of the person whose signature appears above.

WITNESS AND ACCEPTANCE:

[ ]
Signature

[ ]
Printed Name

[ ]