# Exhibit A



MAY 3 1 2007
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

VALERIE PLAME WILSON;
SIMON & SCHUSTER, INC.,

    Plaintiffs,

    v.

J. MICHAEL MCCONNELL,
IN HIS OFFICIAL CAPACITY AS DIRECTOR
OF NATIONAL INTELLIGENCE;
CENTRAL INTELLIGENCE AGENCY;
GEN. MICHAEL V. HAYDEN, IN HIS
OFFICIAL CAPACITY AS DIRECTOR OF
CENTRAL INTELLIGENCE AGENCY,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**JUDGE JONES**

**'07 CIV 4595**

Civil Action No:

**COMPLAINT FOR**
**DECLARATORY**
**AND INJUNCTIVE RELIEF**

## PRELIMINARY STATEMENT

1.    This is an action by Valerie Plame Wilson and Simon & Schuster, Inc., the publisher of Ms. Wilson's forthcoming memoir entitled "Fair Game" (the "Manuscript" or "Memoir"), seeking a declaratory judgment that the Executive Branch of government cannot restrain publication of previously unclassified or currently unclassifiable information documenting Ms. Wilson's dates of federal service disclosed in 2006 by the Central Intelligence Agency ("CIA") in an official, authorized, and unclassified letter now in the Congressional Record and available world-wide on the Library of Congress website.

2.    Valerie Wilson's decades of dedicated service to the United States ended prematurely when she was "outed" as an undercover officer for the CIA by senior government officials entrusted to protect that classified information. Following the initial "outing" in the media in July 2003, Valerie Wilson's prospects as a covert CIA operative evaporated and her long career was effectively destroyed. Ultimately, Ms. Wilson formally resigned her position on

January 9, 2006. She now seeks to tell the story of her career in public service and its premature termination.

3.     Well before any publishing agreement was entered into, or any manuscript was written, Ms. Wilson grappled with the consequences of a completely unexpected and involuntary conclusion to her CIA career. Suddenly facing unemployment and an uncertain future, Ms. Wilson also learned that she did not meet the statutory age requirements necessary to begin receiving her government annuity.

4.     Ms. Wilson's inquiries about her retirement benefits at the end of 2005 resulted in a February 10, 2006 letter from the CIA which provided official, unclassified confirmation of her precise years of service and confirmed that due to statutory age requirements she would only be eligible to receive a deferred annuity years after her resignation. The letter was executed by the CIA's "Chief, Retirement and Insurance Services," and was delivered by regular mail on official CIA letterhead.

5.     Certain members of Congress were also concerned that as a result of calculated leaks by government officials at the highest levels of the Executive Branch and through no fault of her own, Ms. Wilson would lose her career as a covert CIA operative and suffer significant financial consequences. Accordingly, a member of Congress approached Ms. Wilson during 2005 to propose a legislative remedy to her annuity predicament, and draft legislation was prepared.

6.     With the change of Congressional control, the "Valerie Plame Wilson Compensation Act," H.R. 501, was finally introduced in Congress in January 2007. Congress reprinted in the Congressional Record a partially redacted copy of the CIA's February 10, 2006 letter to document that Valerie Wilson had achieved the necessary 20 years of service for a

government annuity.  (The redacted version of the official CIA February 10, 2006 letter

published in the Congressional Record is hereinafter called the "Agency Annuity Letter").  Thus,

since January 16, 2007, Ms. Wilson's actual dates of service have appeared in the Congresional

Record and have been available worldwide on the Internet at http://www.thomas.gov.

      7.      Despite official and unclassified acknowledgment of her decades of service in the

Agency Annuity Letter and no effort for almost a year to retrieve that letter or to suggest that it

be treated as classified – and notwithstanding the fact that the CIA's own letter appears in the

Congressional Record as part of pending legislation and is unquestionably irretrievable – the

CIA now purports to classify or reclassify Ms. Wilson's pre-2002 federal service dates.  Further,

it demands that significant portions of Ms. Wilson's Manuscript be excised or rendered "fiction,"

purportedly to protect the "secret" of Ms. Wilson's government service prior to 2002.  By

unreasonably interfering with Valerie Wilson's Memoir in violation of the First Amendment, the

Executive Branch seeks to prevent information relating to its own misconduct from reaching the

American public.

      8.      A loyal former CIA officer, Valerie Wilson is not seeking *carte blanche* to

discuss her entire government service or to reveal any classified information in her Memoir.  On

the contrary, for more than ten months, she has diligently worked with the CIA's Publications

Review Board ("PRB") to comply fully with her secrecy agreements and to avoid any possibility

of divulging national security information with which she has been entrusted.

      9.      But the Executive Branch cannot have it both ways.  In 2003, senior government

officials leaked information to the news media identifying Valerie Wilson's covert affiliation

with the CIA; defendant CIA subsequently disclosed in its 2006 unclassified letter her *exact*

*dates of service* when providing official information relevant to her ability to receive a

government annuity after 20 years of service. Yet, now, the CIA seeks to prevent plaintiffs from publishing the exact information it previously confirmed in its unclassified Agency Annuity Letter and which is currently available to the world on the Internet through the Library of Congress.

10.     Improper classification or reclassification of information officially released to the public by the very federal agency responsible for controlling the information imposes a prior restraint that violates the First Amendment. Defendants' position cannot withstand scrutiny as a matter of logic and is unsupported as a matter of law.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

12.     The United States District Court for the Southern District of New York is a proper venue of this action pursuant to 28 U.S.C. § 1391(e) because defendants are officers and employees of the United States or its agencies operating under color of law, an agency of the United States, no real property is involved in this action, and a plaintiff resides in this district. In addition, defendants' actions caused injury to plaintiffs in this district, where Simon & Schuster, as Valerie Wilson's publisher, is located and where the Manuscript is being edited and will be published.

13.     This Court is authorized to provide declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Accordingly, Valerie Wilson and Simon & Schuster seek a declaration, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the All Writs Act, 28 U.S.C. § 1651, Executive Order 12958, as amended by Exec. Order 13292, 68 Fed. Reg. 15315 ("Exec. Order 13292"), the CIA's internal regulations and the First Amendment to the Constitution of the

United States, that defendants have unlawfully imposed a prior restraint upon plaintiffs by infringing on their rights to publish the Manuscript, and further seek a declaration that defendants' classification and/or any attempted reclassification of Valerie Wilson's dates of federal service was unlawful because defendants failed to comply with the requirements of Exec. Order 13292.

## PARTIES

14.     Plaintiff Valerie Plame Wilson ("Valerie Wilson") was formerly employed by the CIA as an Operations Officer.  She is required by virtue of a secrecy agreement to submit all writings to CIA's Publications Review Board ("PRB") for prepublication review.  She is a citizen of the United States and resides in Santa Fe, New Mexico.

15.     Plaintiff Simon & Schuster, Inc. ("Simon & Schuster") is a New York corporation with its principal place of business in New York.  Founded in 1924, Simon & Schuster's prominent imprints include Simon & Schuster, Scribner and Free Press.  Simon & Schuster has entered into a publishing agreement with plaintiff Valerie Wilson to publish her forthcoming Memoir.

16.     Defendant J. Michael McConnell ("McConnell") is Director of National Intelligence ("DNI"), the cabinet-level official coordinating all components of the federal intelligence community by and through the Office of the Director of National Intelligence ("ODNI"), and as such is the principal intelligence adviser to the President and the statutory intelligence advisor to the National Security Council.  The DNI has statutory oversight authority, pursuant to 50 U.S.C. § 403-1(f)(4), "to ensure compliance with the Constitution and laws of the United States by the Central Intelligence Agency . . . ."  He is sued in his official capacity only.

5

17.     Defendant Central Intelligence Agency is an agency as defined by 5 U.S.C. § 701. Its actions have prevented plaintiffs from publishing the Manuscript in its entirety.

18.     Defendant Gen. Michael V. Hayden is Director of the CIA ("Hayden"), and is responsible for overseeing the activities of CIA's PRB in connection with prepublication review of the Manuscript, has original classification authority, pursuant to Exec. Order 13292, and upon information and belief, is primarily responsible for determining whether CIA information is properly classified or classifiable.  He is sued in his official capacity only.

## FACTS

### CIA's Official Acknowledgment of Valerie Wilson's Dates of Federal Service

19.     When senior government officials wrongfully revealed her covert CIA status to the press in 2003, Valerie Wilson's years of loyal service to the government were effectively and prematurely ended.  When she resigned her position with the CIA on January 9, 2006, she did not just lose her career, her termination also negatively affected her retirement benefits.

20.     Following her resignation and in response to her inquiry regarding retirement benefits, Valerie Wilson received an unclassified communication dated February 10, 2006 that was delivered by regular mail on official CIA letterhead from the CIA's "Chief, Retirement & Insurance Services."  (A copy of the Agency Annuity Letter as printed in the Congressional Record and available on the Library of Congress website is attached as Exhibit A to this complaint and incorporated herein by reference.)

21.     The Agency Annuity Letter acknowledged and disclosed information regarding Valerie Wilson's eligibility to receive a deferred annuity under the Federal Employees Retirement System (FERS) Special Category at the conclusion of her government service. Specifically, the Letter voluntarily disclosed the exact dates of her federal service and

government affiliation and revealed that Ms. Wilson's retirement annuity, given after 20 years of service, could not be drawn on until years after her early termination.

22.     The Agency Annuity Letter (including the 2006 version delivered to Valerie Wilson) was not classified. It was not marked as classified and was sent by First Class Mail, a method of delivery forbidden for classified documents. It contained no indicia whatsoever that the information disclosed by the Agency therein was classified, nor was Valerie Wilson informed at the time of receipt (or for almost a full year thereafter) that this official correspondence was purportedly classified or subject to any restrictions regarding publication or dissemination. Accordingly, Ms. Wilson was not prohibited by any secrecy agreements or by law from providing a copy of that letter to Congress in connection with proposed legislation.

23.     The Agency Annuity Letter was not, as the Executive Branch now asserts, "mistakenly sent" to Ms. Wilson or an "administrative error" by the CIA. Rather, the Letter was signed by a senior manager of the CIA; it was sent by someone with presumed knowledge concerning proper procedures for classified information. Further, the Letter was knowingly and voluntarily provided to Valerie Wilson a month after her employment ended in response to requests for information about her eligibility to receive employment retirement benefits.

### The Valerie Plame Wilson Compensation Act and the
### Inclusion of the CIA Letter in the Congressional Record

24.     Many months before there was a book contract between Ms. Wilson and Simon & Schuster and well before the CIA commenced its publication review of Ms. Wilson's manuscript, upon information and belief, members of Congress had begun consideration of the economic impact upon Ms. Wilson and her family that would result from termination of her CIA employment. Beginning in late 2005 and continuing in early 2006, Congress prepared draft

legislation that would allow Ms. Wilson to receive immediately her deferred annuity because she had otherwise satisfied the requirement for 20 years of government service.

25.    In connection with the proposed legislation, on information and belief, in late February 2006, Congress confirmed that Valerie Wilson's dates of federal service, as set forth in the CIA's February 10, 2006 letter, satisfied the 20 year criteria for a government annuity.

26.    Upon information and belief, the proposed federal legislation initially drafted in October 2005 was not introduced until 2007 because it was deemed unlikely that the Republican controlled Congress would have been willing to enact it at that time.  Following the November 2006 election and the shift in control of both houses of Congress to the Democratic party, renewed efforts resumed in the House of Representatives to allow Valerie Wilson to receive her deferred annuity benefits, and a bill for that purpose was introduced in mid-January 2007.

27.    Almost a year after the February 10, 2006 official CIA letter was sent, Congressman Jay Inslee introduced the Valerie Plame Wilson Compensation Act, H.R. 501, on January 16, 2007 in the United States House of Representatives.

28.    Representative Inslee's floor statement brought to the attention of Congress "one of the human impacts caused by the indiscretion of government officials regarding the covert identity of Central Intelligence Agency operative Valerie Plame Wilson."

29.    As noted by Representative Inslee, on July 14, 2003 when Robert Novak first identified her as a CIA agent, Valerie Wilson's "professional life was forever altered, and her CIA career irrevocably ruined by the syndicated publication of a column, which revealed [Ms. Wilson's] identity as a covert CIA officer. . . . [F]ollowing the initial outing in the media, [Valerie Wilson's] future as a covert CIA operative ceased to exist and her career of two decades

was destroyed. On January 9, 2006, [Ms. Wilson] resigned from the CIA, recognizing that any future with the Agency would not include work for which she had been highly trained."

30.     Representative Inslee's remarks established the basis for the legislation: "Despite [Valerie Wilson's] 20 years of federal service, she [did] not meet the minimum age requirement to receive her retirement annuity. She has," he observed, "been left without a career." Accordingly, Congressman Inslee introduced legislation "to allow [Valerie Wilson] to qualify for her annuity, as one who has served her country for two decades, and waive the age requirement for collecting it."

31.     "To best demonstrate the annuity for which [Valerie Wilson] may qualify if th[e] [proposed] legislation were to pass," Congressman Inslee "submit[ed] for the record a document sent to [Valerie Wilson] by the CIA. It outlines her deferred annuity and testifies to 20 years of service. The document bears no indications of classified material as required by CIA procedures, and was sent via regular postal mail after [Valerie Wilson] was no longer in the employ of the CIA."

32.     As part of the legislative process, on January 16, 2007, the Agency Annuity Letter, including Ms. Wilson's exact federal service dates, entered the Congressional Record and since that date, it has been continually available worldwide on the Internet through the Library of Congress website at http://www.thomas.gov.

### CIA's Improper Effort to Treat Valerie Wilson's Federal Service Dates as Classified and Thereby Interfere with the Publication of the Memoir

33.     When, as here, the government "officially acknowledges" purportedly classified information by an official and documented disclosure such as the Agency Annuity Letter, it enters the public domain. Nonetheless, despite having officially acknowledged Valerie Wilson's federal service dates for more than a year, and some two months after the Letter became

irretrievably public via the Congressional Record, defendant CIA and defendant Hayden, with defendant McConnell's approval, are imposing an unlawful prior restraint upon plaintiffs by refusing to permit Valerie Wilson to include in her Manuscript any reference to the specific service dates contained in the CIA's official and documented disclosure containing the identical information.

34.    CIA's PRB has demanded that Valerie Wilson redact (or fictionalize) any information in her Manuscript that reveals the specific information regarding her dates of federal service, even though that exact information was previously disclosed by the CIA in the Agency Annuity Letter.

35.    Plaintiffs understand that defendants do not dispute that they cannot properly block the disclosure by Valerie Wilson of material that does not reveal any classified information.  Nor do plaintiffs understand defendants to propose that they can block her disclosure of information that is in the public domain by virtue of the CIA's official acknowledgment.  Rather, defendants seek to treat Valerie Wilson's service dates as classified information by claiming that the Agency Annuity Letter in which these very dates were voluntarily and officially disclosed constituted "administrative error" and they now seek under Executive Order 13292 to classify or reclassify the precise information contained in the Congressional Record.  But the Agency Annuity Letter was an official document prepared by a senior CIA manager and bears none of the earmarks of an administrative error.  Rather, upon information and belief, the CIA manager who prepared and disclosed that information fully intended to do so, and CIA lawyers knew or should have known that it was prepared in connection with a legal issue concerning Valerie Wilson's qualification for retirement benefits at the end of 2005 and in early 2006.

36.    Upon information and belief, the CIA has mischaracterized its 2006 official acknowledgment of Valerie Wilson's federal service dates as a mere "administrative error" in order to prevent embarrassment to the Agency by concealing either internal ineptitude or improper political influence in the publication review process. Further, the CIA appears to seek to diminish Ms. Wilson's service and the full effect of her "outing." Whatever its goal, the impact of the purported classification or reclassification is evident: to classify or reclassify Ms. Wilson's service dates will, according to the PRB, cause significant redaction (or "fictionalization") to her Manuscript.

37.    Defendants' invocation of a purported "administrative error" in this manner not only violates established law, it also defies logic and common sense. Valerie Wilson's precise dates of service were released by the CIA in an unclassified document and are now part of the Congressional Record. Defendants cannot unring the bell by asserting that their documented, authorized, and voluntary disclosure was just a mistake. And although information about Valerie Wilson's CIA affiliation *was* once a classified secret that launched a criminal referral to the Department of Justice in 2003, it has subsequently been acknowledged by defendant Hayden and the Executive Branch that Valerie Plame Wilson was an undercover operative for the CIA. There simply is no basis for the CIA to maintain in effect that Valerie Plame is the only person in the world who is not entitled to publish this information.

38.    Indeed, upon information and belief, release of the unclassified information contained in the Agency Annuity Letter is consistent with the CIA's recent treatment of identical information in 2004, when Ms. Wilson's husband, Ambassador Joseph Wilson, published a book. Before Ambassador Wilson published his book, *The Politics of Truth*, his manuscript was submitted to the CIA for pre-publication review. When the CIA cleared Ambassador Wilson's

book for publication, it did *not* object to the following sentences describing the couple's reaction to the revelation in Robert Novak's syndicated column that "Wilson never worked for the CIA, but his wife, Valerie Plame, is an Agency operative on weapons of mass destruction." As cleared by the CIA, Mr. Wilson's book reported, "**Twenty years of loyal service** down the drain, and for what, [Valerie Wilson] asked after she had read it. What was Novak trying to say? What did blowing her cover have to do with the story?" *The Politics of Truth* at 345 (emphasis added).

39.    Having been written and disseminated by a senior CIA official, the February 10, 2006 letter was not an "unauthorized disclosure" consistent with Exec. Order 13292 §1.1(b). By its conduct, the CIA has effectively waived any argument that the information it released about Ms. Wilson's dates of service was classified in February 2006 or can now be properly classified or reclassified. The CIA, as an agency with original classification authority regarding Valerie Wilson's pre-2002 employment affiliation, is itself responsible for disclosing in unclassified form her specific dates of federal service.

40.    While defendant CIA had actual knowledge of the existence in unclassified form (and its disclosure of) Valerie Wilson's precise dates of service from at least February 10, 2006 through January 19, 2007, it took no steps whatsoever for nearly a year to: (1) reclassify any information contained in the CIA Letter, (2) indicate any national security classification of the contents of the letter through proper marking and redelivery of the letter, (3) retrieve the original letter, or (4) restrict in any way dissemination of the letter or any information contained therein.

41.    To the contrary, for approximately a full year, none of the measures set forth in Exec. Order 13292 applicable to the handling of "Classified National Security Information" were

undertaken by defendant CIA with respect to information about Valerie Wilson's dates of federal service as set forth in the Agency Annuity Letter.

42.     It was not until a letter dated January 19, 2007, that the CIA requested that Ms. Wilson "contact Karen F. Tumolo, [Chief, Retirement & Insurance Services] . . . to make arrangements to return the [February 10, 2006] letter" ("CIA's January 19 Letter").

43.     At the time the CIA's January 19 Letter was written, defendant CIA already knew that the Agency Annuity Letter had been printed in the January 16, 2007 Congressional Record for the purpose set forth in Representative Inslee's remarks.

44.     Defendant CIA was assured on January 31, 2007 that Ms. Wilson and her counsel intend to comply fully with all applicable obligations regarding "Classified National Security Information" pursuant to Exec. Order 13292 and any other applicable law, and, with a full reservation of rights, agreed to provide a copy of the

45.     February 10, 2006 letter to the CIA.  In order to comply with any such obligations, Valerie Wilson requested that the CIA provide her with a revised and remarked version of the February 10, 2006 letter, with any ostensibly classified information redacted, that complied in good faith with the applicable provisions of Exec. Order 13292, including §1.6.

46.     The CIA, through its Office of General Counsel, disregarded the information published in the Congressional Record and, in furtherance of its attempt to cover up official acknowledgment of Valerie Wilson's pre-2002 employment affiliation, reiterated on February 9, 2007 its demand that she make arrangements to return the letter.  However, this letter did not provide a new version of the Agency Annuity Letter with any ostensibly classified information redacted.

47.     Over the next several months, Ms. Wilson and her representatives attempted to resolve the impasse with the CIA concerning the Agency's demand that significant changes be made to the Manuscript concerning Ms. Wilson's government tenure.

48.     On April 19, 2007, the CIA confirmed that Ms. Wilson had exhausted her administrative remedies concerning the Agency's demand.  Specifically, the CIA confirmed that CIA's PRB and Valerie Wilson in person, or through her counsel, had exchanged information and met on several occasions to discuss concerns "regarding the classification determinations reflected in [PRB's] review of [the Manuscript] and certain writing techniques (*e.g.*, changing or obscuring the chronological timing of an event placing text in another part of the manuscript, etc.) that [Valerie Wilson] could use to rewrite some of the deleted material to render it unclassified."

49.     The April 19, 2007 letter further stated that "with limited exceptions, the classified information the PRB identified in [the Manuscript] relates to a single issue, of which [Valerie Wilson was] aware, and reflects the classification determination made by the Director of the Agency [defendant Hayden].  Because the Agency has provided [Valerie Wilson] with a level of administrative process that exceeds the requirements of the applicable Agency regulations, [Valerie Wilson has] exhausted [her] administrative remedies with respect to this classification determination."

50.     Upon information and belief, the "single issue" referred to in the April 19, 2007 letter was the CIA's official acknowledgment of the Agency Annuity Letter and the unwillingness of defendant CIA and defendant Hayden to permit Valerie Wilson to disclose the unclassified or unclassifiable information regarding her federal service dates.

51.    On April 25, 2007, in order further to conceal what defendant CIA mischaracterizes as merely an "administrative error," CIA's Acting General Counsel, John A. Rizzo, on behalf of defendant CIA and defendant Hayden, sent a letter to Valerie Wilson's attorneys in New York purporting either to classify or reclassify – as of April 24, 2007 – the information it had previously disclosed in February 2006 (now published in Congressional Record) – as "secret."

52.    In this April 25, 2007 letter, on behalf of defendant CIA and defendant Hayden, Mr. Rizzo forwarded to Valerie Wilson's attorneys a newly redacted copy of the Agency Annuity Letter that he asserted "reflects the proper classification markings and that has been approved for release in redacted form as a result of a declassification review." Notwithstanding the CIA's documented official disclosure of her service dates previously published in the Congressional Record, the newest version of the Agency Annuity Letter is largely blank, except for the CIA's official letterhead, date of the letter, addressee information, CIA service dates from 1/01/2002 to 1/09/2006, and title of the sender. In a transparent effort to cover up its unclassified release of Ms. Wilson's federal service dates back in February 2006, this new version of the Agency Annuity Letter includes the crossed out word "secret." The word "secret" appeared nowhere on the original and official February 10, 2006 letter and was added to this new version, and then crossed out, in order to create the pretext that as originally issued the document was labeled "secret." (A copy of the April 25, 2007 CIA Redacted Annuity Letter is attached hereto as Exhibit B).

53.    Defendant CIA and Defendant Hayden were informed and knew or should have known by January 31, 2007 that classification or reclassification of the Agency Annuity Letter violated Exec. Order 13292. Further, such classification or reclassification violated the First

Amendment right of plaintiffs to disclose the specific information that had been officially

acknowledged by the CIA in an authorized, official document in the public domain.

54.    Rather than complying with the CIA's lawful obligations, Mr. Rizzo, on behalf of

defendant CIA and defendant Hayden, sought to cover up the CIA's official acknowledgment of

Valerie Wilson's pre-2002 federal service dates and reiterated the need for Ms. Wilson to return

to CIA "the 10 February letter mistakenly sent to her along with any copies of the letter that she

retains."

55.    However, the Executive Order governing classification of national security

information expressly prohibits the Agency from doing so under the circumstances presented

here: the CIA cannot seek to classify information to "conceal . . . administrative error," Exec.

Order 13292 §1.7(a)(1), or to "prevent embarrassment to . . . [the] [A]gency." Exec. Order

13292 §1.7(a)(2).

56.    Nor can the CIA reclassify information that is in the public domain, specifically

Ms. Wilson's service dates which are reported in the Congressional Record due to the CIA's

authorized disclosure.  Instead, reclassification can only be undertaken if "the information may

be reasonably recovered." Exec. Order 13292 §1.7(c)(2).  Yet, recovery cannot occur when the

information that was made public through an official and documented disclosure by the Agency

is irretrievably in the possession of Congress through the legislative process and hence privileged

from return to the CIA pursuant to the Speech and Debate Clause of the Constitution, U.S. Const.

art. I, § 6, cl. 1.

57.    Moreover, because the Agency Annuity Letter specifying Valerie Wilson's dates

of federal service has been published in the Congressional Record and made available worldwide

on the Internet via the Library of Congress THOMAS website, defendant CIA cannot therefore "reasonably recover" the letter or the information it has disclosed.

58.    Given the CIA's presumed expertise in handling classified information, it is indisputable that the Agency did not from the outset comply with its own mandatory procedures for designating or handling classified information with respect to the CIA Letter, as set forth in Exec. Order 13292 § 1.6, and knew *for almost a full year* that it had disclosed Ms. Wilson's federal service dates in unclassified and authorized form without taking any measures whatsoever to retrieve or protect that information.

### DNI's Oversight Authority and Failure to Ensure CIA's Compliance with the Law

59.    As Director of National Intelligence, defendant McConnell has broad authority to protect the institutional interests of the Intelligence Community.

60.    The CIA has an obligation to comply with the Constitution and laws of the United States with respect to disclosure of officially acknowledged information. This obligation extends to its legal duty to ensure that the Agency's pre-publication review process is reasonably structured to prevent publication only of properly classified materials. When the CIA fails to do so, as has occurred here, the DNI can and should require prompt corrective action.

61.    Because of DNI's oversight function and ultimate responsibility to prevent the CIA from violating the First Amendment and other laws of the United States, it was the duty of the Director of National Intelligence to require that the CIA's Director allow Ms. Wilson to reveal the start date and duration of her CIA employment and to rescind immediately the CIA's unlawful effort to classify or reclassify information which its official acknowledgment caused to enter the public domain irretrievably.

62.    By letter dated April 27, 2007, Valerie Wilson, through her counsel, requested that Defendant McConnell overrule the CIA's erroneous determination.

63.     Defendant McConnell, by letter dated May 18, 2007, sent on his behalf by Benjamin A. Powell, Esq., General Counsel of ODNI, declined to so.  Mr. McConnell, in his official capacity, has therefore failed to carry out DNI's legal obligation to ensure the CIA's compliance with the Constitution and laws of the United States.

64.     By letter from CIA lawyer John A. Rizzo, Esq. to Ms. Wilson's counsel dated May 17, 2007, defendant CIA stated that it expected that "Ms. Wilson will fulfill her legal obligation to protect classified information by returning to the CIA the 10 February 2006 letter mistakenly sent to her along with any copies of the letter that she retains."

## COUNT I
### (First Amendment Violations)

65.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 63 above, inclusive.

66.     Plaintiff Valerie Wilson properly submitted, pursuant to one or more secrecy agreements, her draft Manuscript to the PRB.

67.     Defendant CIA has identified classification concerns in the Manuscript and denied plaintiffs the right to publish certain information within the Manuscript.

68.     Plaintiffs sought to publish specific information "officially acknowledged" by defendant CIA in the Agency Annuity Letter.

69.     In order to be "officially acknowledged" by an agency, information must meet three criteria:  First, the information at issue must be as specific as the information previously released.  Second, the information at issue must match the information previously disclosed. Third, the information at issue must have been made public through an official and documented disclosure.

70.     Each of the three criteria required to demonstrate "official acknowledgment" by defendant CIA of the Agency Annuity Letter is satisfied under the indisputable facts presented.

71.     Defendants McConnell, CIA, and Hayden have therefore improperly denied plaintiffs the right to publish certain information within the draft Manuscript that was officially acknowledged by defendant CIA and which has irretrievably entered the public domain.

72.     The unclassified disclosure of the information about Valerie Wilson's dates of federal service by the CIA in the February 10, 2006 Letter was an *authorized disclosure* of the identical information that plaintiffs seek to publish and which defendants have improperly asserted to be classified information.

73.     Defendants cannot establish any harm to national security arising from plaintiffs' publication of precisely the same public domain information contained in the Agency Annuity Letter.

74.     Defendants, on behalf of the Executive Branch, have no discretion to assert any harm to national security arising from publication by plaintiffs of the Agency Annuity Letter, and any such assertion in the context of publication by plaintiffs of officially acknowledged information irretrievably in the public domain is irrelevant, inadmissible, and entitled to no deference in this action.

75.     Defendants have not and cannot demonstrate the existence of substantial government interests that would enable them to prohibit the publication of officially acknowledged information regarding Valerie Wilson's federal service dates within the Manuscript.  By prohibiting publication of officially acknowledged information, defendants have imposed unreasonable restrictions on plaintiffs' activities that are protected by the First Amendment.

76.     Defendants' restrictions imposed upon plaintiffs are unduly vague and not narrowly confined to avoid infringement of their First Amendment rights.  Defendants have therefore unnecessarily restricted speech in a way that does not serve to protect any substantial government interest.

77.     Defendants have failed to show that plaintiffs' First Amendment right to publish is outweighed by any legally proper interest of defendants in efficiently carrying out their respective missions by minimizing harms that are real, not merely conjecture.

78.     Because defendants have impermissibly infringed upon plaintiffs' right to publish the information contained within the Manuscript, plaintiffs seek a declaration that defendants have violated their First Amendment rights.  Thus, plaintiffs have suffered actual adverse and harmful effects, including, but not limited to, a delay in being able to report in a timely fashion on credible news stories, and/or lost or jeopardized present or future financial opportunities, which impair their respective contractual obligations and their ability to serve the public.

79.     A declaration from the Court regarding the unclassified or unclassifiable nature of the documented disclosure officially acknowledged by defendant CIA is required in order to avoid the threat and chilling effect of possible civil or criminal penalties against Valerie Wilson arising from publication of the specific dates of her federal service as set forth in the Agency Annuity Letter.

## COUNT II
### (Violations of Exec. Order 13292 and the Administrative Procedures Act)

80.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 78 above, inclusive.

81.    Defendants have failed to comply with Exec. Order 13292, including a failure to provide explanations with reasonable specificity that demonstrate a logical connection between the information to be deleted and the reasons for classification or reclassification.

82.    Plaintiffs have exhausted any administrative remedies with respect to the relief sought regarding the Agency Annuity Letter, and have been informed by defendant CIA that all such remedies have been exhausted.

83.    Some or all of the determinations by defendants violate Exec. Order 13292 and cannot support defendant CIA's and defendant Hayden's attempt to censor disclosure in the Manuscript of Valerie Wilson's dates of federal service and related information.

84.    Defendants' classification decisions on behalf of the Executive Branch, in violation of Exec. Order 13292, are not entitled to any deference.

85.    Pursuant to the Classification Standards in Section 1.1 of Executive Order 13292,

(a)    Information may be originally classified under the terms of this order only if all of the following conditions are met:

(1)    an original classification authority is classifying the information;

(2)    the information is owned by, produced by or for, or is under the control of the United States Government;

(3)    the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4)    the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(b)    Classified information shall not be declassified automatically as a result of any unauthorized disclosure of identical or similar information.

86.    The information about Valerie Wilson's dates of federal service as set forth in the Agency Annuity Letter published in the Congressional Record was no longer "owned by,

produced by or for, or is under the control of the United States Government" as of January 16, 2007, and therefore was not classifiable in April 2007 by defendant CIA.

87.    After January 16, 2007, defendant CIA, as the originator of the Agency Annuity Letter, could no longer regulate access to the information in that Letter as published in the Congressional Record, and therefore Valerie Wilson's specific dates of federal service set forth in the Agency Annuity Letter are not under the control of defendant CIA or the government generally.

88.    Section 1.7(c) of Executive Order 13292 provides:

> Information may be reclassified after declassification and release to the public under proper authority only in accordance with the following conditions:
>
> (1)    the reclassification action is taken under the personal authority of the agency head or deputy agency head, who determines in writing that the reclassification of the information is necessary in the interest of national security;
>
> (2)    the information may be reasonably recovered; and
>
> (3)    the reclassification is reported promptly to the Director of the Information Security Oversight Office.

89.    Because the information at issue was disseminated widely over the Internet and remains available on the Library of Congress website, the information is not reasonably recoverable, and defendants' action in seeking to classify or reclassify the information fails to meet the requirements of Section 1.7(c)(2) of Exec. Order 13292.

90.    On information and belief, defendants reclassified the information at issue to prevent embarrassment to defendant CIA and defendant Hayden, to conceal ineptitude by defendant CIA, or to cover up improper political interference with the CIA's prepublication review process. By reclassifying the officially acknowledged, public domain information about

the dates of Valerie Wilson's federal service for an improper purpose, defendants have abused the classification process in violation of Section 1.7(a) of Exec. Order 13292.

91.    Defendants failed to comply with the requirements of Exec. Order 13292, and therefore violated the National Security Act and any other statute that purports to authorize defendants to classify information in accordance with the Executive Order. Accordingly, plaintiffs seek a declaration that defendants' classification and/or reclassification of the information at issue is not in accordance with law and, therefore, violates the Administrative Procedure Act.

92.    Defendants' classification and/or reclassification of the information at issue imposes a prior restraint on the ability of plaintiffs to communicate important, lawful information to the public, in violation of the First Amendment of the Constitution of the United States.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

(a)    Declare that defendants' classification and/or reclassification of the information at issue constitutes an impermissible prior restraint on plaintiffs' First Amendment right to free expression;

(b)    Declare that defendants' classification and/or reclassification of the information at issue was unlawful because defendants failed to comply with the requirements of Exec. Order 13292;

(c)    Declare that plaintiffs are free to use the information at issue, to wit, the information officially acknowledged by defendant CIA in the February 10, 2006 letter;

(d)     Order defendants to declassify the information at issue, to wit, the information officially acknowledged by defendant CIA in the February 10, 2006 letter;

(e)     Issue a permanent injunction to block defendants from restraining the publication of portions of the Manuscript that reference information officially acknowledged by defendant CIA in the February 10, 2006 letter;

(f)     Enjoin defendants from initiating civil or criminal proceedings against plaintiffs for future publication of any information within the Manuscript that references information set forth in the February 10, 2006 letter as published in the Congressional Record;

(g)     Enjoin defendants from seeking return of the original February 10, 2006 letter and any copies or versions from plaintiff Valerie Plame Wilson or any other person or entity;

(h)     Declare that plaintiffs possess a First Amendment right to publish information within the Manuscript that references information officially acknowledged by defendant CIA in the February 10, 2006 letter;

(i)     Declare that defendants have violated the Administrative Procedure Act and its internal regulations governing prepublication review;

(j)     Award plaintiffs the costs of this action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and

(k)     Grant such other relief as the Court may deem just and proper.

Dated: May 31, 2007
         New York, New York

                                        WOLLMUTH MAHER & DEUTSCH LLP

                                        By: _____
                                                David B. Smallman (DS-5316)

                                        500 Fifth Avenue
                                        New York, NY 10101
                                        Tel: (212) 382-3300
                                        Fax: (212) 382-0050
                                        dsmallman@wmd-law.com

                                        *Attorneys for Plaintiffs*
                                        *Valerie Plame Wilson and Simon & Schuster, Inc.*

                                        DAVIS WRIGHT TREMAINE LLP
                                        Elizabeth A. McNamara (EAM-1987)
                                        1633 Broadway, 27th Floor
                                        New York, NY 10019
                                        Tel: (212) 489-8230
                                        Fax: (212) 489-8340
                                        lizmcnamara@dwt.com

                                        *Attorneys for Plaintiff Simon & Schuster, Inc.*

*Additional Counsel for*
    *Plaintiff Valerie Plame Wilson*

Professor Erwin Chemerinsky
Duke University School of Law
Science Drive and Towerview Road
Durham, NC 27708-0360
Tel: (919) 613-7173
Fax: (919) 613-7231

Lisa E. Davis, Esq.
Frankfurt Kurnit Klein & Selz, P.C.
488 Madison Avenue
New York, NY 10022
Tel: (212) 980-0120
Fax: (212) 593-9175