David B. Smallman (DS-5316)
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
dsmallman@wmd-law.com

*Attorneys for Plaintiffs Valerie Plame Wilson*
*and Simon & Schuster, Inc.*

Elizabeth A. McNamara (EAM-1987)
DAVIS WRIGHT TREMAINE LLP
1633 Broadway, 27th Floor
New York, NY 10019
Tel: (212) 489-8230
Fax: (212) 489-8340
lizmcnamara@dwt.com

*Attorneys for Plaintiff Simon & Schuster, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ x

VALERIE PLAME WILSON;
SIMON & SCHUSTER, INC.,

                   Plaintiffs,

          v.

J. MICHAEL MCCONNELL,
IN HIS OFFICIAL CAPACITY AS DIRECTOR
OF NATIONAL INTELLIGENCE;
CENTRAL INTELLIGENCE AGENCY;
GEN. MICHAEL V. HAYDEN,
IN HIS OFFICIAL CAPACITY AS DIRECTOR
OF CENTRAL INTELLIGENCE AGENCY,

                   Defendants.

------------------------------------------------ x

**ECF**

Case No. 07 CV 4595 (BSJ)

**MEMORANDUM OF LAW OF**
**VALERIE PLAME WILSON AND SIMON & SCHUSTER, INC.**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**
**AND FOR A PERMANENT INJUNCTION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

    Valerie Wilson is Exposed as a Covert CIA Officer ......................................... 3

    The Consequences of the Government Leaks ..................................................... 5

    The February 10, 2006 Letter ............................................................................ 6

    The Valerie Plame Wilson Compensation Act and the Inclusion of the CIA
    Letter in the Congressional Record .................................................................... 7

    CIA's Improper Effort to Treat Valerie Wilson's Federal Service Dates as
    Classified .......................................................................................................... 10

    The Government's Unconstitutional Prior Restraint and Censoring of the Memoir ........ 14

    Procedural History ........................................................................................... 17

ARGUMENT ......................................................................................................... 18

    POINT I       THE CIA SHOULD BE ENJOINED FROM CENSORING
                    PUBLICATION OF WILSON'S PRECISE CIA EMPLOYMENT
                    DATES THAT WERE "OFFICIALLY ACKNOWLEDGED" AND
                    ARE NOW IN THE PUBLIC DOMAIN ................................................. 18

                A.      CIA "Officially Acknowledged" Valerie Wilson's Federal
                       Service Dates ......................................................................... 21

                        1.     The Information at Issue is as Specific as the
                             Information Previously Released by CIA ......................... 23

                        2.     The Information at Issue Matches the Information
                             Previously Disclosed by CIA ......................................... 23

                        3.     The Information at Issue has been Made Public
                             through an Official and Documented Disclosure by
                             CIA ................................................................................. 24

# TABLE OF CONTENTS
(continued)

**Page**

B.     Late Claims of Purported "Administrative Error" or "Mistake" Cannot Support CIA's Prohibition Against Publication of Unclassified or Unclassifiable Information in the Public Domain ........................................................................................ 28

C.     Because the Federal Service Dates Disclosed by CIA Are Irretrievably in the Public Domain and Unrecoverable from Congress, CIA's Belated Classification Determination Is Entitled to No Deference Whatsoever by the Court ..................... 32

D.     The Prior Restraint Imposed by CIA Is Unconstitutional Because No Harm to National Security Is at Issue When Information Officially Acknowledged by CIA Has Already Been Published in the Congressional Record ............................... 32

E.     A Permanent Injunction Restraining the CIA From Censoring Wilson's Actual Dates of CIA Service Should Be Issued ........... 34

POINT II     CIA'S CENSORSHIP OF VALERIE WILSON'S MEMOIR VIOLATES EXECUTIVE ORDER 13292 AND THE ADMINISTRATIVE PROCEDURES ACT ........................................... 35

CONCLUSION .............................................................................................. 40

ii

# TABLE OF AUTHORITIES

## CASES

*Afshar v. Department of State*, 702 F.2d 1125 (D.C. Cir. 1983) ...............................................21, 31

*Aftergood v. Central Intelligence Agency*, 355 F. Supp. 2d 557 (D.D.C. 2005) .....................28, 29

*Alexander v. United States*, 509 U.S. 544 (1993) ..............................................................19

*Alfred A. Knopf v. Colby*, 509 F.2d 1362 (4th Cir. 1975) ............................................. *passim*

*Am. Civil Liberties Union v. City of Pittsburgh*, 586 F. Supp. 417 (W.D. Pa 1984) .....................35

*ASF, Inc. v. City of Seattle*, 408 F. Supp. 2d 1102 (W.D. Wa. 2005) ....................................35

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) .................................................19, 35

*Brown & Williamson v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) ...................................39

*Council of Periodical Distribs. Ass'n v. Evans*, 827 F.2d 1483 (11th Cir. 1987) .........................35

*Davis v. East Baton Rouge Parish School Board*, 78 F.3d 920 (5th Cir. 1996) ............................19

*Dow Jones & Co. v. Department of Justice*, 880 F. Supp. 145 (S.D.N.Y. 1995), *vacating in part as moot*, 907 F. Supp. 79 (S.D.N.Y. 1995) ......................................................29

*Ebay, Inc. v. Mercexchange, LLC*, 126 S.Ct. 1837 (2006) ............................................34

*Fitzgibbon v. Cental Intelligence Agency*, 911 F.2d 755 (D.C. Cir. 1990).........................21, 22, 29

*Fitzgibbon v. Central Intelligence Agency*, 578 F. Supp. 704 (D.D.C. 1983) ...............................22

*Hudson River Sloop Clearwater, Inc. v. Department of the Navy*, 891 F.2d 414 (2d Cir. 1989) .......................................................................................................21, 34

*Maddox v. Williams*, 855 F. Supp. 406 (D.D.C. 1994), *aff'd, Brown & Williamson v. Williams*, 62 F.3d 408 (D.C. Cir. 1995)...........................................................30, 39

*McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983) ............................................. *passim*

*Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976) ..........................................19

*New York Times v. United States*, 403 U.S. 713 (1971) ...............................................33

*Peay v. Department of Justice*, No. 04-1859 (CKK), 2007 U.S. Dist. LEXIS 17586 (D.D.C. March 14, 2007)......................................................................................21

*Porter v. Califano*, 592 F.2d 770 (5th Cir. 1979) ..................................................................37

*Rubin v. Central Intelligence Agency*, No. 01 CIV. 2274 (DLC), 2001 U.S. Dist. LEXIS 19413 (S.D.N.Y. 2001) ....................................................................................................21

*Schlesinger v. Central Intelligence Agency*, 591 F. Supp. 60 (D.D.C. 1984)..........................24

*Snepp v. United States*, 444 U.S. 507 (1980) ...................................................................19, 20

*Solantic, LLC. V. City of Neptune*, 410 F.3d 1250 (11th Cir. 2005)........................................35

*Stillman v. Cent. Intelligence Agency*, No. 01-1342 (EGS), 2007 U.S. Dist. LEXIS 24206 (D.D.C. March 30, 2007) ................................................................................................20

*Students Against Genocide v. Department of State*, 257 F.3d 828 (D.C. Cir. 2001)...................29

*Trudeau v. Federal Trade Commission*, 456 F.3d 178 (D.C. Cir. 2006).....................................37

*U.S. Department of State v. Ray*, 502 U.S. 164 (1991).............................................................27

*United States v. Chemical Foundation, Inc.*, 272 U.S. 1 (1926) ...........................................27, 31

*United States v. D'Agostino*, 338 F.2d 490 (2d Cir. 1964).......................................................27

*United States v. Dercacz*, 530 F. Supp. 1348 (E.D.N.Y. 1982 ) ..............................................27

*United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972) ................................................20, 33

*United States v. Progressive, Inc.*, 467 F. Supp. 990 (W.D. Wis. 1979), *injunction dissolved*, 610 F.2d 819 (7th Cir. 1979)........................................................................34

*United States v. Quattrone*, 402 F.3d 304 (2d Cir. 2005)........................................................19

*Weinberger v. Romero-Barcelo*, 456 US 305 (1982) ..............................................................34

*Wolf v. Central Intelligence Agency*, 473 F.3d 370 (D.C. Cir. 2007).....................................21, 22

## CONSTITUTION AND STATUTES

5 U.S.C. § 706(2) .........................................................................................................36, 37, 40

28 U.S.C. § 2201.................................................................................................................17

U.S. Const. art. I, § 6, cl. 1...................................................................................................39

**RULES AND REGULATIONS**

Executive Order 13292, 32 C.F.R. 2001.12 (2003) ................................................................ *passim*

Fed R. Civ. P. 56 et. seq. ...................................................................................................... *passim*

**MISCELLANEOUS**

Valerie Plame Wilson Compensation Act, H.R. 501, 110th Cong. (2007) ........................2, 7, 8, 14

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local

Civil Rules for the Southern District of New York, plaintiffs Valerie Plame Wilson and Simon &

Schuster, Inc. ("Valerie Wilson" and "Simon & Schuster," collectively, "plaintiffs") respectfully

submit this Memorandum of Law in support of their Motion for Summary Judgment and for

permanent injunctive relief as to the Complaint for Declaratory and Injunctive Relief, dated May

31, 2007 (the "Complaint").

## PRELIMINARY STATEMENT

This is an action by Valerie Wilson and Simon & Schuster, the publisher of Ms. Wilson's

forthcoming memoir entitled "Fair Game" (the "Manuscript" or "Memoir"), seeking a

declaratory judgment that the Executive Branch of government cannot restrain publication of

previously unclassified or currently unclassifiable information documenting Ms. Wilson's dates

of federal service disclosed in 2006 by the Central Intelligence Agency ("CIA") in an official,

authorized, and unclassified letter now in the Congressional Record and available worldwide on

the Library of Congress website.

There is no dispute as to the material facts dictating the narrow declaratory judgment

plaintiffs seek:  the government may not censor Ms. Wilson's Manuscript to preclude publication

of her actual dates of government service when that precise information was officially

acknowledged by the CIA in an unclassified document and is now publicly available in the

Congressional Record.  The undisputed facts establish that Valerie Wilson's decades of

dedicated service to the United States ended prematurely when in July 2003 she was "outed" as

an undercover officer for the CIA by senior government officials entrusted to protect that

classified information.  More than two years later, on February 10, 2006, following Ms. Wilson's

retirement from the CIA, the CIA's "Chief, Retirement and Insurance Services" sent  Ms. Wilson

an unclassified letter documenting her 20 years with the Agency.  The letter was:

- on official CIA letterhead;

- written and released by a senior CIA official;

- sent by regular mail; and

- contained no classification stamp.

By any standard governing the treatment of classified information, it is indisputable that the February 2006 letter was an unclassified and official CIA confirmation of Ms. Wilson's service dates.

Nor is it subject to dispute that following her receipt of this official confirmation of her service dates, and in connection with pending legislation to redress some of the harm caused by the Government's wrongful disclosure of her undercover status, Ms. Wilson's exact government service dates with the CIA entered the public domain. Since January 16, 2007, the date the "Valerie Plame Wilson Compensation Act" was introduced in Congress, the CIA's official letter including Ms. Wilson's actual dates of service, has appeared in the Congressional Record and has been available worldwide on the Internet at http://www.thomas.gov. Despite actual knowledge of the letter, the CIA took no action for almost a year to classify or re-classify the information it officially acknowledged, and then the Agency attempted to alter the status of the letter only after it had been published in the Congressional Record.

Based on these undisputed facts, only one legal conclusion can be logically drawn: the CIA has officially and irretrievably acknowledged Ms. Wilson's 20 years of service with the Agency. While the law accords significant deference to the Executive Branch in its determination of what is or is not classified information, that issue is not before this Court. Rather, courts have consistently recognized that when, as here, the CIA "officially acknowledges" information – even inadvertently – and that information enters the public

domain, the Government cannot constitutionally preclude the publication of the precise same information.

In short, Ms. Wilson and Simon & Schuster are not asking this Court to look over the shoulder of the CIA and to review the legitimacy of individual redactions to her Manuscript. Instead, the plaintiffs seek a simple and direct declaration that the precise dates of Ms. Wilson's 20 years of service with the Agency have been officially acknowledged and are now in the public domain. As such, the Government must be enjoined from unconstitutionally censoring Ms. Wilson's Manuscript in a manner that precludes any reference to her pre-2002 service. (*See*, Point I).

In addition to the constitutional infirmity of the Government's prior restraint, its actions also violate Executive Order 13292 and the Administrative Procedures Act. Under the express terms of the Executive Order governing classification of information, the government may not properly classify or reclassify information that is irretrievably in the public domain. Yet, here, the government is attempting to do just that. Almost a year after it officially released the precise dates of Ms. Wilson's service in an unclassified document, and well after those same dates were published in the Congressional Record and became available worldwide, the CIA now seeks to belatedly deem such information "classified." The law prohibits it from doing so. (*See*, Point II).

## STATEMENT OF FACTS

### Valerie Wilson is Exposed as a Covert CIA Officer

On July 14, 2003, Robert Novak's syndicated column revealed Valerie Wilson's status as a covert CIA officer. Novak wrote that "[Ambassador Joseph] Wilson never worked for the CIA, but his wife, Valerie Plame, is an Agency operative on weapons of mass destruction."

3

With that one reported sentence – Mr. Novak "outed" Valerie Wilson.[1] *See* Smallman Decl., Ex. A-1, N.; *see* Def. R., Tab 20, 27 E.

As a result of senior government officials wrongfully revealing her covert CIA status to the press in 2003, Valerie Wilson's years of loyal service to the government were effectively and prematurely ended. As later reprinted in her husband's book, *The Politics of Truth*, Mr. Wilson reported her response: "Twenty years of loyal service down the drain, and for what, my wife asked after she had read it. What was Novak trying to say? What did blowing her cover have to do with the story?" *See* Smallman Decl., Ex. O, T; *see* Def. R., Tab 15 A, 27 D, 27 E; Classified Administrative Record, *Wilson, et al. v. McConnell, et al*, pursuant to Notice of Filing of Classified Document, dated June 28, 2007 ("Def. Cl. R.), Tab 5, 6, 7.[2]

From Lewis Libby's trial and conviction, it is now widely known that several senior government officials – including Karl Rove, Richard Armitage, and Ari Fleisher, as well as Mr. Libby – leaked Ms. Wilson's covert status to a number of reporters. While government officials were leaking information about Valerie Wilson's employment affiliation with CIA, this information was highly classified. The leaks were considered to be of such a serious nature that a criminal referral was instituted, resulting in the investigation ultimately leading to Mr. Libby's conviction. *See* Smallman Decl., Ex. L, M, M-1, M-2

---

[1] Citations to the Exhibits to the Declaration of David B. Smallman, made on June 28, 2007, are in the form "Smallman Decl., Ex. __." Citations to the unclassified Administrative Record submitted by defendants in this action, on June 28, 2007, are in the form "Def. R., Tab __." Citations to defendants' classified Administrative Record are in the form "Def. Cl. R., Tab __."

[2] Mr. Wilson's book, which was subject to review prior to its publication in 2004, reflected no determination by the government to redact or censor the fact that Ms. Wilson had been employed by the CIA for twenty years. *See* Smallman Decl., Ex. O; *see* Def. R., Tab 11, 24.

Further, in connection with Mr. Libby's sentencing, the CIA confirmed that at the time of
the leak, Ms. Wilson was a covert CIA employee for whom the CIA was taking affirmative
measures to conceal her intelligence relationship to the United States. As acknowledged by the
government in connection with the sentencing phase of the criminal prosecution of I. Lewis
Libby, in January 2002, Ms. Wilson was a CIA operations officer, assigned to the Counter
Proliferation Division ("CPD") at CIA Headquarters. In that capacity, she served as the chief of
a CPD component with responsibility for weapons proliferation issues related to Iraq. Over the
years, on numerous occasions Ms. Wilson traveled overseas, always under a cover identity, using
an official or non-official cover, with no ostensible relationship to the CIA. *See* Smallman Decl.,
Ex. L, M, M-1, M-2.

**The Consequences of the Government Leaks**

The immediate result of Mr. Novak's revelation was the end of Ms. Wilson's career as a
highly trained covert intelligence officer. Following the public disclosure of her covert status,
she continued for a limited period of time in other capacities with the CIA, supervising recruiting
and training for CPD. *See* Smallman Decl. Ex. M-1. Yet, her government service as an
undercover agent, her ability to travel overseas on assignment, and her expectation to advance
within the Agency were all prematurely over. Ms. Wilson resigned her position with the CIA on
January 9, 2006. *See* Smallman Decl., Ex. B (e-mail dated November 28, 2005, with attached
memo); M-1; Def. R., Tab 11, 24.

Prior to her resignation, Ms. Wilson explored her eligibility to receive retirement
benefits. She learned that, despite 20 years of service, her earned annuity could not be paid until
she was 56 years old – almost a decade after her resignation. Because of her unique
circumstances – she did not choose to lose her career and retire early – Ms. Wilson inquired
whether the applicable age requirements could be waived in her situation. Following an internal

review at CIA, which included review of a draft resignation memorandum submitted by Ms. Wilson to its Office of General Counsel, in November 2005, she received the "final word" from the Agency. *See* Smallman Decl., Ex. A-1, B; D, E, J; see Def. R., Tab 20, 27, 31 A.

Because of the statutory retirement regulations, CIA could not grant a waiver that would allow Ms. Wilson to obtain an immediate annuity. The Agency informed Ms. Wilson that she would receive an "official" memorandum verifying her annuity and the year it would become payable. *See* Smallman Decl., Ex. A-1, B, D, E, J, P, Q, R; *see* Def. R., Tab 20, 27, 31 A. Ultimately, this "official" memorandum came in the form of the February 10, 2006 letter that is the subject of this litigation. *See* Smallman Decl., Ex. A-1, G, I, J; *see* Def. R., Tab 19, 20, 27, 27 C, 27 D, 27 E, 31, 31 A; *see* Def. Cl. R., Tab 5, 6, 7.

**The February 10, 2006 Letter**

In response to her inquiries regarding the payment of her government annuity and her request that the statutory date for pay-out be waived, an official CIA letter was generated. Dated February 10, 2006, the letter was on CIA letterhead and was signed by the CIA's "Chief, Retirement & Insurance Services." (the "Agency Annuity Letter" or "Letter"). "). *See* Smallman Decl., Ex. A-1, G, I, J; *see* Def. R., Tab 19, 20, 27, 27 C, 27 D, 27 E, 31, 31 A; *see* Def. Cl. R., Tab 5, 6, 7.

The Agency Annuity Letter acknowledged and disclosed Ms. Wilson's eligibility to receive a deferred annuity under the Federal Employees Retirement System (FERS) Special Category at the conclusion of her government service. Smallman Decl. Specifically, the Letter officially disclosed the exact dates of her federal service and government affiliation, including that her dates of service began on "November 11, 1985" and included "6 years 1 month and 29 days of overseas service." *See* Smallman Decl., Ex. A-1, G, I, J; *see* Def. R., Tab 19, 20, 27, 27 C, 27 D, 27 E, 31, 31 A; *see* Def. Cl. R., Tab 5, 6, 7. The Agency Annuity letter also revealed

that she had "achieved a minimum of 20 years of service" and was entitled to receive a deferred

annuity at her Minimum Retirement Age of 56. *Id.*

      The Agency Annuity Letter did not include any form of a classification stamp and did not

include any indicia that the Letter, or information it contained, was classified. *See* Smallman

Decl., Ex. A-1, G, I, J; *see* Def. R., Tab 19, 20, 27, 27 C, 27 D, 27 E, 31, 31 A; *see* Def. Cl. R.,

Tab 1, 2, 3, 6 , 7. Indeed, the Letter was sent by First Class Mail, a method of delivery forbidden

for classified documents. *Id.* Further, the Letter was signed by Karen Tumulo, CIA's Chief,

Retirement & Insurance Services, a manager presumed to be knowledgeable concerning the

handling of classified information. *Id.* Valerie Wilson received no indication from the CIA at the

time she received the Letter (or for almost a full year thereafter) that this official correspondence,

which had been provided to her expressly for retirement benefit planning purposes and in the

context of overcoming a statutory limitation upon her ability to obtain an immediate annuity, was

itself purportedly classified or subject to any restrictions regarding publication or dissemination.

*See* Smallman Decl. A-1, B, F, G, I, J; *see* Def. R., Tab 1, 18, 19; 31 *see* Def. Cl. R., Tab 1, 2, 3,

6 , 7.

**The Valerie Plame Wilson Compensation Act and the
Inclusion of the CIA Letter in the Congressional Record**

      Because Valerie Wilson learned that her annuity would not become payable until she was

56 years old and the CIA could not waive this requirement, only an act of Congress could

effectuate  a change that would allow her to collect it. *See* Smallman Decl., Ex. A-1, B, E, Q, P;

*see* Def. R., Tab 1, 27, 27 D, 27 E, 29, 29 B, 31, 31 A. Accordingly, in late 2005, a member of

Congress sympathetic to the plight she and her family were placed in because of her

unauthorized "outing" as a covert agent by senior White House officials, raised the possibility of

a private bill to make her annuity benefits available earlier than the statutory age requirement.

Based on these discussions, draft legislation was prepared in October 2005 that would waive the

age requirement for Ms. Wilson to receive her government annuity.  *See* Smallman Decl., Ex. A-

1, B, E, Q, P; *see* Def. R., Tab 1, 27, 27 D, 27 E, 29, 29 B, 31, 31 A.

As part of this dialogue with Congress, Representative Jay Inslee's office confirmed that

Ms. Wilson in fact had 20 years of government service and was entitled to an annuity.  Indeed,

on February 26, 2006, after she received the Agency Annuity Letter, Ms. Wilson wrote to Mr.

Inslee's Chief of Staff "to follow up and let you know that on 10 February, the agency sent me

an official letter stating that they resolved the issue of when I was eligible for an annuity.

According to them, I am eligible to receive approximately $1,795 per month when I turn 56.  I

will be happy to fax you the actual letter, if it would be helpful."  *See* Smallman Decl., Ex. B, J;

*see* Def. R., Tab 20, 27, 31.

The proposed federal legislation initially drafted in October 2005 was not introduced

until 2007 because it was deemed unlikely that the Republican-controlled Congress would have

been willing to enact it at that time. *See* Smallman Decl., Ex. B.  Following the November 2006

election and the shift in control of both houses of Congress to the Democratic party,

Congressman Inslee renewed his efforts in the House of Representatives to allow Valerie Wilson

to receive her deferred annuity benefits, and introduced a bill for that purpose in mid-January

2007. *Id.*

Almost a year after the February 10, 2006 official CIA letter was sent, Congressman Jay

Inslee introduced the Valerie Plame Wilson Compensation Act, H.R. 501, on January 16, 2007 in

the United States House of Representatives.  Representative Inslee's floor statement brought to

the attention of Congress "one of the human impacts caused by the indiscretion of government

officials regarding the covert identity of Central Intelligence Agency operative Valerie Plame Wilson." *See* Smallman Decl., Ex. A-1, E, G; *see* Def. R., Tab 20, 27 D, 27 E.

As noted by Representative Inslee, on July 14, 2003 when Robert Novak first identified her as a CIA agent, Valerie Wilson's "professional life was forever altered, and her CIA career irrevocably ruined by the syndicated publication of a column, which revealed [Ms. Wilson's] identity as a covert CIA officer . . . . [F]ollowing the initial outing in the media, [Valerie Wilson's] future as a covert CIA operative ceased to exist and her career of two decades was destroyed. On January 9, 2006, [Ms. Wilson] resigned from the CIA, recognizing that any future with the Agency would not include work for which she had been highly trained." *See* Smallman Decl., Ex. A-1, E, G; *see* Def. R., Tab 20, 27 D, 27 E.

Representative Inslee's remarks established the basis for the legislation: "Despite [Valerie Wilson's] 20 years of federal service, she [did] not meet the minimum age requirement to receive her retirement annuity. She has been left without a career. Accordingly, Congressman Inslee introduced legislation "to allow [Valerie Wilson] to qualify for her annuity, as one who has served her country for two decades, and waive the age requirement for collecting it." *See* Smallman Decl., Ex. A-1, E, G; *see* Def. R., Tab 20, 27 D, 27 E.

"To best demonstrate the annuity for which [Valerie Wilson] may qualify if th[e] [proposed] legislation were to pass," Congressman Inslee "submit[ed] for the record a document sent to [Valerie Wilson] by the CIA. It outlines her deferred annuity and testifies to 20 years of service. The document bears no indications of classified material as required by CIA procedures, and was sent via regular postal mail after [Valerie Wilson] was no longer in the employ of the CIA." Indeed, Representative Inslee introduced the Agency Annuity Letter into the Congressional Record only after "[l]egal experts have assured [him] that this is not a classified

document."[3]  *See* Smallman Decl., Ex. A-1, E, G, J; *see* Def. R., Tab 20, 27 D, 27 E, 31, 31 A;

*see* Def. Cl. R., Tab 1, 2, 3, 6 , 7.

As part of the legislative process, on January 16, 2007, the Agency Annuity Letter,

including Ms. Wilson's exact federal service dates, entered the Congressional Record and since

that date, it has been continually available worldwide on the Internet through the Library of

Congress website at http://www.thomas.gov.  *See* Smallman Decl., Ex. A-1, G, I, J; *see* Def. R.,

Tab 19, 20, 27, 27 C, 27 D, 27 E, 31, 31 A; *see* Def. Cl. R., Tab 1, 2, 3, 6 , 7.

## CIA's Improper Effort to Treat Valerie Wilson's Federal Service Dates as Classified

Well after the October 2005 initial consideration of legislation to waive the age

requirement for Ms. Wilson's annuity, and the February 2006 receipt of the Agency Annuity

Letter, Ms. Wilson entered into a publishing agreement with Simon & Schuster and commenced

writing her Memoir.  In accordance with her contractual obligations, in September 2006, she

submitted a draft of her Manuscript to the CIA's PRB for clearance.

From the outset, Ms. Wilson had endeavored to reach a reasonable resolution with the

Agency of any possible national security issues arising from her Memoir.  [cite to Jan 9 letter]

Ms. Wilson was not seeking *carte blanche* to discuss her entire government service or to reveal

any classified information.  *See* Smallman Decl., Ex. C, G, H, I, J; *see* Def. R., Tab 6, 7, 8, 9, 10,

11, 13, 14, 15, 15 ,A, 16, 17, 20 – 31.  Indeed, Ms. Wilson had been engaged in the PRB process

---

[3] The version of the Agency Annuity letter introduced into the Congressional Record
redacted certain dates when Ms. Wilson was on leave without pay from the Agency.  Otherwise
the version of the Letter introduced faithfully documented Ms. Wilson's actual time of service
with the Agency, from November 9, 1985 to January 9, 2006, including the time she spent
overseas.  It is indisputable that the February 10, 2006 letter disclosing the information issue in
this case was included on page E119 of the Congressional Record.  *See* Smallman Decl., Ex. A-
1, J, F.

since June 2006.[4]  *See* Smallman Decl., Ex. C; *see* Def. R., Tab 3, 4, 15.    Ultimately, Ms.

Wilson submitted the complete manuscript to the PRB for its review in early September, 2006

and requested a meeting in mid-October 2006 to discuss any required redactions.  *Id.*  In the

course of requested postponements to this meeting, Ms. Wilson learned for the first time that

there was an internal Agency debate about the propriety of revealing information about the

duration of her employment affiliation with CIA.  *Id.*  During her first in-person meeting on

November 1, 2006, PRB officials indicated that it was *their* view that prohibiting Ms. Wilson

from disclosing her CIA affiliation prior to 2002 would lead to an "absurd" and "ludicrous"

result.  *See* Smallman Decl., Ex. C; *see* Def. R., Tab 15.  Nonetheless, on November 8, 2006, Ms.

Wilson was informed that a decision had been made by "the Seventh Floor," *i.e.,* senior Agency

management, not to permit her to disclose her Agency affiliation prior to 2002.  *Id.*

Despite apparent disagreement internally at the CIA, PRB's Chairman indicated that his

hands "were tied" because Agency management had intervened and the final decision rested with

the Office of the Director, rather than with the individuals directly involved in the review process

and therefore most knowledgeable about the specific aspects of information subject to

nondisclosure for national security purposes.  *See* Smallman Decl., Ex. C; *see* Def. R., Tab 15.

On or about late December 2006, and by letter received on January 9, 2007, the CIA was

reminded by Ms. Wilson's counsel that the dates of her federal service were disclosed officially

by the Agency in an unclassified letter to her in February 2006 and that disclosure of Ms.

Wilson's federal service information conformed to other public domain information that had

previously been reviewed with CIA.   In light of its prior disclosure, CIA was requested to

---

[4] In initial conversations with Ms. Wilson, PRB agreed to review her memoir on a rolling basis in order to facilitate editing of her manuscript by Simon & Schuster.  Then, the PRB abruptly reversed course during the summer of 2006 and informed Ms. Wilson that it would only consider the manuscript in its entirety.

reconsider its untenable stance. *See* Smallman Decl., Ex. C; *see* Def. R., Tab 15. Instead, it was not until January 19, 2007 that the CIA first asked Ms. Wilson to return the official, unclassified Agency Annuity Letter. *See* Smallman Decl., Ex. G; *see* Def. R., Tab 18. Prior to that date, the CIA failed to take any action concerning its unclassified release of Ms. Wilson's service dates. *See* Smallman Decl., Ex. A-1, G; *see* Def. R., Tab 18, 20; *see* Def. Cl. R., Tab 1, 2, 3, 6 , 7.

Indeed while the CIA had actual knowledge of the existence in unclassified form (and its disclosure of) Valerie Wilson's precise dates of service from at least February 10, 2006 through January 19, 2007, it took no steps whatsoever for nearly a year to: (1) reclassify any information contained in the CIA Letter, (2) indicate any national security classification of the contents of the letter through proper marking and redelivery of the letter, (3) retrieve the original letter, or (4) restrict in any way dissemination of the letter or any information contained therein. *See* Smallman Decl., Ex. A-1, G; *see* Def. R., Tab 18, 20; *see* Def. Cl. R., Tab 1, 2, 3, 6 , 7.

In its January 19, 2007 letter, the CIA for the first time requested that Ms. Wilson "contact Karen F. Tumolo, [Chief, Retirement & Insurance Services] . . . to make arrangements to return the [February 10, 2006] letter" ("CIA's January 19 Letter"). At the time the CIA's January 19 Letter was written, it already knew that the Agency Annuity Letter had been printed in the Congressional Record. On January 23, 2007, the CIA acknowledged in writing to the Clerk of the House of Representatives that its February 10, 2006 letter, which the CIA stated contained "classified information," had been published in the Congressional Record on January 16, 2007. [5] *See* Smallman Decl., Ex. A-1, G; *see* Def. R., Tab 18, 20.

---

[5] CIA has asserted that "[a]s soon as [CIA] discovered [the letter contained classified information and should not have been mailed to Ms. Wilson], [CIA] took steps to rectify the error, including notifying the clerk of the House of Representatives." Actually, CIA waited *approximately two weeks* from the date it received a written reminder of the existence of its prior

Following receipt of the January 19, 2007 letter, Ms. Wilson agreed to provide a copy of the February 10, 2006 letter to the CIA and requested that the CIA provide her with a revised and remarked version of the Agency Annuity Letter, with any ostensibly classified information redacted, that complied in good faith with the applicable provisions of Exec. Order 13292, including § 1.6.[6] *See* Smallman Decl., Ex. H, I; *see* Def. R., Tab 22, 27.

Specifically, however, it was not until April 24, 2007 – some four months later – that the CIA purported to identify the information it had previously disclosed in February 2006 (now published in Congressional Record) – as "secret." *See* Smallman Decl., Ex. J; *see* Def. R., Tab 1, 29. Thus, on April 25, 2007, CIA's Acting General Counsel, John A. Rizzo, on behalf of defendant CIA and defendant Hayden, sent a letter to Valerie Wilson's attorneys in New York enclosing a newly redacted copy of the Agency Annuity Letter that he asserted "reflects the proper classification markings and that has been approved for release in redacted form as a result of a declassification review." *Id.* Notwithstanding the CIA's documented official disclosure of her service dates previously published in the Congressional Record, the newest version of the Agency Annuity Letter is largely blank, except for the CIA's official letterhead, date of the letter, addressee information, CIA service dates from 1/01/2002 to 1/09/2006, and title of the sender. *Id.*

Notably, this new version of the Agency Annuity Letter includes the crossed out word "secret." The word "secret" appeared nowhere on the original and official February 10, 2006 letter and was added to this new version, and then crossed out, in order to create the appearance

---

official disclosure on January 9, 2007 of Ms. Wilson's federal service dates either to contact Ms. Wilson or the House of Representatives.

[6] At the same time, Ms. Wilson formally reserved all her rights regarding her contention that the Agency Annuity Letter was an official acknowledgement of her precise term of service and was irretrievably in the public domain. *See* Smallman Decl., Ex. I; *see* Def. R., Tab 27.

or pretext that as originally issued the document was labeled "secret." *See* Smallman Decl., Ex. A, A-1, A-2, B, F, G, I, J; *see* Def. R., Tab 18, 19; 31 *see* Def. Cl. R., Tab 1, 2, 3, 6 , 7.    The CIA now contends that the unclassified February 10, 2006 Agency Annuity Letter had been "mistakenly sent to her." *Id.*[7]

**The Government's Unconstitutional Prior Restraint and Censoring of the Memoir**

Ms. Wilson's initial and continuing communications with the PRB showed that she planned to write and publish a memoir.  At no point during the five months of initial correspondence with PRB did anyone there indicate that she would be effectively prevented from publishing a memoir that reflected the duration of her employment (and hence the seriousness of her "outing" as a senior and experienced intelligence officer, rather than a relatively new employee with limited service).  As a general matter, PRB had essentially acknowledged that most of the material in the book was, by itself, innocuous and posed no actual threat to national security.  However, Ms. Wilson and her counsel were nevertheless informed in November 2006

---

[7] To establish that the information was already officially acknowledged and was irretrievably in the public domain, Ms. Wilson's lawyers sent the CIA's Acting General Counsel a copy of the February 10, 2006 letter from CIA to Ms. Wilson that was previously published in the Congressional Record on January 16, 2007, in the redacted form received from Congressman Jay Inslee's office, together with the final floor statement in connection with the Valerie Plame Wilson Compensation Act, H.R. 501, the bill as introduced, and pages E-118-119 of the Congressional Record.  A copy of the e-mail dated January 16, 2007 from Brian Bonlender, Chief of Staff, Congressman Jay Inslee, to Valerie Wilson, with three attachments, was sent to Mr. Rizzo, and subsequently sent to Defendant J. Michael McConnell, Director of National Intelligence. Because the government has asserted, as of April 25, 2007, that one of those attachments, the redacted annuity letter submitted into the Congressional Record, is now purportedly "classified," defendants have included the copy of the February 10, 2006 letter (in the form submitted by Congressman Inslee to the Congressional Record) in its "Classified Administration Record."  Plaintiffs have entered into a stipulation and protective order pursuant to which defendants' treatment of that document is subject to a full reservation of rights and without prejudice to plaintiffs' assertion in this action that the letter is not classified.  In any event, that same letter was published in the Congressional Record, and remains publicly available.  *See* Smallman Decl., Ex. J; *see* Def. R., Tab 27 D, 28.

that the CIA's Director, General Hayden, had personally decided that Ms. Wilson's federal

services dates with CIA could not be disclosed.  *See* Def. R., Tab 28.  CIA therefore denied

approval for her to publish the first half of her Manuscript because it was "replete" with

information that confirmed her actual service dates with the Agency.  At the same time, PRB

informed Ms. Wilson that while there was "more than one approach" to revising the manuscript

to render it unclassified, CIA also recognized that "these options might not be feasible in some

instances and that the only way to avoid revealing classified information in those cases would be

to recast that information or fictionalize it . . . ."  *See* Smallman Decl., Ex. C, G, I, J.; *see* Def.

R., Tab 28. Over the next several months, Ms. Wilson and her representatives attempted to

resolve the impasse with the CIA concerning the Agency's demand that significant changes be

made to the Manuscript based largely on whether her actual dates of service were in the public

domain. *Id.*

Given the CIA's belated attempt to classify or reclassify the information documenting her

service dates, Ms. Wilson understandably was unable to resolve the impasse with PRB

concerning the significant redactions to her Manuscript.  Subsequently, on April 19, 2007, the

CIA confirmed that Ms. Wilson had exhausted her administrative remedies concerning the

Agency's demands.  The April 19, 2007 letter  stated that "with limited exceptions, the classified

information the PRB identified in [the Manuscript] relates to a single issue, of which [Valerie

Wilson was] aware, and reflects the classification determination made by the Director of the

Agency [defendant Hayden].  Because the Agency has provided [Valerie Wilson] with a level of

administrative process that exceeds the requirements of the applicable Agency regulations,

[Valerie Wilson has] exhausted [her] administrative remedies with respect to this classification

determination."  *See* Def. R., Tab 28.

The "single issue" referred to in the April 19, 2007 letter was the unwillingness of the CIA and defendant Hayden to permit Valerie Wilson to disclose her federal service dates prior to January 1, 2002 because such information was purportedly "classified" and therefore remained subject to Ms. Wilson's secrecy agreement as ostensibly "secret" information under Executive Order 13292. *See* Smallman Decl., Ex. C, G, I, J.; *see* Def. R., Tab 28. The CIA therefore censored the Manuscript to preclude any acknowledgment that she was employed by the Agency before 2002 notwithstanding its prior disclosure of her actual service dates in the unclassified Agency Annuity Letter and the fact that the January 2007 Congressional Record published the same information (where it has remained available worldwide on the Internet through the Library of Congress website at http://www.thomas.gov.) *See* Smallman Decl., Ex. A-1; *see* Def. R., Tab 27 E.

Following the CIA's express confirmation that Ms. Wilson had exhausted her administrative remedies concerning the publication of material that could reveal the "single issue" of her service dates, Ms. Wilson's counsel on April 27, 2007 urgently appealed to J. Michael McConnell, Director of National Intelligence ("DNI") in his oversight authority to promptly correct the unconstitutional actions of the CIA. *See* Smallman Decl., Ex. J, K. Ms. Wilson's counsel provided supporting documentation to show Mr. McConnell that the CIA, in order to conceal what the CIA characterized as an "administrative error," was attempting to improperly classify or reclassify Ms. Wilson's service dates by demanding that she delete or fictionalize her Memoir to censor known facts in the public domain. *Id.* The DNI was requested to correct the CIA's unconstitutional position, as he was statutorily empowered to do. *Id.* On May 18, 2007, the General Counsel of the Office of the Director of National Security ("ODNI"), Benjamin Powell, responded on behalf of Mr. McConnell, and declined Ms. Wilson's request to

the DNI to cure the alleged constitutional violation by CIA and its Director, General Hayden. *See* Def. R., Tab 38.

**Procedural History**

With the government's demand that Ms. Wilson and Simon & Schuster delete and censor constitutionally protected information that was irretrievably in the public domain, and its refusal to cure the prior restraint, plaintiffs had no recourse but to seek judicial relief. Accordingly, on May 31, 2007, plaintiffs Valerie Wilson and Simon & Schuster commenced this action against J. Michael McConnell, Director of National Intelligence, Central Intelligence Agency and Gen Michael V. Hayden, Director CIA, seeking a declaratory judgment and injunction, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and the Constitution.

Ms. Wilson's Memoir is scheduled to be published in October 2007. In order to meet its official publication date, a cleared manuscript must be available to be sent to the printer before the end of August. In light of this urgency, plaintiffs asked the Court for expedited relief and the Government agreed to proceed on an expedited schedule on the basis of undisputed facts. Defendants have not answered the Complaint[8] and no discovery has occurred. Accordingly, plaintiffs ask this Court to declare that (1) plaintiffs possess a First Amendment right to publish information in the Manuscript that references or is consistent with the same information contained in the Agency Annuity Letter and published in the Congressional Record; (2) defendants are permanently enjoined from restraining plaintiffs from publication of information that is consistent with the information contained in the Agency Annuity Letter and published in

---

[8] While defendants have not formally answered the Complaint, in public statements issued after the Complaint was filed, CIA stated, through spokesman Mark Mansfield, that the release of Ms. Wilson's federal service dates in 2006 had been in response to a query about retirement benefits and that "[t]he letter contained classified information and should not have been mailed to her" and was merely "an honest-to-goodness administrative error." *See* Smallman Decl., Ex. N.

the Congressional Record; and (3) defendants have violated the Administrative Procedure Act and its internal regulations governing prepublication review of writings by former CIA officials.

Plaintiffs are *not* asking this Court to review specific passages in the Manuscript to determine whether it can be properly concluded that such passages contain classified information. Rather, plaintiffs respectfully request this Court to issue the above-described declarations and orders (as more fully described in the Complaint). *See* Smallman Decl., Ex. A. With such declarations and orders, PRB would be required to review the Manuscript and clear for publication the information that had been improperly classified and therefore wrongly deleted in accordance with the criteria set forth in CIA's April 19, 2007 letter to Ms. Wilson. See Def. R., Tab. 28. That is, CIA would be compelled by the Court not to prohibit the publication by plaintiffs of information that would be consistent with Ms. Wilson's specific dates of service with the Agency, which have been officially acknowledged by CIA and are irretrievably in the public domain.

## ARGUMENT

### POINT I

#### THE CIA SHOULD BE ENJOINED FROM CENSORING PUBLICATION OF WILSON'S PRECISE CIA EMPLOYMENT DATES THAT WERE "OFFICIALLY ACKNOWLEDGED" AND ARE NOW IN THE PUBLIC DOMAIN

Summary judgment is to be granted issuing the declarations plaintiffs seek if there is "no genuine issue as to any material fact and . . . . the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). Here, there can be no dispute that Valerie Wilson's federal service dates were previously disclosed in an authorized, official, and unclassified CIA letter in 2006 and that after the letter was published in the Congressional Record her service dates irrevocably entered the public domain. To censor Ms. Wilson's manuscript in a way that prevents publication of the specific service dates disclosed by CIA would impose an unlawful

prior restraint on the author's and publisher's ability to communicate public domain information to the public and would chill protected speech by the threat of criminal sanction. *See Davis v. East Baton Rouge Parish School Bd.*, 78 F.3d 920, 928 (5th Cir. 1996) ("An order that prohibits the utterance or publication of particular information or commentary imposes a prior restraint on speech.") (citations omitted).[9]  Indeed, "it has long been established that such restraints constitute "the most serious and the least tolerable infringement" on our freedoms of speech and press." *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 49 (1976).  "Any imposition of a prior restraint, therefore, bears 'a heavy presumption against its constitutional validity.'" *Quattrone*, 402 F.3d at 310 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).

As a former CIA intelligence officer, Ms. Wilson is contractually obligated to have her manuscript reviewed and approved by the CIA.  *See Snepp v. United States*, 444 U.S. 507, 511 (1980).  No one disputes that fact and as a loyal former CIA officer, Ms. Wilson does not want to reveal any classified information in her Memoir.  However, notwithstanding her status as a former CIA agent, Ms. Wilson is no different from any other author in that she, too, is free to publish unclassified information and information that is in the public domain. *See, e.g., Snepp, supra*, at 511 ("Government does not deny – as a general principle – [former CIA employee's] right to publish unclassified information.").  *See also, McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983) (author has "strong [F]irst [A]mendment interest in ensuring that CIA censorship of his article results from a *proper* classification of the censored portions") (citing *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1367 (4th Cir.) ("the deletion items should be

---

[9] The term prior restraint describes "a law, regulation or judicial order that suppresses speech – or provides for its suppression at the discretion of government officials – on the basis of the speech's content and in advance of its actual expression."  *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005) (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)).

suppressed only if they are found to be both classified and classifiable under the Executive Order"), *cert denied,* 421 U.S. 992 (1975)); *Stillman v. Cent. Intelligence Agency,* No. 01-1342(EGS), 2007 U.S. Dist. LEXIS 24206 at *13 n.4 (D.D.C. March 30, 2007) ("Court recognizes, however, that any secrecy agreement which purports to prevent disclosure of unclassified information would contravene *First Amendment* rights" (citing *United States v. Marchetti,* 466 F.2d 1309, 1317 (4th Cir. 1972) ("We would decline enforcement of the secrecy oath signed when he left the employment of the CIA to the extent that it purports to prevent disclosure of unclassified information, for, to that extent, the oath would be in contravention of his *First Amendment* rights.")).

In sum, plaintiffs [10] have a well recognized First Amendment right to publish *unclassified* information about Valerie Wilson's life – specifically, her dates of federal service as previously disclosed by the CIA – and a corresponding interest in ensuring that the Agency's pre-publication review process is reasonably structured to prevent publication only of *properly* classified material. *See Snepp,* 444 U.S. at 520 (Stevens, J., dissenting) (a fundamental public interest "lies in a proper accommodation that will preserve the intelligence mission of the Agency while not abridging the free flow of unclassified information"); *McGehee v. Casey,* 718 F.2d at 1148 ("the entire scheme of prepublication review [by the CIA] is designed for the purpose of preventing publication of classified information").

Accordingly, when, as here, information that the CIA officially acknowledged is now irretrievably in the public domain, the government must be enjoined from precluding publication of the same information.

---

[10] While Simon & Schuster is not subject to any agreement with the CIA, and this case does not implicate its right to publish public domain information with respect to Ms. Wilson in works by other authors, its First Amendment interests are plainly implicated by any restraint on its publication of Ms. Wilson's own memoir.

A.    **CIA "Officially Acknowledged" Valerie Wilson's Federal Service Dates**

Courts have consistently recognized that when information has been "officially acknowledged" and it enters the public domain, the government may no longer prevent access to or dissemination of the same specific information. Indeed, "when information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).[11] *See also, Wolf v. Cent. Intelligence Agency*, 473 F.3d 370, 378 (D.C. Cir. 2007) (discussing and applying doctrine); *Afshar, v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983) (same); *Fitzgibbon*, 911 F.2d at 765 (same); *Peay v. Dep't of Justice*, No. 04-1859 (CKK), 2007 U.S. Dist. LEXIS 17586, at *10 (D.D.C. March 14, 2007) (government may not withhold information that has been "officially acknowledged" or is in the "public domain"); *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414, 421 (2d Cir. 1989) (applying doctrine "when the government has *officially* disclosed the *specific* information being sought" and "the information sought has previously been made public through official disclosures"); *Rubin v. Cent. Intelligence Agency*, No. 01 CIV. 2274 (DLC), 2001 U.S. Dist. LEXIS 19413 at *14-15 (S.D.N.Y. Nov. 30, 2001) (recognizing "important distinction between official and unofficial disclosure").

Official acknowledgement by a government agency occurs when the following three criteria are met:

---

[11] While the "official acknowledgment" doctrine is typically applied in the context of determining whether information can be withheld by government agencies under FOIA, it is also broadly applicable, as here, to circumstances in which former government employees seek to publish information that is subject to secrecy agreements and the government invokes national security as the basis for censoring publication. *See Knopf*, 509 F.2d at 1370 (dispute among CIA and former CIA employee and publisher); *McGehee*, 718 F.2d at 1137 (former CIA officer seeking declaratory judgment that article he desired to publish contained no properly classified material). The official acknowledgment criteria "are important because they acknowledge the fact that in the arena of intelligence and foreign relations there can be a critical difference between official and unofficial disclosures." *Fitzgibbon*, 911 F.2d at 765.

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed. Third, the information requested must have been made public through an official and documented disclosure.

*Wolf*, 473 F.3d at 378 (quoting *Fitzgibbon* 911 F.2d at 765). "A plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Wolf*, 473 F.3d at 378 (quoting *Afshar*, 702 F.2d at 1130). Further, the plaintiffs must show that information disclosed into the public domain is as specific as that which is being sought to be published, relates to the same time period, and has been the result of an official disclosure. *See Fitzgibbon v. Cent. Intelligence Agency*, 578 F. Supp. 704, 715 (D.D.C. 1983); *Wolf*, 473 F.3d at 378 ("prior disclosure of similar information does not suffice; instead, the specific information sought by plaintiff must already be in the public domain by official disclosure").

Here, under the applicable law and indisputable facts, plaintiffs have met their burden of showing that each of the three criteria under the "officially acknowledged" doctrine have been satisfied. The CIA, through its own conduct, has waived any legitimate grounds it might otherwise have to forbid publication of information previously disclosed in unclassified form on the basis of harm to national security or for any other reason. It cannot now try to re-assert the pretense that Ms. Wilson only worked for the CIA starting in January 2002. To hold otherwise would maintain a charade that has no support in the law or these undisputed facts. *See Wolf,* 473 F.3d at 378 ("when information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim") (quoting *Fitzgibbon v. Cent. Intelligence Agency*, 911 F.2d 755, 765 (D.D.C. 1990). Accordingly, this Court should compel the CIA to permit disclosure by Ms. Wilson of her specific dates of service, as published in the Congressional Record for the last six months.

1.     **The Information at Issue is as Specific as
       the Information Previously Released by CIA**

The February 10, 2006 Letter drafted and officially released by the CIA, as submitted by

Congressman Inslee for publication in the Congressional Record, included the following

unclassified information:  (1) Valerie Wilson (a/k/a Valerie Plame) commenced her service with

CIA on "11/9/1985" (2) the dates of Ms. Wilson's CIA service were from "11/9/1985 to

1/9/2006—total 20 years, 7 days"; (3)  Ms. Wilson "acquired 6 years, 1 month and 29 days of

overseas service" with CIA.  *See* Smallman Decl., Ex. A-1; see Def. R. Tab 27 E; *see also*

http://www.thomas.gov.  By release of this official and unclassified letter, the CIA

acknowledged the specific dates of Ms. Wilson's CIA employment starting in 1985.

2.     **The Information at Issue Matches
       the Information Previously Disclosed by CIA**

Valerie Wilson, a loyal former CIA officer, is not seeking *carte blanche* to discuss her

entire government service or to reveal any classified information.  Rather, as the CIA has itself

acknowledged, the "single issue" presented here is whether Valerie Wilson and Simon &

Schuster can publish the specific information contained in the Agency Annuity Letter and

published in the Congressional Record.  *See* Smallman Decl., Ex. J; Def. R., Tab 28.  This

precise information includes an unequivocal acknowledgment that Ms. Wilson worked for the

CIA for 20 years, starting in 1985, and the information that plaintiffs seek to publish matches the

information previously disclosed by the CIA in the February 10, 2006 Annuity Letter.  *See*

Smallman Decl., Ex. A-1; *see* Def.  R. Tab 27 E.  Accordingly, plaintiffs seek a declaration that

any deletions to Ms. Wilson's manuscript required by the CIA must comport with the fact that

her twenty years of service with the Agency were acknowledged by CIA and that information is now in the public domain.[12]

### 3. The Information at Issue has been Made Public through an Official and Documented Disclosure by CIA

There can be no reasonable dispute given the indisputable material facts that the first two prongs of the "official acknowledgment" doctrine are satisfied. Thus, the primary remaining issue for this Court is whether the February 10, 2006 Agency Annuity Letter was an "official and documented" disclosure. Here too, as a matter of law no other conclusion can be reached. As courts have defined those terms, the February 10, 2006 Annuity Letter is on its face a "documented" and "official" disclosure. *See* Smallman Decl., Ex. A-1, F. In *Schlesinger v. Cent. Intelligence Agency*, 591 F. Supp. 60, 66 (D.D.C. 1984), for example, the district court analyzed whether the CIA had "officially acknowledged" certain information and construed the phrase "official disclosure" to mean "direct acknowledgments by an authoritative government source." Courts routinely distinguish "official" disclosures – like the CIA letter at issue here – from speculative ruminations by independent third parties. As the Fourth Circuit has noted, "it is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so." *Alfred A. Knopf, Inc.*, *supra*, 509 F.2d at 1370.

---

[12] This acknowledgment should have a significant impact on the CIA's present request for deletions. Because CIA has itself acknowledged that "[w]ith limited exceptions, the classified information the PRB identified in [the] manuscript relates to [the] single issue [of Valerie Wilson's pre-2002 dates of government service disclosed in the February 10, 2006 Annuity letter], and reflects the classification determination made by the Director of the Agency," Smallman Decl., Ex. J; Def. R., Tab 29 A. Nonetheless, plaintiffs also recognize that the timing of specific events discussed in her manuscript, along with other facts and locations, may remain classified. Thus, plaintiffs are not requesting the Court to review and pass on specific redactions by PRB, but seek to compel disclosure over CIA's objections of Ms. Wilson's specific dates of service.

Here, CIA's Chief, Retirement & Insurance Services knew of Valerie Wilson's federal service dates and disclosed them in a letter sent without any indicia of classification. As such, CIA's disclosure was not made by a unaffiliated author or unauthorized person. Rather, disclosure was made by a senior manager of the CIA presumed to be knowledgeable about handling of classified information. *See* Smallman Decl., Ex. A, A-1, B, F, G, I, J; *see* Def. R., Tab 18, 19; 31 *see* Def. Cl. R., Tab 1, 2, 3, 6 , 7.   Simply put, a letter issued by the CIA's Chief, Retirement & Insurance Services *is* a disclosure by "an authoritative government source." *Id.* Further, the disclosure did not occur in some offhand, casual manner.  Instead, the letter was issued after months of internal CIA dialogue regarding Ms. Wilson's entitlement to her annuity – an analysis that included CIA's office of General Counsel. *See* Smallman Decl., Ex. B.  Nor was the disclosure made in casual conversation or incidental to some other communication.  To the contrary, it came in an official letter on CIA letterhead devoted exclusively to documenting Ms. Wilson's dates and terms of service with the Agency and her entitlement to an annuity.  Finally, Ms. Wilson was not just *any* former employee at the time she received the Letter.  She had been the subject of intense media attention for years and was, at that time, the focus of a pending criminal investigation regarding the leak of her status.  By any analysis, the Agency Annuity Letter was sent by an authorized, high level manager and the Court can, and must, presume that she understood exactly what she was doing.  *See, e.g., McGehee v. Casey*, 718 F.2d 1137, 1148 ("recognizing the CIA's technical expertise and practical familiarity with the ramifications of sensitive information.").

This conclusion is, of course, underscored by the fact that the Agency Annuity Letter was indisputably not classified. The letter contained no indicia of classification.[13] Indeed, the letter was sent to Ms. Wilson by regular mail – a means forbidden for classified information. As a senior manager with the CIA, Ms. Tumulo was someone with presumed knowledge concerning proper procedures for classified information and the Court can presume that she released the information in unclassified form. Accordingly, Ms. Wilson was not prohibited by any secrecy agreements or by law from providing a copy of the Agency Annuity Letter to Congressman Inslee in connection with proposed legislation. *See* Smallman Decl., Ex. A-1. Similarly, after independently verifying that the Agency Annuity Letter was not classified, in the course of the legislation process, on January 16, 2007, Representative Inslee entered the letter into the Congressional Record and it irretrievably entered the public domain where it remains to date.

Under these circumstances, a "presumption of regularity" attaches to the performance by the CIA's Chief, Retirement & Insurance Services, which establishes that she was properly discharging her official duties when she sent the official and unclassified February 10, 2006 Agency Annuity Letter to Valerie Wilson. Indeed, for almost a century, the Supreme Court has recognized that "there is a presumption of regularity in the performance by a public official of his public duty. 'The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Knopf,* 509 F.2d 1362, 1368 (4th Cir. 1975) (*citing United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926).

---

[13] The newest, April 2007 version of the Agency Annuity Letter, in the form purportedly "classified" by CIA, notwithstanding the publication of the original letter in the Congressional Record, includes the crossed out word "secret." The word "secret" appeared nowhere on the original and official February 10, 2006 letter and was added to this new version, and then crossed out, creating the pretext that as originally issued the document was labeled "secret." *See* Smallman Decl., Ex. J.

The facts of *Chemical Foundation* are instructive. There, during World War I, a State Department official seized a number of German patents in accordance with the Trading With the Enemy Act and then transferred the patents to the Chemical Foundation, Inc., thereby ceding to the company a veritable monopoly. Following the end of the war, the government sought to set aside the sales. Yet, the Supreme Court declined to do so. After finding that the orders transferring the patents were sufficiently detailed, the Supreme Court invoked the "presumption of regularity" and "[u]nder that presumption, it will be taken that [the State Department official] acted upon knowledge of the material facts. The validity of the reasons stated in the orders, or the basis of fact on which they rest, will not be reviewed by the courts." *Id.* at 15.[14]

Like the orders issued in *Chemical Foundation*, the Court must presume that in issuing the February 10, 2006 unclassified letter, the CIA's Chief Retirement & Insurance Services acted upon knowledge of the material facts in doing so – including that the Letter was an official acknowledgment and unclassified disclosure of Ms. Wilson's dates of service. Indeed, the validity of the release of that information should not be reviewed by the courts. By "officially acknowledging" the precise dates of Ms. Wilson's actual terms of service with the CIA, the Agency waived any argument that the information it released was classified in February 2006 or

---

[14] *See also United States. v. D'Agostino*, 338 F.2d 490, 492 (2d Cir. 1964) (Italian marriage certificate upheld and entered into evidence under the presumption of regularity doctrine; public officers, in the absence of "clear evidence to the contrary," are presumed to have properly discharged their duties and official acts.); *United States v. Dercacz*, 530 F. Supp. 1348, 1352 (E.D.N.Y. 1982 )(when visa applicant could not recall events surrounding his application to Displaced Persons Commission, following *United States v. Chemical Foundation*, the court held "we must presume that the statements in the Commission report were based on an interview of defendant by a Commission official. Further, it is presumed that the United States immigration authorities complied with the Department of State regulations relevant to processing visa applications in 1949."); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) (Stating that "[w]e generally accord Government records and official conduct a presumption of legitimacy" in holding that Department of State's redaction of documents produced under FOIA was appropriate.) The same deference to official government actions should be accorded here.

can now be properly classified or reclassified. As a matter of law, this information has been "officially acknowledged" and has irretrievably entered the public domain.

**B.    Late Claims of Purported "Administrative Error" or "Mistake" Cannot Support CIA's Prohibition Against Publication of Unclassified or Unclassifiable Information in the Public Domain**

The CIA has publicly conceded that it voluntarily disclosed the specific information at issue in an unclassified letter prepared by its Chief, Retirement & Insurance Services, but contends – without any factual or legal support – that the information it previously disclosed in unclassified form could be classified as "secret" in April 2007 because its prior disclosure in 2006 was simply an "administrative error" and a "mistake". Smallman Decl., Ex.___.[15] Quite simply, it strains credulity for the Agency to assert at this late date that its official disclosure in February 2006 of Ms. Wilson's actual dates of service with the CIA "from 11/9/1985 to 1/9/2006" can be ascribed to "administrative error." *See* Smallman Decl., Ex. J. And even were it conceivable that this disclosure represents "administrative error," such error would not alter the effect of the official acknowledgement of this information.

Indeed, a similar argument was recently considered and rejected by the Federal District Court in the District of Columbia under circumstances analogous to those presented here. In *Aftergood v. Central Intelligence Agency*, 355 F. Supp. 2d 557, 563 (D.D.C. 2005), the CIA

---

[15] The law presumes Ms. Tumulo's actions were properly performed consistent with CIA policies, including Executive Order 13292 governing classified information. Thus, this Court can conclude as a matter of law that the information has been "officially acknowledged." Indeed, the presumption of regularity may not be overcome "in the absence of clear evidence." *Alfred A. Knopf v. Colby, supra,* at 1368. While plaintiffs' claim sets forth a clear question of law, the government's possible cross-motion cannot be so decided. To challenge this presumption, the government would have to produce evidence to support its "mistake" theory, necessarily raising a question of fact. Moreover, the CIA should not be allowed to hide behind *ex parte* submissions in an attempt to buttress its contention that the letter was an "administrative error." The basis for any claim of "mistake" or "administrative error" does not involve issues of national security, but rather the mindset of Ms. Tumulo. Plaintiffs will strongly object and will seek a lifting of any sealing should defendants attempt such a procedure.

sought to withhold from production under FOIA information about its aggregate budget that it asserted to be exempt from disclosure. The CIA conceded, however, "that it had inadvertently released the aggregate intelligence budget for 1963." *Id.* at 563. Notwithstanding CIA's assertion of "inadvertent release," which is similar to CIA's argument in this case of "administrative error," the court in *Aftergood* concluded "upon review of the evidence . . . that [CIA] had officially acknowledged the 1963 intelligence budget as defined in *Fitzgibbon*." *Id.* at 564. Accordingly, the court held that the CIA could not claim an exemption from disclosure of that specific information. *Id. See also, United States v. Chem. Found. Inc., supra,* 272 U.S. at 14-15 (presumption of regularity controls notwithstanding the government's contention that the orders were induced by misrepresentation).

As in *Aftergood*, this Court should reject the CIA's belated and unsupported effort to create an unjustified "mistake" exception to the "official acknowledgment" doctrine.[16] Whether or not the Agency Annuity Letter was, as CIA now asserts, "mistakenly sent" to Ms. Wilson or an "administrative error" by the CIA, is irrelevant to whether the "official acknowledgment" doctrine applies. The compelling logic underlying the doctrine is that when information that has

---

[16] CIA's assertion of "mistake" and "administrative error" appears to be premised upon Section 1.1(b) of Executive Order 13292, which states that information disclosed by a government agency by mistake does not therefore automatically become declassified. That argument, however, confuses the issue of "declassification" with the consequences of "official acknowledgment." Having been written and disseminated by a senior CIA official, the February 10, 2006 letter was not an "unauthorized disclosure" that would provide a basis for avoiding automatic declassification under Exec. Order 13292 § 1.1(b), but instead an obvious waiver, under the "official acknowledgment doctrine," of any right that CIA might have had to prohibit publication of the specific information that it disclosed in unclassified form, and hence into the public domain *See Dow Jones & Co. v. Dep't of Justice,* 880 F. Supp 145, 150-151 (S.D.N.Y. 1995), *vacating in part as moot,* 907 F. Supp. 79 (S.D.N.Y. 1995) ("Voluntary disclosures of all or part of a document [by the government] may waive an otherwise valid FOIA exemption") . *See also Students Against Genocide v. Dep't of State,* 257 F.3d 828, 836 (D.C. Cir. 2001) (waiver will be found when information sought is truly public and that disclosure involves no more than what is publicly available).

been released by an authoritative government source enters the public domain, one cannot constitutionally prevent the publication of the precise same information. Mistakes, errors, or curing the release play no role in the analysis.

Nor can it be credibly found that a senior CIA official, like Ms. Tumulo, "mistakenly sent" the Letter to Ms. Wilson as an "administrative error." As noted above, Ms. Tumulo is the CIA's Chief, Retirement & Insurance Services – someone with presumed knowledge concerning proper procedures for classified information. Further, the Letter was not some low level administrative task, done without thought or consideration. Ms. Wilson, and her status with the CIA, was the subject of intense public scrutiny at the time the Letter was sent and the very subject of the Letter – her dates of services and her entitlement to a federal annuity – was the subject of considerable internal review. To argue otherwise defies logic and is unsupportable.

Of course, this conclusion is buttressed by the CIA's failure to in any way try to cure – if that were even possible[17] – its official acknowledgment of Ms. Wilson's term of service. Indeed, while the CIA had actual knowledge of the existence in unclassified form (and its disclosure of) Valerie Wilson's precise dates of service from at least February 10, 2006 through January 19, 2007, it took no steps whatsoever for nearly a year to: (1) reclassify any information contained in the CIA Letter, (2) indicate any national security classification of the contents of the letter through proper marking and redelivery of the letter, (3) retrieve the original letter, or (4) restrict in any way dissemination of the letter or any information contained therein. To the contrary, for

---

[17] Since the Agency Annuity Letter was entered into the Congressional Record as part of the legislative process, it is privileged from return to the CIA pursuant to the Speech and Debate Clause of the Constitution, U.S. Const. Art. I §6, cl. 1. *See Maddox v. Williams*, 855 F. Supp. 406, 410-13 (D.D.C. 1994) (holding that "the Speech or Debate Clause stands as an insuperable obstacle to [civil litigant's] attempt to acquire by compulsion documents or copies of documents in the possession of the Congress" and noting that "the seizure of congressional files . . . is directly inconsistent with the constitutional design.")

approximately a full year, none of the measures set forth in Exec. Order 13292 applicable to the handling of "Classified National Security Information" were undertaken by the CIA with respect to information about Valerie Wilson's dates of federal service as set forth in the Agency Annuity Letter.[18]

Valerie Wilson's precise dates of service were officially released by the CIA in an unclassified document and are now part of the Congressional Record. Defendants cannot unring the bell by asserting that their documented, authorized, and voluntary disclosure was just a "mistake."[19] Thus, there simply is no basis for the CIA to maintain in effect that Valerie Plame is the only person in the world who is not entitled to publish this information on the grounds of purported "administrative error" or "mistake."

---

[18] The Letter was not labeled "Secret" or "Top Secret" and was merely sent via first class mail. The *Knopf* Court said that stamping is part of the presumption of regularity. 509 F.2d. at 1368. The lack of a stamp is presumed, absent any evidence to the contrary under *Chemical Foundation's* regularity doctrine, to be purposeful and deliberate.

[19] Indeed, in the course of negotiations concerning the attempt to censor any information in Ms. Wilson's Manuscript that revealed her dates of service, in December 2005 the CIA was expressly reminded that this precise information was not classified and had already been released in the Agency Annuity Letter. *See* Smallman Decl., Ex. C. Still, the CIA took no action until its January 19, 2006 Letter to Ms. Wilson and a January 23, 2007 letter to the Clerk of the House of Representatives. However, by these late dates, the information was in the public domain. Further, the original release of the unclassified information contained in the Agency Annuity Letter is consistent with the CIA's recent treatment of identical information in 2004, when Ms. Wilson's husband, Ambassador Joseph Wilson, published his book. There, in the course of its clearance procedures, the CIA did not object to a statement that confirmed Ms. Wilson's 20 years of service with the CIA. While not necessarily controlling, see, e.g., Afshar, 702 F.2d 1125, the fact that for years the CIA consistently took the position that Ms. Wilson's 20 years of service with the Agency was not classified creates an implication that something intervened – whether it be political pressure or something else – to cause the Agency to abruptly adopt a different position.

**C.    Because the Federal Service Dates Disclosed by CIA Are Irretrievably in the Public Domain and Unrecoverable from Congress, CIA's Belated Classification Determination Is Entitled to No Deference Whatsoever by the Court**

Valerie Wilson's actual service dates with the CIA – including the precise time periods she spent overseas – are irretrievably in the public domain.  As such, under Executive Order 13292, Section 1.7(c), the Government may not reclassify this information for the simple reason that it is not information that "may be reasonably recovered."  (*See,* Pt. II, *infra* and Note 16, *supra*).  Accordingly, the CIA's belated assertion of a purported "error" or "mistake" is irrelevant to any classification determination that is entitled to deference by the Court.  This case does not require the Court to "second-guess CIA judgments on matters in which the judiciary lacks the requisite expertise," *i.e.*, deference to Executive Branch determinations regarding classification determinations.  *McGehee v. Casey*, 718 F.2d 1137, 1149 (D.C. Cir. 1983).  As the D.C. Circuit Court of Appeals observed in *McGehee*,

> [W]hile the CIA's tasks include the protection of the national security and the maintenance of the secrecy of sensitive information, the judiciary's tasks include the protection of individual rights.  Considering that "speech concerning public affairs is more than self-expression; it is the essence of self-government," and that the line between information threatening to foreign policy and matters of legitimate public concern is often very fine, courts must assure themselves that the reasons for classification are rational and plausible ones.

*McGehee*, 718 F.2d at 1149 (citations omitted).

**D.    The Prior Restraint Imposed by CIA Is Unconstitutional Because No Harm to National Security Is at Issue When Information Officially Acknowledged by CIA Has Already Been Published in the Congressional Record**

Insofar as the CIA itself "officially acknowledged" Ms. Wilson's federal service dates, which are now available worldwide on the Internet and published in the Congressional Record, the government defendants have no basis in fact or law to assert that any harm to national security is at issue in this case.  Any such assertions should be ignored by the Court or given no

32

weight.  While the Supreme Court has held that the publication of previously unpublished classified information may be protected speech under the First Amendment, *see New York Times v. United States*, 403 U.S. 713, 714 (1971), this case involves already published information.  For at least six months the precise information at issue here has been available -- and will remain available – worldwide on the Internet and in the Congressional Record.  Indeed, the CIA officially released this information in February 2006 and, despite such action and actual knowledge of that official release, the Agency took no action regarding the release for almost a year.  It defies common sense to now argue that national security would be affected should Ms. Wilson also confirm her tenure with the Agency.  At this juncture, the government cannot be permitted to belatedly assert national security concerns to prevent publication of the  "officially acknowledged," public domain information at issue.  To do so would unconstitutionally stifle critical speech on the operation of the government – the improper outing of an experienced, senior intelligence officer by high administration officials.

In other cases involving sensitive national security information, courts consistently draw a line between sensitive information that is not public and information, like here, that is public, even if arguably sensitive.  The law protects the former but not the latter.  In *United States v. Marchetti, supra,* 466 F.2d 1309, for example, the court expressly stated that it "would decline enforcement of the secrecy oath signed when [Marchetti] left the employment of the CIA to the extent that it purports to prevent disclosure of unclassified information, for, to that extent, the oath would in contravention of his First Amendment rights." *Id.* at 1317.  The court further observed that "Marchetti retains the right to speak and write about the CIA . . . but he may not disclose *classified information* obtained by him during the course of his employment *which is not already in the public domain.*" *Id.* (emphasis added.) *See also, McGehee v. Casey*, 718 F.2d

1137, 1142-45 (D.C. Cir. 1983) (upholding pre-clearance review by CIA of former agent's

manuscript only on express understanding that CIA could not order the redaction of public

source information); *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414,

421 (2d Cir. 1989) (government may not invoke exemptions under FOIA pertaining to properly

classified information to prevent public disclosure "when the government has *officially* disclosed

the *specific* information being sought" and "the information sought has previously been made

public through official disclosures").[20]  In sum, this "official acknowledgment" case provides no

reasonable basis for any assertion by the CIA of any cognizable harm to national security.

### E.    A Permanent Injunction Restraining the CIA From Censoring Wilson's Actual Dates of CIA Service Should Be Issued

A permanent injunction should issue when plaintiffs have established the following four

factor test:  (1) that they have suffered an irreparable injury; (2) that remedies available at law,

such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction. *See, e.g., Ebay Inc.*

*v. Mercexchange, LLC*, 126 S.Ct. 1837, 1839 (2006); *Weinberger v. Romero-Barcelo*, 456 U.S.

305, 311-313 (1982).

Here, of course, the government's attempt to censor public domain information of

officially acknowledged speech constitutes a prior restraint and readily meets the criteria for an

injunction.  Indeed, injunctive relief is routinely granted to halt an invalid prior restraint on

---

[20] This point applies with special force to information that defendant CIA has acknowledged releasing in unclassified form. *See generally United States v. Progressive, Inc.*, 467 F. Supp. 990 (W.D. Wis. 1979) (entering preliminary injunction barring publication of an article on how to build a hydrogen bomb only after finding that some of the information was not publicly available), injunction dissolved, 610 F.2d 819 (7th Cir. 1979) (dissolving injunction and dismissing case on appeal when it appeared that others had published the same information while the action was pending").

speech. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70-72 (1963) (reversing appellate court's

reversal of a grant of injunctive relief where state commission's activities constituted a prior

restraint on expression); *Solantic, LLC v. City of Neptune*, 410 F.3d 1250 (11th Cir. 2005)

(holding that regulation constituted unconstitutional prior restraint on speech, and reversing and

remanding district court's denial of preliminary injunction); *Council for Periodical Distribs.*

*Ass'n v. Evans*, 827 F.2d 1483, 1485-88 (11th Cir. 1987) (affirming part of lower court's

decision enjoining prior restraint on sale of magazines); *ASF, Inc. v. City of Seattle*, 408 F. Supp.

2d 1102, 1107-09 (W.D. Wa. 2005) (enjoining city from denying new licenses under a

moratorium that was held to be an unconstitutional prior restraint on speech); *Am. Civil Liberties*

*Union v. City of Pittsburgh*, 586 F. Supp. 417, 423-25 (W.D. Pa. 1984) (granting permanent

injunction where defendant's actions intended to suppress dissemination of "Hustler" magazine

constituted an impermissible prior restraint).

  This Court should have no trouble concluding that the CIA's attempt to impose a prior

restraint on protected speech is causing irreparable injury that cannot be remedied by damages.

Similarly, given the fact that for the past six months the precise same information plaintiffs seek

to publish has been available worldwide via the Congressional Record, there can be no dispute

that the balance of hardships tip decidedly in plaintiffs' favor and that the public interest would e

served in allowing Ms. Wilson to acknowledge he actual dates of CIA service in her Manuscript.

An injunction should be granted.

## POINT II

### CIA'S CENSORSHIP OF VALERIE WILSON'S MEMOIR VIOLATES EXECUTIVE ORDER 13292 AND THE ADMINISTRATIVE PROCEDURES ACT

  Given the constitutional infirmity of defendants' actions, the classification or

reclassification of the Agency Annuity Letter after it was irretrievably placed in the

Congressional Record and the public domain also violates Exec. Order 13292 and the Administrative Procedures Act, 5 U.S.C. § 706(2)(B). Whether defendants' action is characterized as a reclassification or an original classification is immaterial to plaintiffs' motion for summary judgment. The essential facts are undisputed: plaintiffs' desire to publish information that defendants purport to classify after the information was officially released and entered the public domain. The classification of public domain information is unlawful regardless of whether it was an original classification or a reclassification under Exec. Order 13292 because the government may not properly classify public information. *See* Exec. Order 13292, Sec. 1.1(a)(2) (prohibiting the original classification of information not owned, produced, or controlled by the government) and Sec. 1.8(c) (prohibiting reclassification of information after release to the public).[21]

This Court must conduct a *de novo* review of the CIA's classification decision regarding Ms. Wilson's actual terms of service. *McGehee v. Casey*, 718 F.2d at 1148. Further, the APA expressly provides that the "reviewing court shall . . . hold unlawful and set aside agency

---

[21] Further, it is also unlawful for the government to classify information for an improper purpose, whether by original classification or reclassification under Exec. Order 13292, *see, e.g.,* Exec. Order 13292, Sec. 1.8(a)(1) & (2) (prohibiting classification in order to conceal violations of law, inefficiency, or administrative error, or to prevent embarrassment to a person, organization or entity). Here, by the government's own admission, it would be reclassifying Ms. Wilson's terms of service due to "administrative error," which is itself improper. Moreover, as set forth below, it cannot reclassify information irretrievably in the public domain. Nor can the government maintain the fiction that Ms. Wilson's pre-2002 terms of service were always classified given its official acknowledgement of those precise facts. Finally, plaintiffs note that whatever CIA's motivation for its attempt to put the proverbial cat back in the bag (even though the Agency let it loose), whether to cover up internal ineptitude, improper political influence, or some other reason, CIA appears to seek to diminish Ms. Wilson's service and the full effect of her "outing." Whatever its purpose, the impact of the purported classification or reclassification is evident: to classify or reclassify Ms. Wilson's service dates will, according to the PRB, cause significant redaction (or "fictionalization") to her Manuscript in violation of Executive Order 13292. See Alfred A. Knopf, 509 F.2d at 1367 (CIA may not censor information unless classified and classifiable under the Executive Order).

action . . . found to be . . . contrary to constitutional right." 5 U.S.C. § 706(2)(B). *See also*, *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 188 (D.C. Cir. 2006) (stating that "the APA's 'scope of review' provision permits us to grant Trudeau's request to hold the press release unlawful if we find it 'contrary to constitutional right' because of the asserted First Amendment violation"); *Porter v. Califano*, 592 F.2d 770, 780, n. 15 (5th Cir. 1979) (stating that "section 706(2)(B) explicitly authorizes the court to set aside any agency action 'contrary to constitutional right'" and noting that "independent judicial judgment is especially appropriate in the First Amendment area. Judicial deference to agency fact-finding and decision-making is generally premised on the existence of agency expertise in a particular specialized or technical area. But in general, courts, not agencies, are expert on the First Amendment.")

Here, defendants have failed to comply with Exec. Order 13292, including a failure to provide explanations with reasonable specificity that demonstrate a logical connection between the information to be deleted and the reasons for classification or reclassification, and as such, it classification decisions on behalf of the Executive Branch, in violation of Exec. Order 13292, are not entitled to any deference. *McGehee v. Casey*, *supra*, at 1148. Given the CIA's presumed expertise in handling classified information, it is indisputable that the Agency did not from the outset comply with its own mandatory procedures for designating or handling classified information with respect to the CIA Letter, as set forth in Exec. Order 13292 § 1.6, and knew *for almost a full year* that it had disclosed Ms. Wilson's federal service dates in an unclassified and authorized form without taking any measures whatsoever to retrieve or protect that information.

Pursuant to the Classification Standards in Section 1.1 of Executive Order 13292,

      (a)     Information may be originally classified under the terms of this order only if all of the following conditions are met:

            (1)     an original classification authority is classifying the information;

(2)     the information is owned by, produced by or for, or is under the control of the United States Government;

(3)     the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4)     the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(b)     Classified information shall not be declassified automatically as a result of any unauthorized disclosure of identical or similar information.[22]

The information about Valerie Wilson's dates of federal service as set forth in the Agency Annuity Letter published in the Congressional Record was no longer "owned by, produced by or for, or is under the control of the United States Government" as of January 16, 2007, and therefore was not classifiable in April 2007 by defendant CIA. After January 16, 2007, the CIA, as the originator of the Agency Annuity Letter, could no longer regulate access to the information in that Letter as published in the Congressional Record, and therefore Valerie Wilson's specific dates of federal service set forth in the Agency Annuity Letter are not under the control of defendant CIA or the government generally.

Similarly, the CIA cannot reclassify the specific information released in the Agency Annuity Letter. Section 1.7(c) of Executive Order 13292 governs reclassification and it provides:

Information may be reclassified after declassification and release to the public under proper authority only in accordance with the following conditions:

(1)     the reclassification action is taken under the personal authority of the agency head or deputy agency head, who

---

[22] Plainly, given Ms. Tumulo's senior position at the CIA, the government cannot argue that the release of the Agency Annuity Letter was "unauthorized."

> determines in writing that the reclassification of the
> information is necessary in the interest of national security;

> (2)    the information may be reasonably recovered; and

> (3)    the reclassification is reported promptly to the Director of
> the Information Security Oversight Office.

Because the information at issue was disseminated widely over the Internet and remains

available on the Library of Congress website, the information is not "reasonably recoverable,"

and defendants' action in seeking to classify or reclassify the information fails to meet the

requirements of Section 1.7(c)(2) of Exec. Order 13292. The information is now irretrievably in

the Congressional Record and in the public domain. Recovery cannot occur when the

information that was made public through an official and documented disclosure by the Agency

is irretrievably in the possession of Congress through the legislative process and hence privileged

from return to the CIA pursuant to the Speech and Debate Clause of the Constitution, U.S. Const.

art. I, § 6, cl. 1. *See Maddox v. Williams*, 855 F. Supp. 406, 410-13 (D.D.C. 1994) (holding that

"the Speech or Debate Clause stands as an insuperable obstacle to [civil litigant's] attempt to

acquire by compulsion documents or copies of documents in the possession of the Congress" and

noting that "the seizure of congressional files . . . is directly inconsistent with the constitutional

design"), *aff'd, Brown & Williamson v. Williams*, 62 F.3d 408 (D.C.Cir. 1995).

Defendants, having failed to comply with the requirements of Exec. Order 13292, have

therefore violated the National Security Act, which authorizes defendants to classify

information only in accordance with the Executive Order. Accordingly, plaintiffs are entitled

to a declaration that defendants' classification and/or reclassification of the information at

issue is not in accordance with law and, therefore, violates the Administrative Procedure Act.

Moreover, defendants' classification and/or reclassification of the information at issue imposes a

prior restraint on the ability of plaintiffs to communicate important, lawful information to the

public, in violation of the First Amendment of the Constitution of the United States.  As such, it

also violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).  For these independent

reasons, this Court should also declare that defendants' actions violate the National Security Act

and the Administrative Procedure Act.  Defendants should be summarily enjoined from doing so.

## CONCLUSION

For all the foregoing reasons, this Court should grant summary judgment to plaintiffs

pursuant to Rule 56 of the Federal Rules of Civil Procedure and also grant plaintiffs' request for

a permanent injunction.

Dated: June 28, 2007
      New York, New York

WOLLMUTH MAHER & DEUTSCH LLP

By: _____
     David B. Smallman (DS-5316)

500 Fifth Avenue
New York, NY  10101
Tel: (212) 382-3300
Fax: (212) 382-0050
dsmallman@wmd-law.com

*Attorneys for Plaintiffs*
*Valerie Plame Wilson and Simon & Schuster, Inc.*

DAVIS WRIGHT TREMAINE LLP
Elizabeth A. McNamara (EAM-1987)
1633 Broadway, 27th Floor
New York, NY  10019
Tel: (212) 489-8230
Fax: (212) 489-8340
lizmcnamara@dwt.com

*Attorneys for Plaintiff Simon & Schuster, Inc.*

*Additional Counsel for*
*Plaintiff Valerie Plame Wilson*

Professor Erwin Chemerinsky
Duke University School of Law
Science Drive and Towerview Road
Durham, NC  27708-0360
Tel: (919) 613-7173
Fax: (919) 613-7231

Lisa E. Davis, Esq.
Frankfurt Kurnit Klein & Selz, P.C.
488 Madison Avenue
New York, NY 10022
Tel: (212) 980-0120
Fax: (212) 593-9175

41