MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: BENJAMIN H. TORRANCE
Assistant United States Attorney
86 Chambers Street
New York, New York  10007
Telephone: 212.637.2703
Fax: 212.637.2702

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
VALERIE PLAME WILSON et al.,

                Plaintiffs,                        07 Civ. 4595 (BSJ)

        v.                                    **DEFENDANTS' STATEMENT OF**
                                            **MATERIAL FACTS PURSUANT**
J. MICHAEL MCCONNELL et al.,          **TO LOCAL RULE 56.1(a)**

                Defendants.
-------------------------------------------------------------- x

       Pursuant to Local Civil Rule 56.1(a) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, in support of its cross-motion for summary judgment, defendants state that there is no genuine issue to be tried with respect to the following material facts:

       1.     Wilson was a covert CIA employee in the counterproliferation division as of January 1, 2002.  Unclassified Summary of Valerie Wilson's CIA Employment and Cover History ("Employment Summary") at 1–3, filed in *United States v. Libby*, Crim. No. 05-394, Dkt. No. 351, Attach. 1 (D.D.C. May 25, 2007) (also attached as Ex. M-1 to Decl. of David B. Smallman dated June 28, 2007); Declaration of Stephen R. Kappes dated July 18, 2007 ("Kappes Decl.") ¶¶ 5–13.

       2.     Because Wilson was a covert employee, information identifying her as such was

classified pursuant to the Agency's Classification Guide.  Employment Summary at 2–3; Kappes Decl. ¶¶ 5–13; Administrative Record (Classified) ("AR (Cl.)") Tab 9.

   3. In 2003, Wilson's employment with the Agency was disclosed in the media, resulting in her cover being lifted by the CIA.  Employment Summary at 2; Kappes Decl. ¶¶ 5–13.

   4. The subsequent investigation by the Department of Justice into that disclosure resulted in the indictment in *Libby*, and in October 2005, the CIA determined that the public interest in allowing that criminal prosecution to proceed outweighed the damage to national security that might reasonably be expected to result from the official disclosure of Wilson's employment and cover status.  Employment Summary at 2; Kappes Decl. ¶¶ 5–13.

   5. Accordingly, the CIA officially disclosed Wilson's employment and cover from January 1, 2002, forward.  Employment Summary at 2; Kappes Decl. ¶¶ 5–13.

   6. The Agency, however, has never officially disclosed any information relating to whether or not Wilson was employed by the CIA prior to that date.  Employment Summary at 1–3; Kappes Decl. ¶ 12.

   7. Wilson resigned from the CIA effective January 9, 2006.  *Id.* at 3;[1] Kappes Decl. ¶ 13; Administrative Record (Unclassified) ("AR (Uncl.)") Tab 1.

   8. Around that time, she requested information about her eligibility for a deferred annuity from the CIA's personnel office.  AR (Uncl.) Tab 1.

   9. By letter dated February 10, 2006, Karen Tumolo of that office, whose title was Chief, Retirement & Insurance Services, responded.  *Id.*; Declaration of Karen F. Tumolo dated

---

  [1] The Employment Summary erroneously states that her resignation took effect December 9, 2005.  The parties here agree that the true date is January 9, 2006.

July 13, 2007 ("Tumolo Decl.") ¶¶ 7–10.

10. That letter was addressed and sent only to Wilson. AR (Uncl.) Tab 1.

11. The letter was not marked as classified, and was sent by first-class mail. AR (Cl.) Tab 1.

12. Information classified as "secret," as here, may be sent by express or registered mail or certain commercial carriers, but not by first-class mail. 32 C.F.R. § 2001.45(c)(2).

13. Despite its lack of classification markings, the letter did in fact contain classified information. AR (Cl.) Tabs 1, 9; Employment Summary at 2–3; Kappes Decl. ¶¶ 19, 20, 24.

14. The failure to mark the letter as classified as required was the result of an administrative error. Tumolo Decl. ¶¶ 9–11.

15. Wilson—who, as a CIA employee, was subject to prepublication review of any public disclosures she wished to make mentioning intelligence data or activities, AR (Uncl.) Tab 41; *Snepp v. United States*, 444 U.S. 507 (1980)—submitted a partial first draft of a manuscript to the CIA's Publications Review Board on July 7, 2006, and a full first draft on September 7, 2006. AR (Uncl.) Tabs 5, 8.

16. After several meetings and correspondence regarding the manuscript, *id.* Tabs 5–10, the Board formally responded on November 21, 2006. *Id.* Tab 11.

17. That response included a list of changes to make the manuscript unclassified; it also noted that the first half of the manuscript "would reveal classified information because of the context in which it appears, [or] the timeframes associated with the material . . . ." *Id.*

18. A follow-up letter from the CIA dated December 22, 2006, stated that the first half of the manuscript was "replete with statements that may be unclassified standing alone, but they become classified when they are linked with a specific time, such as an event in your

personal life, or are included in another context that would reveal classified information." *Id.* Tab 13.

19. The same letter described means by which material could be made unclassified, including "separat[ing] certain statements and vignettes from the timeframes in which they currently appear [or] remov[ing] the references to the times and events in [Wilson's] personal life." *Id.*; *accord id.* Tab 21.

20. After further discussion among Wilson, the CIA, and their attorneys, *id.* Tabs 14–17, 20–23, the Publications Review Board again wrote Wilson on February 23, 2007. *Id.* Tab 24.

21. The letter noted that Wilson had declined to meet with the Board to discuss ways of revising the manuscript so that classified information would not be revealed. *Id.*

22. In light of that, the Board proceeded to delete text from the first half of the manuscript because "[i]n some instances, . . . it is linked with a specific time or is included in a particular context that reveals classified information." *Id.*

23. The Board again offered to "work with [Wilson] to discuss ways in which this deleted text could be modified in order to render it unclassified or could be used in other contexts so as to not reveal classified information." *Id.*

24. By letter dated April 19, 2007, the CIA advised Wilson that it had withdrawn certain objections, and "[w]ith limited exceptions, the classified information the PRB identified in your manuscript relates to a single issue . . . and reflects the classification determination made by the Director of the Agency." *Id.* Tab 28.

25. As to that, the Board reiterated that "certain writing techniques (e.g., changing or obscuring the chronological timing of an event, placing text in another part of the manuscript, etc.)" could render the material unclassified. *Id.*

26.     However, the letter noted that Wilson had declined to "rewrite or change the chronology" of the manuscript. *Id.*

27.     The CIA informed Wilson that she had "exhausted her administrative remedies with respect to *this* classification determination." *Id.*

28.     During these discussions, on January 16, 2007, Representative Jay Inslee introduced a bill in Congress entitled the Valerie Plame Wilson Compensation Act. AR (Cl.) Tab 8.

29.     In the course of doing so, Representative Inslee submitted into the Congressional Record a partial version of the February 10, 2006, letter from Tumolo. *Id.*

30.     Three days later, on January 19, 2007, shortly after she learned that her February 2006 letter contained classified information, Tumolo wrote Wilson to inform her of that fact; that the letter was not properly marked to indicate its national security classification; and that the absence of markings was the result of an administrative error. AR (Uncl.) Tab 18; Tumolo Decl. ¶ 12.

31.     Four days after that, on January 23, 2007, the CIA wrote the clerk of the House of Representatives to inform her that the letter included in the Congressional Record contained classified information and was not properly marked to reflect its classification. AR (Uncl.) Tab 19.

32.     Pursuant to Executive Order 13,292, the CIA has created a Classification Guide, under the authority of a CIA official with original classification authority. Exec. Order 13,292, § 1.1(a)(1); AR (Cl.) Tab 9; Declaration of Ralph S. DiMaio dated July 13, 2007 ("DeMaio Decl.") ¶ 8; Kappes Decl. ¶ 18.

33.     That Guide sets forth certain categories of information that, if disclosed, would

cause harm to the national security and therefore must be classified for the reasons, and at the classification levels, provided in the Executive Order. AR (Cl.) Tab 9; Kappes Decl. ¶¶ 18, 19; *see* Exec. Order 13,292, §§ 1.2, 1.4.

34.     According to the Guide, certain information in the February 10, 2006, letter was classified. AR (Cl.) Tab 9; Kappes Decl. ¶ 19.

35.     In addition, after the February 10, 2006, letter, the information was reviewed by the Director of the CIA, who has original classification authority and who determined that acknowledgment of any employment by Wilson before 2002 was and is still classified. Exec. Order 13,292, § 1.1(a)(1); AR (Uncl.) Tab 28; DiMaio Decl. ¶¶ 7, 9; Kappes Decl. ¶ 20.

36.     Classified information in the February 10, 2006, letter falls within classification categories specified in the Executive Order, and its unauthorized release, even after its release to the public, reasonably could be expected to result in damage to the national security. Exec. Order 13,292, § 1.1(a)(3) & (4); Kappes Decl. ¶ 22, 24, 26, 32–65, 66–72; *see* DiMaio Decl. ¶ 9.

37.     The classified information in the February 10, 2006, letter was never declassified. DiMaio Decl. ¶ 9; Kappes Decl. ¶ 12.

38.     Only certain CIA officials have the authority to declassify information. AR (Uncl.) Tab 40; Kappes Decl. ¶¶ 73–78.

39.     Karen Tumolo, as Chief, Retirement & Insurance Services, did not have authority to declassify information, nor to release classified information. Tumolo Decl. ¶¶ 6, 10; AR (Uncl.) Tab 40; Kappes Decl. ¶¶ 74, 75.

Dated: New York, New York                    Respectfully submitted,
      July 18, 2007

                                                          MICHAEL J. GARCIA
                                                          United States Attorney for the
                                                          Southern District of New York
                                                          Attorney for Defendant

                                        By:    /s/ Benjamin H. Torrance
                                                          BENJAMIN H. TORRANCE
                                                          Assistant United States Attorney
                                                          Telephone: 212.637.2703
                                                          Fax: 212.637.2702