**Exhibit A**

# WOLLMUTH MAHER & DEUTSCH LLP

### 500 FIFTH AVENUE
### NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

VIA FAX                                    July 2, 2007
(212) 805-6191

Hon. Barbara S. Jones
United States Courthouse
500 Pearl Street, Room 620
New York, NY 10007

> Re:    *Valerie Plame Wilson; Simon & Schuster, Inc. v. J. Michael McConnell, Director of National Intelligence; Central Intelligence Agency, et al.*, No. 07 CV 4595 (BSJ)

Dear Judge Jones:

My firm represents plaintiffs Valerie Plame Wilson and Simon & Schuster, Inc. and we write to inform the Court that the government defendants in the above-referenced action have designated a public domain "excerpt from the Congressional Record" as a "classified" document in the Administrative Record submitted by them in this proceeding.   The Congressional Record excerpt was an exhibit to plaintiffs' complaint and is part of the public judicial record, but does not appear in defendants' *unclassified* Administrative Record even though it was an attachment to letters sent to defendant CIA and defendant McConnell.  For the convenience of the Court, attached are (1) copies of pages E118-119 of the Congressional Record from January 16, 2007, which are understood by plaintiffs to comprise the excerpt referenced as "classified" by defendants; (2) the "Table of Contents for the Classified Administrative Record"; and (3) the "Notice of Filing of Classified Document."[1]  Because the Court is now considering entry of the parties' proposed stipulation and protective order, plaintiffs respectfully bring to the Court's attention two important issues in connection with the proposed stipulation and protective order.

First, plaintiffs expressly reserved their right to dispute that the government defendants could properly designate a public domain document, such as an excerpt from the Congressional Record, as part of the "Classified Administrative Record," as opposed to the "Unclassified Administrative Record."  Plaintiffs therefore disagree with and oppose defendants' designation

---

[1] The first two documents are Exhibits "A-1" and "T" to the Declaration of David B. Smallman, made on June 28, 2007, in Support of the Motion of Valerie Plame Wilson and Simon & Schuster, Inc. for Summary Judgment and for a Permanent Injunction.  The third document is Document No. 9 from the docket for Case 1:07-cv-04595-BSJ, filed 06/28/2007, and referenced in the letter to the Court from Assistant United States Attorney Benjamin Torrance dated June 28, 2007, a copy of which is also attached.

Hon. Barbara S. Jones
July 2, 2007
Page 2 of 3

in this proceeding of an excerpt from the Congressional Record as a "classified" document (and reserve their right to challenge the designation and inclusion in the "Classified Administrative Record" of any other public domain document).

Second, to prevent confusion arising from entry of the proposed stipulation and protective order, and to avoid any unintended legal consequences arising from any possible perception that entry of the stipulation and protective order constitutes judicial endorsement of defendants' filing of a public domain document as properly "classified," it is within the Court's discretion to ensure that the protective order is "clear, specific, and precise." *United States v. Chalmers*, No. S5 05 Cr. 59 (DC), 2007 U.S. Dist. LEXIS 13640 (Feb. 27, 2007). Plaintiffs respectfully submit that the Court should ensure that the proposed stipulation and protective order cannot be construed so as to permit the government defendants to designate indisputably public domain documents, such as the Congressional Record, as part of the "Classified Administrative Record" or to preclude plaintiffs from introducing and relying upon unclassified public domain information obtained outside this proceeding, including the Congressional Record, for use as evidence in summary judgment or at trial.

It is one thing for the government to assert that Ms. Wilson's manuscript cannot be published in its present form because of CIA's assertion that an annuity information letter sent in unclassified form by defendant CIA to Ms. Wilson in February 2006 nevertheless remains a classified secret. The ultimate propriety of defendant CIA's clearance determination – which plaintiffs have claimed to be improper and in violation of, *inter alia*, the First Amendment – has been submitted to Your Honor for declaratory relief in accordance with the appropriate procedure for disputing the government defendants' conduct. *See United States v. Snepp*, 897 F.2d 138, 141 n.2, 143 (D.C. Cir. 1990) ("only substitute for CIA clearance would be a judicial declaration that clearance had been improperly withheld"; "'issue upon judicial review would seem to be simply whether or not the information was classified and, if so, whether or not, by prior disclosure it had come into the public domain.'" (quoting *United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir. 1972)). Further to that end, plaintiffs have sought to cooperate with defendants' counsel in seeking to safeguard, pending adjudication, certain information alleged to be "classified" by the government defendants. *See* 28 C.F.R. § 17.17 (a)(2) ("If a determination is made to produce classified information in a judicial proceeding in any manner, the assigned Department [of Justice] attorney shall take all steps necessary to ensure the cooperation of the court and, where appropriate, opposing counsel in safeguarding and retrieving the information pursuant to the provisions of this regulation") .

Here, however, pages E118-119 of the Congressional Record, published by Congress in connection with pending legislation, are indisputably in the public domain and no proper basis exists for defendants' designation of public domain legislative materials as "classified" documents in the Administrative Record for this case. *See United States v. Casson*, 434 F.2d 415, 422 (D.C. Cir. 1970) ("the public are charged with knowledge of all the published

information concerning a congressional bill that is available during the entire legislative process. . . . [T]he Congressional Record and documents published by Congress prove that the bill and all its provisions were in the public domain . . . .").

It is also indisputable that the excerpt of the Congressional Record that defendants have designated as "classified" is no longer under government control. *See* Section 1.1 of Executive Order 13292, 32 C.F.R. 2002.12 (2003) (requiring information subject to classification to be "under the control of the United States Government"). As discussed more fully in plaintiffs' opening brief for summary judgment and permanent injunction, on January 23, 2007, CIA's director of Congressional Affairs, Christopher J. Walker, sent a letter to the Clerk, U.S. House of Representatives, Hon. Karen Haas, stating that "a February 10, 2006 letter from the Central Intelligence Agency included on page E119 of the January 12 [sic] Congressional Record (Extension of Remarks) . . . . contains classified information that was not properly marked to reflect its national security classification."[2]    Notwithstanding CIA's letter to Congress, a search that I conducted on the Thomas.gov website on July 1, 2007 demonstrates that page E119 (and E118) of the January 16, 2007 Congressional Record remain publicly available for anyone to download from the Internet.  Copies of the July 1, 2007 search pages are attached.

Respectfully Yours,

David B. Smallman

Attachments
cc:   All Counsel (via Fax and E-mail w/ Encls.)

---

[2] CIA's January 23, 2007 letter, which apparently meant to reference the January 16, 2007 Congressional Record, is attached for the convenience of the Court, and can also be located as Exhibit F to the Declaration of David B. Smallman submitted in support of plaintiffs' motion for summary judgment and permanent injunction, and at Tab 19 in defendants' Unclassified Administrative Record.

| THIS SEARCH | THIS DOCUMENT | GO TO |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

**Bill 1 of 1000**

| GPO's PDF Display | Congressional Record References | Bill Summary & Status | *Printer Friendly Display* - 1,245 bytes.[Help] | XML Display [Help] |
|---|---|---|---|---|

**Valerie Plame Wilson Compensation Act (Introduced in House)**

HR 501 IH

110th CONGRESS

1st Session

**H. R. 501**

For the relief of Valerie Plame Wilson.

**IN THE HOUSE OF REPRESENTATIVES**

# January 16, 2007

Mr. INSLEE introduced the following bill; which was referred to the Select Committee on Intelligence (Permanent Select)

**A BILL**

For the relief of Valerie Plame Wilson.

> *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

## SECTION 1. SHORT TITLE.

This Act may be cited as the `Valerie Plame Wilson Compensation Act'.

## SEC. 2. VOLUNTARY RETIREMENT FROM THE CENTRAL INTELLIGENCE AGENCY.

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

## NEW SEARCH | HOME | HELP

**H.R.501**
**Title:** For the relief of Valerie Plame Wilson.
**Sponsor:** Rep Inslee, Jay [WA-1] (introduced 1/16/2007)    Cosponsors (None) Private bill
**Latest Major Action:** 1/16/2007 Referred to House committee. Status: Referred to the House Committee on Intelligence (Permanent Select).

Jump to: Summary, Major Actions, All Actions, Titles, Cosponsors, Committees, Related Bill Details, Amendments

**SUMMARY AS OF:**
1/16/2007--Introduced.

Valerie Plame Wilson Compensation Act - Provides for the relief of Valerie Plame Wilson.

**MAJOR ACTIONS:**

***NONE***

**ALL ACTIONS:**

**1/16/2007:**
    Sponsor introductory remarks on measure. (CR E118-119)
**1/16/2007:**
    Referred to the House Committee on Intelligence (Permanent Select).

**TITLE(S):** (*italics indicate a title for a portion of a bill*)

***NONE***

**COSPONSOR(S):**

***NONE***

**COMMITTEE(S):**

| Committee/Subcommittee: | Activity: |
| --- | --- |
| House Intelligence (Permanent Select) | Referral, In Committee |

The Library of Congress > THOMAS Home > Congressional Record > Search Results

| THIS SEARCH | THIS DOCUMENT | THIS CR ISSUE | GO TO |
|---|---|---|---|
| Next Hit | Forward | Next Document | New CR Search |
| Prev Hit | Back | Prev Document | HomePage |
| Hit List | Best Sections | Daily Digest | Help |
| | Contents Display | | |

# Page E119

**1 .** INTRODUCTION OF THE VALERIE PLAME WILSON COMPENSATION ACT -- (Extensions of Remarks - January 16, 2007)
**2 .** TRIBUTE TO THE REVEREND JAMES D. PETERS -- (Extensions of Remarks - January 16, 2007)
**3 .** OPPORTUNITY KNOCKS IN TURKMENISTAN: IS ANYONE LISTENING? -- (Extensions of Remarks - January 16, 2007)

The Library of Congress > THOMAS Home > Congressional Record > Search Results

| THIS SEARCH | THIS DOCUMENT | THIS CR ISSUE | GO TO |
|---|---|---|---|
| Next Hit | Forward | Next Document | New CR Search |
| Prev Hit | Back | Prev Document | HomePage |
| Hit List | Best Sections | Daily Digest | Help |
| | Contents Display | | |

| **Congressional Record article 1 of 3** | *Printer Friendly Display* - 5,504 bytes.[Help] |
|---|---|

## INTRODUCTION OF THE VALERIE PLAME WILSON COMPENSATION ACT -- (Extensions of Remarks - January 16, 2007)

[Page: E118]   *GPO's PDF*

---

SPEECH OF☐
**HON. JAY INSLEE**
OF WASHINGTON
IN THE HOUSE OF REPRESENTATIVES
TUESDAY, JANUARY 16, 2007

- Mr. INSLEE. Madam Speaker, I rise today to bring to the attention of Congress one of the human impacts caused by the indiscretion of government officials regarding the covert identity of Central Intelligence Agency operative Valerie Plame Wilson.

- As nearly every American knows, and as most of the world has heard, the covert CIA identity of Valerie Plame Wilson was exposed to the public as part of an Administration response to a critical op-ed published in the New York Times by Mrs. Plame Wilson's husband, Joe Wilson.

- The national security ramifications for this act have been discussed thoroughly on this floor, in the news media, and I am quite certain behind CIA's closed doors. Today I intend to call my colleagues' attention to the human toll that this ``outing'' has had on one, often overlooked, individual. That person is Valerie Plame Wilson.

- While the media, Congress, and the judiciary have gone to great lengths to discuss the impact of this unfortunate act on politicians, bureaucrats, agents in the field, and the suspected perpetrators of the outing, few have looked at the impact that the outing has had on Mrs. Plame Wilson and her family.

- On July 14, 2003, Mrs. Plame Wilson's professional life was forever altered, and her CIA career irrevocably ruined by the syndicated publication of a column, which revealed Mrs. Plame Wilson's identity as a covert CIA officer. Since this time, numerous reports on Mrs. Plame Wilson's personal history have surfaced



[Page: E119]    *GPO's PDF*

in the press, official government documents, and by government officials.

- Following the initial outing in the media, Mrs. Plame Wilson's future as a covert CIA operative ceased to exist and her career of two decades was destroyed. On January 9, 2006, Mrs. Plame Wilson resigned from the CIA, recognizing that any future with the Agency would not include any work for which she had been highly trained. For these reasons, and under these distressing conditions, Mrs. Plame Wilson voluntarily resigned from the Agency.

- Despite Mrs. Plame Wilson's 20 years of federal service, she does not meet the minimum age requirement to receive her retirement annuity. She has been left without a career.

- I am introducing legislation to allow Mrs. Plame Wilson to qualify for her annuity, as one who has served her country for two decades, and waive the age requirement for collecting it. To best demonstrate the annuity for which Mrs. Plame Wilson may qualify if this legislation were to pass, I am submitting for the record a document sent to Mrs. Plame Wilson by the CIA. It outlines her deferred annuity and testifies to 20 years of service. The document bears no indications of classified material as required by CIA procedures, and was sent via regular postal mail after Mrs. Plame Wilson was no longer in the employ of the CIA. Legal experts have assured me that this is not a classified document.

- I believe that this is one small measure to help send a message that we must stand up for public service officers, such as Mrs. Plame Wilson, who have been treated wrongly despite their loyalty and sacrifice to country. For those who have been, for all practicable purposes, pushed out of public service for reasons unrelated to performance, but instead seeded in politics, we should not turn our backs.

Central Intelligence Agency,

Washington, DC, February 10, 2006.

Mrs. **VALERIE WILSON**

**DEAR MRS. WILSON**, This letter is in response to your recent telephone conversation with regarding when you would be eligible to receive your deferred annuity. Per federal statute, employees participating under the Federal Employees Retirement System (FERS) Special Category, who have acquired a minimum of 20 years of service, are eligible to receive their deferred annuity at their Minimum Retirement Age (MRA). Your MRA is age 56, at which time you'll be eligible to receive a deferred annuity.

Your deferred annuity will be based on the regular FERS computation rate, one percent for every year of service vice the FERS Special rate of 1.7% for every year of service. You will receive 1.7% for each year of overseas service, prorated on a monthly basis, after January 1, 1987 in the calculation of your annuity. Our records show that since January 1, 1987, you have acquired 6 years, 1 month and 29 days

of overseas service.

Following is a list of your federal service:

Dates of Service: CIA, CIA (LWOP), CIA Đ(P/T 40), from 11/9/1985 to 1/9/2006--total 20 years, 7 days.

Based on the above service and your resignation on January 9, 2006, your estimated deferred annuity is $21,541.00 per year, or $1795 per month, beginning at age 56.

The above figures are estimates for your planning purposes. The Office of Personnel Management, as the final adjudicator of creditable service and annuity computations, determines final annuity amounts. Please let me know if I can be of any further assistance.

Sincerely,

------.

| THIS SEARCH | THIS DOCUMENT | THIS CR ISSUE | GO TO |
|---|---|---|---|
| Next Hit | Forward | Next Document | New CR Search |
| Prev Hit | Back | Prev Document | HomePage |
| Hit List | Best Sections | Daily Digest | Help |
| | Contents Display | | |

THOMAS Home | Contact | Accessibility | Legal | USA.gov

in the press, official government documents, and by government officials.

Following the initial outing in the media, Mrs. Plame Wilson's future as a covert CIA operative ceased to exist and her career of two decades was destroyed. On January 9, 2006, Mrs. Plame Wilson resigned from the CIA, recognizing that any future with the Agency would not include any work for which she had been highly trained. For these reasons, and under these distressing conditions, Mrs. Plame Wilson voluntarily resigned from the Agency.

Despite Mrs. Plame Wilson's 20 years of federal service, she does not meet the minimum age requirement to receive her retirement annuity. She has been left without a career.

I am introducing legislation to allow Mrs. Plame Wilson to qualify for her annuity, as one who has served her country for two decades, and waive the age requirement for collecting it. To best demonstrate the annuity for which Mrs. Plame Wilson may qualify if this legislation were to pass, I am submitting for the record a document sent to Mrs. Plame Wilson by the CIA. It outlines her deferred annuity and testifies to 20 years of service. The document bears no indications of classified material as required by CIA procedures, and was sent via regular postal mail after Mrs. Plame Wilson was no longer in the employ of the CIA. Legal experts have assured me that this is not a classified document.

I believe that this is one small measure to help send a message that we must stand up for public service officers, such as Mrs. Plame Wilson, who have been treated wrongly despite their loyalty and sacrifice to country. For those who have been, for all practicable purposes, pushed out of public service for reasons unrelated to performance, but instead seeded in politics, we should not turn our backs.

CENTRAL INTELLIGENCE AGENCY,
Washington, DC, February 10, 2006.
Mrs. VALERIE WILSON

DEAR MRS. WILSON, This letter is in response to your recent telephone conversation with regarding when you would be eligible to receive your deferred annuity. Per federal statute, employees participating under the Federal Employees Retirement System (FERS) Special Category, who have acquired a minimum of 20 years of service, are eligible to receive their deferred annuity at their Minimum Retirement Age (MRA). Your MRA is age 56, at which time you'll be eligible to receive a deferred annuity.

Your deferred annuity will be based on the regular FERS computation rate, one percent for every year of service vice the FERS Special rate of 1.7% for every year of service. You will receive 1.7% for each year of overseas service, prorated on a monthly basis, after January 1, 1987 in the calculation of your annuity. Our records show that since January 1, 1987, you have acquired 6 years, 1 month and 29 days of overseas service.

Following is a list of your federal service: Dates of Service: CIA, CIA (LWOP), CIA (P/T 40), from 11/9/1985 to 1/9/2006—total 20 years, 7 days.

Based on the above service and your resignation on January 9, 2006, your estimated deferred annuity is $21,541.00 per year, or $1795 per month, beginning at age 56.

The above figures are estimates for your planning purposes. The Office of Personnel Management, as the final adjudicator of creditable service and annuity computations, determines final annuity amounts.

Please let me know if I can be of any further assistance.

Sincerely,

---

## TRIBUTE TO THE REVEREND JAMES D. PETERS

# HON. DIANA DeGETTE
OF COLORADO
IN THE HOUSE OF REPRESENTATIVES
Tuesday, January 16, 2007

Mr. DEGETTE. Madam Speaker, I rise to honor the extraordinary life and exceptional accomplishments of the Reverend James D. Peters, Pastor of New Hope Baptist Church. This remarkable gentleman merits both our recognition and esteem as his spiritual leadership, service and lifelong devotion to civil rights have done much to advance the lives of our people.

While many have made notable contributions to our community, few have left a legacy of progress as has Reverend Peters. He is a powerful champion of social justice and has led with those who fought for civil liberty and whose deeds changed the very fabric of our nation. Reverend Peters has touched countless lives and he has built a ministry that joins faith with equality. He is a dynamic pastor whose teaching and counsel is infused with a spiritual fervor that constantly edifies us and moves us to do what is right.

Reverend Peters' journey began in Washington D.C., the son of a baseball player. He grew up poor but he grew up in church. He was a gifted student and grew to recite Longfellow, Keats and Kipling. He worked full time at the Navy Annex near the Pentagon and struggled to get an education, attending night school for ten years. Reverend Peters recently noted that "I couldn't eat in restaurants, I couldn't sleep at a hotel or go to the movies. I could never go to school with white children. All the way through high school, I never sat in a classroom with white people, not until I went to college." Many of us in this country forget how far we've come. Although civil liberties have deep roots in our republic, there was a time when fundamental decency and equality for all people were not a part of our shared experience. The courage and the work of Reverend Peters during the dark days of the Civil Rights Movement helped make fairness and equal rights part of our shared values. Reverend Peters was at the founding meeting of the Southern Christian Leadership Conference and he worked directly with Dr. Martin Luther King, Jr. He faced guns and dogs during the marches and civil rights demonstrations in Albany, Georgia, in Selma and in Birmingham, Alabama. He was part of the March on Washington that led to the steps of the Lincoln Memorial where Dr. King gave his unparalleled "I Have a Dream" speech.

Reverend Peters' work ethic and his service to the Civil Rights Movement molded a life of enduring accomplishment and a vocation that included ministering to congregations in Connecticut and Virginia. He became pastor of Denver's New Hope Baptist Church in February of 1979 and during his twenty-eight year tenure, he led his congregation through construction of a new church home and the expansion of services for an ever growing congregation. As a spiritual leader, he has bur-

nished a reputation as a powerful advocate for inclusion and expanding opportunity for all people. He served as a volunteer member of the Denver Housing Advisory Board for approximately ten years assisting the twenty-two thousand public housing residents in changing the quality and image of public housing.

He served as a member of the Colorado Civil Rights Commission for nine years, serving as its Chairman from 1987 to 1989, during which time he traveled throughout Colorado and held countless civil rights hearings to secure justice and equality for all citizens.

Reverend Peters has received service recognitions from numerous organizations including the Southern Christian Leadership Conference, Martin Luther King, Jr., the Anti-Defamation League, the Denver Post and the NAACP. He is also the recipient of the Carle Whitehead Award, the highest award given by the American Civil Liberties Union.

Reverend James Peters is an unrelenting advocate for the causes that elevate the human condition and his immeasurable contributions to the spiritual life of our community merit our gratitude. He has led in the struggle for freedom, justice and equality for all people. But Reverend Peters' leadership goes to the heart of what he means to be a leader. "Nathalia Young, a pastor at New Hope Baptist Church. . . remembers how he helped homeless people himself, not delegating it to a deacon. (He) would get into his own car, and use his own money to get someone a hotel room. And then there was a Christmas season one year, when a woman and her children were suddenly homeless. 'He didn't just get her connected with housing but also supplied her with gifts and food.'" Reverend Peters leads by example.

In a recent Denver Post article, Reverend Peters expressed "concern that young people don't understand what it was like before the Civil Rights Act and that some believe King's message is now irrelevant." At some level, I think we all share his concern. But I would submit that Reverend Peters' legacy provides a powerful example that not only affirms Dr. King's undertaking, but inspires all of us to remember the struggle and keep faith with those who have gone before.

Reverend Peters' tenure as pastor of New Hope Baptist Church is quickly drawing to a close. His leadership has been exemplary and his contributions are rich in consequence. On behalf of the citizens of the 1st Congressional District of Colorado, I wish to express our gratitude and look forward to his continued involvement in the life of our community.

Please join me in paying tribute to Reverend James D. Peters, a distinguished spiritual and civic leader. The values, leadership and commitment he exhibits set the mark and compel us to continue the work that distinguishes us as Americans.

---

## OPPORTUNITY KNOCKS IN TURKMENISTAN: IS ANYONE LISTENING?

# HON. JANICE D. SCHAKOWSKY
OF ILLINOIS
IN THE HOUSE OF REPRESENTATIVES
Tuesday, January 16, 2007

Ms. SCHAKOWSKY. Madam Speaker, the Administration's crusade to spread democracy