David B. Smallman (DS-5316)
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
dsmallman@wmd-law.com

*Attorneys for Plaintiffs Valerie Plame Wilson
and Simon & Schuster, Inc.*

Elizabeth A. McNamara (EAM-1987)
DAVIS WRIGHT TREMAINE LLP
1633 Broadway, 27th Floor
New York, NY 10019
Tel: (212) 489-8230
Fax: (212) 489-8340
lizmcnamara@dwt.com

*Attorneys for Plaintiff Simon & Schuster, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x

VALERIE PLAME WILSON;
SIMON & SCHUSTER, INC.,

               Plaintiffs,

            v.

J. MICHAEL MCCONNELL,
IN HIS OFFICIAL CAPACITY AS DIRECTOR
OF NATIONAL INTELLIGENCE;
CENTRAL INTELLIGENCE AGENCY;
GEN. MICHAEL V. HAYDEN,
IN HIS OFFICIAL CAPACITY AS DIRECTOR
OF CENTRAL INTELLIGENCE AGENCY,

               Defendants.

------------------------------------------------------ x

**ECF**

Case No. 07 CV 4595 (BSJ)

**ORAL ARGUMENT REQUESTED**

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, PERMANENT INJUNCTIVE RELIEF AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 4

I.     RELEASE OF THE FEBRUARY 2006 LETTER BY CIA WAS AN
OFFICIAL ACKNOWLEDGMENT OF WILSON'S DATES OF SERVICE ...... 4

     A.    The CIA Cannot Censor Information It Disclosed and Acknowledged
to be Accurate ................................................................................... 4

     B.    The Official Acknowledgment Doctrine Does Not Require an
Intentional Agency Decision to Officially Declassify Information;
Nor Is There an Inadvertent Mistake Exception to the Doctrine ............... 8

     C.    The Undisputed Facts Establish that Each of the Three Prongs of the
Official Acknowledgment Doctrine Has Been Satisfied ......................... 10

          1.    The CIA Concedes Documented Confirmation ............................ 10

          2.    The Information at Issue is Precisely the Same as that
Previously Disclosed ..................................................................... 10

          3.    The Release of the February 2006 Letter Was an Official
Disclosure ..................................................................................... 12

          4.    The Information at Issue is Now Irretrievably in the Public
Domain and Cannot be Re-Classified ........................................... 16

II.    EVEN IF DEFENDANTS' ERRONEOUS THEORY OF THE OFFICIAL
ACKNOWLEDGMENT DOCTRINE WERE VALID, ISSUES OF FACT
WOULD PRECLUDE SUMMARY JUDGMENT IN DEFENDANTS'
FAVOR ........................................................................................................... 17

CONCLUSION ............................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Civil Liberties Union v. Dep't of Defense*, 389 F. Supp. 2d 547 (S.D.N.Y. 2005) .................5

*Afshar v. Dep't of State*, 702 F.2d 1125 (D.C. Cir. 1983) ......................................................14, 16

*Alfred A. Knopf v. Colby*, 509 F.2d 1362 (4th Cir. 1975)....................................................5, 13, 15

*Cent. Intelligence Agency v. Sims*, 471 U.S. 159 (1985) ............................................................1

*Earth Pledge Found. v. Cent. Intelligence Agency*, 988 F. Supp. 623 (S.D.N.Y. 1996)...........6, 16

*Fitzgibbon v. Cent. Intelligence Agency*, 911 F.2d 755 (D.C. Cir. 1990)......................6, 8, 10, 11

*Frugone v Cent. Intelligence Agency*, 169 F.3d 772 (D.C. Cir. 1999) ......................................6, 14

*Herman v. Provident Mut. Life Ins. Co.*, 886 F.2d 529 (2d Cir. 1989)..........................................17

*Hudson River Sloop Clearwater v. Dep't of Navy*,
    891 F.2d 414 (2d. Cir. 1989) ..............................................................................................6, 9, 14

*McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983) ................................................................3, 17

*Military Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981)....................................6, 9, 12, 15

*Patrick v. LeFevre*, 745 F.2d 153 (2d Cir. 1984)..........................................................................17

*Phillipi v. Cent. Intelligence Agency*, 655 F.2d 1325 (D.C. Cir. 1981) ....................................6, 15

*Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295 (2d Cir. 1996)..............................................17

*Rubin v. Cent. Intelligence Agency*, No. 01 Civ. 2274,
    2001 WL 1537706 (S.D.N.Y. Dec. 3, 2001) .................................................................6, 15

*Schlesinger v. Cent. Intelligence Agency*, 591 F. Supp. 60 (D.D.C. 1984) .........................8, 9, 12

*Skywark v. Isaacson*, 202 B.R. 557 (S.D.N.Y. 1996) ..................................................................18

*Snepp v. U.S.*, 444 U.S. 507 (1980) ............................................................................................17

*U.S. v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972)......................................................................2, 5

*U.S. v. Snepp*, 897 F.2d 138 (D.C. Cir. 1990) .........................................................................2, 5

*Wolf v. Cent. Intelligence Agency*, 473 F.3d 370 (D.C. Cir. 2007) ..................................5, 8, 10, 12

## STATUTES

Exec. Order No. 13292, 32 C.F.R. 2001.12 (2003) ...................................................9, 16

Fed. R. Civ. P. 56......................................................................................................18

Plaintiffs Valerie Plame Wilson and Simon & Schuster, Inc. ("Valerie Wilson" and "Simon & Schuster," collectively, "Plaintiffs") hereby submit this reply memorandum of law in support of their motion for summary judgment and a permanent injunction and in opposition to defendants' cross-motion for summary judgment.

## PRELIMINARY STATEMENT

The Government's opposition and cross-motion papers spend considerable time establishing that Ms. Wilson's pre-2002 service dates with the Central Intelligence Agency ("CIA") were properly classified; that classification decisions are to be accorded considerable deference and are not to be second-guessed by the Courts; and, that Ms. Wilson's pre-2002 service dates with the CIA have not been declassified according to certain procedures. Plaintiffs do not as a general matter contest those basic concepts or historical facts.[1]

Rather, this action presents a straightforward application of the official acknowledgment doctrine. Plaintiffs ask this Court to declare that Ms. Wilson's precise dates of service with the CIA – now indisputably in the public domain – were officially acknowledged in a documented disclosure by the CIA. No one disputes the fundamental facts that inform this conclusion: in the context of Ms. Wilson's "outing" as a covert agent and in response to her specific inquiries regarding her annuity, the CIA's "Chief, Retirement & Insurance Services," Karen Tumolo, sent

---

[1] Plaintiffs note that it is indeed ironic that the government goes out of its way to argue that it would gravely harm national security if it confirmed Ms. Wilson's 20 years status as a CIA officer because of the dangers created if "valuable intelligence sources come to think the Agency will be unable to maintain the confidentiality of its relationship to them. . . ." Memorandum of Law in Support of the Government's Cross-Motion for Summary Judgment and In Opposition to Plaintiff's Motion for Summary Judgment (hereinafter, "Op. Br."), at 12, quoting *CIA v. Sims*, 471 U.S. 159, 175 (1985). Yet, here, of course, Ms. Wilson's exposure as a covert CIA operative was because senior government officials – including Karl Rove and I. Lewis Libby – leaked her name and failed to keep her covert status confidential. Further, the reason Ms. Wilson's service dates documenting her 20 years with the Agency were revealed is because the CIA itself released the actual dates in the form of an unclassified letter.

Ms. Wilson a February 10, 2006 letter on CIA letterhead documenting her dates of service with

the Agency (the "February 2006 Letter").  Nor does anyone dispute the authenticity or accuracy

of the Letter or that it was disseminated in an unclassified manner.  Finally, there is no dispute

that the Letter was ultimately introduced into the Congressional Record in support of the Valerie

Plame Wilson Compensation Act and remains there today, available worldwide via the Internet.

Based on these undisputed facts, Plaintiffs seek a narrow declaratory judgment

confirming that Ms. Wilson's precise dates of service have been officially acknowledged.  As

made clear from the outset, Plaintiffs are not asking this Court to look over the shoulder of the

CIA and assess individual redactions or changes to her manuscript ("Manuscript").  Instead,

Plaintiffs seek an injunction enjoining the government from censoring her book ("Book") to

preclude Ms. Wilson from acknowledging what the world now knows to be true:  that she

worked for the CIA for 20 years.  Armed with that declaration, further review of her Book by

PRB will necessarily be informed by the fact that her 20 years of service with the CIA have been

officially acknowledged.

Accordingly, this Court is presented with a single legal issue:  may the CIA censor

information that it has indisputably disclosed and acknowledged to be true?  As found in *United

States v. Snepp*, the "'issue upon judicial review would seem to be simply whether or not the

information was classified and, if so, whether or not, by prior disclosure, it had come into the

public domain,'" 897 F.2d 138, 141, n. 2 (D.C. Cir. 1990) (quoting *United States v. Marchetti*,

466 F.2d 1309, 1318 (4th Cir. 1972)).  The government would like to write the First Amendment

out of this analysis but it is the constitutional principles of the First Amendment that plainly

inform the official acknowledgment doctrine.  Further, the government goes out of its way to

mischaracterize Plaintiffs' status.  It repeatedly describes Plaintiffs as trying to "pry loose"

properly classified information or seeking to "compel release" of Ms. Wilson's dates of CIA

service, seemingly confusing this action with a FOIA action. Op. Br. at 19, 21. However, the

government ignores that the precise information at issue has already been released *by the CIA*

and because of its own actions the information resides irretrievably in the public domain.

Plaintiffs stand in a very different position from a FOIA plaintiff. As found by the D.C. Circuit

in *McGehee v. Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983):

> This case arises in a posture significantly different from a request
> for release of CIA documents under the Freedom of Information
> Act (FOIA). In a FOIA case, an individual seeks to compel release
> of documents in the government's possession. Here, by contrast,
> [Plaintiff] wishes publicly to disclose information that [she]
> already possesses, and the government has ruled that [her] secrecy
> agreement forbids disclosure. This difference between seeking to
> obtain information and seeking to disclose information already
> obtained raises [Plaintiff's] constitutional interests in this case
> above the constitutional interests held by a FOIA claimant. *Id.* at
> 1147.

The official acknowledgment doctrine acts as a First Amendment brake on the almost

unfettered deference accorded Executive Branch decisions regarding classified information.

When, as here, the Agency itself has disclosed and acknowledged Ms. Wilson's precise service

dates, the CIA can no longer claim any plausible deniability and cannot censor the same specific

information. (*See*, Point I (A)). The government attempts to forestall this conclusion by grafting

on new requirements or elements to the official acknowledgment doctrine. Yet, there simply is

no basis in the law for requiring official declassification of the information at issue before it can

be deemed "officially acknowledged;" nor is there any basis for an exception to the doctrine for

inadvertent mistake. (*See*, Point I (B)).

At bottom, on these undisputed facts, the CIA cannot censor Valerie Wilson and Simon

& Schuster from publishing the same specific information CIA has itself disclosed and

acknowledged to be true. Each of the three prongs of the official acknowledgment doctrine have

been met.  The information released by the CIA in an official and documented disclosure is precisely the same information Plaintiffs ask this Court to declare officially acknowledged.  In short, with the CIA's confirmation of the accuracy of the information, the cat is out of the bag and CIA cannot constitutionally put it back in.  (*See*, Point I (C)).

Finally, if this Court were to accept the government's argument and find that elements of intent, motive or mistake inform the official acknowledgment doctrine, then these issues constitute quintessential questions of fact and Plaintiffs are entitled to test them in discovery.  Thus, the government's cross-motion for summary judgment must be denied.  (*See*, Point II).

## ARGUMENT

## I.

### RELEASE OF THE FEBRUARY 2006 LETTER BY CIA WAS AN OFFICIAL ACKNOWLEDGMENT OF WILSON'S DATE'S OF SERVICE

#### A.    The CIA Cannot Censor Information It Disclosed and Acknowledged to be Accurate

The "official acknowledgment doctrine" is one of the few situations where the First Amendment directly confronts the deference generally accorded classified information and wins.  While narrowly and strictly applied, as the government suggests, the official acknowledgment doctrine recognizes that there comes a point when the government can no longer constitutionally censor or withhold information.  That point is reached when – as here – the precise same information at issue has indisputably been disclosed as accurate by the actual agency that is responsible for the classified information resulting in the same information entering the public domain.  The government simply ignores, or seeks to diminish, this constitutional reality.[2]

---

[2] There is no basis for the Government's contention that the Plaintiffs do not have an independent First Amendment claim and that any First Amendment concerns are folded into their APA claim.  Opp. Br. at 2, n. 1.  Indeed, it is well recognized that the CIA's review of

The official acknowledgment doctrine does not, as the government suggests, turn on official declassification or the intent of the parties.[3] Rather, the critical element by which every official acknowledgment case is tested is whether the actual government agency at issue has "acknowledged" the precise information challenged so that the government can no longer plausibly deny (or censor) its accuracy. As aptly put by the Fourth Circuit in *Alfred A. Knopf, Inc. v. Colby*:

> It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources to say it is so; it is quite another thing for one in a position to know of it officially to say it is so.

509 F.2d 1362, 1370 (4th Cir. 1975).

It is this thread of plausible deniability – or failure to officially acknowledge the accuracy of the precise information at issue – that defines the outcome of virtually every official acknowledgment case. Courts understandably struggle with the seemingly incongruent reality when information is publicly available and widely perceived to be true, yet the CIA has not actually confirmed its accuracy. Recognizing possible security concerns – and demonstrating considerable deference to the government's asserted need for secrecy[4] – courts only draw the line

---

former employees' manuscripts acts as a "prior restraint on speech," *United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972) and that the prior restraint is unconstitutional if the information is in the public domain. *United States v. Snepp*, 897 F.2d 138, 141, n. 2 (D.C. Cir. 1990).

[3] Nor is "waiver" the operative principal. In the context of FOIA, courts will sometimes speak of official disclosure or acknowledgment as a "waiver" that precludes reliance on certain FOIA exemptions. *See, e.g., Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007). But, in the context of an official disclosure involving a prior restraint on a book, waiver of a FOIA exemption is not involved.

[4] In *ACLU v. Department of Defense*, 389 F. Supp. 2d 547 (S.D.N.Y. 2005), Judge Hellerstein recently challenged the overarching deference accorded the CIA's claimed need for secrecy, noting in language equally applicable here, that "[t]he discussions of these documents in the public press, undoubtedly arising from numerous leaks of the documents, raise concern, however, that the purpose of the CIA's Glomar responses is less to protect intelligence activities,

and force disclosure (or preclude censorship) when the CIA has already confirmed the accuracy

of the same information. Thus, when plaintiff Frugone sought confirmation from the CIA of his

employment after it had been acknowledged by the Office of Personnel Management ("OPM"),

the court found that a disclosure is not deemed "official" if made "by someone other than the

agency from which the information is being sought." *Frugone v. CIA*, 169 F.3d 772, 774 (D.C.

Cir. 1999). Indeed, the court emphasized the difference between the CIA officially admitting

that it had employed plaintiff Frugone -- what has occurred here – and the "possibly erroneous

statements already made by the OPM." *Id.* at 775. Similarly, in *Military Audit Project v. Casey*,

656 F.2d 724 (D.C. Cir. 1981), it was the element of plausible deniability that allowed the CIA to

continue to withhold information concerning its previous top secret *Glomar Explorer* project.

There, the information requested -- the purpose of the project – had been reported in a Senate

report and in the French edition of former CIA director William Colby's book. Yet, the CIA

characterized the Senate report as "nothing more than a compilation of speculation" and

dismissed the import of Colby's book because he was not an agency official when it was written.

*Id.* at 743. The court found that "in effect, the government argues it still has something to hide."

*Id.* at 744. Accordingly, the court concluded that the "cat was not already out of the bag" since

"[w]hatever the truth may be, it remains either unrevealed or unconfirmed." *Id.* at 745. *See also,*

*Phillipi v. CIA*, 655 F.2d 1325, 1331 (D.C. Cir. 1981) (same).[5]

---

sources or methods than to conceal possible 'violations of law' in the treatment of prisoners, or
'inefficiency' or 'embarrassment' of the CIA." *Id.* at 564-65.

[5] In virtually every case that finds no official acknowledgment, the acknowledgment was
made by another agency, *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999), or by an ex-
official, *Hudson River Sloop Clearwater v. Department of Navy*, 891 F.2d 414, 421-22 (2d. Cir.
1989), *Phillipi v. CIA*, 655 F.2d 1325, 1330-31 (D.C. Cir. 1981) or by Congress, *Fitzgibbon v.
CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990), *Earth Pledge Foundation v. CIA*, 988 F. Supp. 623,
625 (S.D.N.Y. 1996), or by the media, *Rubin v. CIA*, No. 01 Civ. 2274, 2001 WL 1537706 at * 5

Here, of course, with regard to the precise dates of Ms. Wilson's service with the CIA, the cat *is* out of the bag. There is nothing left unrevealed or unconfirmed by the CIA. Nor can the CIA plausibly deny her 20 years of service. Indeed, nowhere in the government's opposition does it challenge the accuracy or authenticity of the February 2006 Letter. To the contrary, Ms. Tumolo's declaration affirmatively acknowledges she signed and sent the Letter. Further, she states that the precise dates of Ms. Wilson's service were based on Ms. Wilson's actual CIA personnel file and repeatedly describes her February 2006 Letter as including a "summary of Ms. Wilson's service." Tumolo Dec. ¶¶ 4, 8-10. Similarly, the CIA wrote the Clerk of the House of Representatives on January 23, 2007, to put the House on express notice that the Congressional Record included a "letter from the Central Intelligence Agency" that "contains classified information." AR (Uncl.) Tab 19.[6]

In sum, the material undisputed facts demonstrate that (1) the CIA directly acknowledged Valerie Wilson's pre-2002 affiliation with the CIA and her specific dates of service in its own

_____

(S.D.N.Y. Dec. 3, 2001). There is simply no precedent for the CIA actually confirming the precise information at issue and a court concluding that it was not officially acknowledged.

[6] There is no reason to believe that the CIA was misleading the House of Representatives by confirming that the Letter contained classified information. If the CIA deemed the Letter to be an unauthorized disclosure and it did not want to be on record acknowledging the authenticity of the Letter and its information, it should have remained silent. Indeed, on this very motion, the government notes that "[e]ven after an unauthorized disclosure of classified information occurs, the CIA typically does not acknowledge the classified information that was disclosed, as to do so would exacerbate the harm of the initial disclosure." Op. Br. at 10. Yet, here, even though the CIA presumably contends that the release of the February 2006 Letter in an unclassified manner was unauthorized – to be distinguished from the release of the information to Ms. Wilson, which clearly was authorized – the CIA went on public record acknowledging the authenticity of the Letter by advising the Clerk of the House that Letter contained classified information "not properly marked." Further, the January 27, 2007 CIA letter also belies the government's effort to downplay the import of the inclusion of the Letter in the Congressional Record. In opposition, the government tries to characterize the Congressional Record as containing nothing more than "statements...about Ms. Wilson's employment." Opp. Br. at 1. Yet, the CIA's own letter to Congress makes clear that the Congressional Record includes the "letter from the Central Intelligence Agency." AR (Uncl.) Ex. 19.

February 10, 2006 Letter, and (2) that direct acknowledgment – in an undisputed "documented

disclosure" – was made by an "authoritative government source." In short, when, as here, there

has been an "official disclosure" – *i.e.*, "direct acknowledgment by an authoritative source,"

*Schlesinger v. CIA*, 591 F. Supp. 60 (D.D.C. 1984) – the CIA can no longer censor the

publication of the precise same information.

> **B.    The Official Acknowledgment Doctrine Does Not Require**
> **an Intentional Agency Decision to Officially Declassify Information;**
> **Nor is There an Inadvertent Mistake Exception to the Doctrine**

In an effort to impose an even more stringent standard to the already concededly stringent

"official acknowledgment doctrine" the government argues, first, that official acknowledgment

can *only* occur through official and properly authorized declassification procedures or,

alternatively, that there is a "mistake" exception to the official acknowledgment doctrine. Opp.

Br. 16, 26. Neither argument finds support in the case law or in common sense.

It is consistently recognized, as observed in *Fitzgibbon v. Central Intelligence Agency*,

upon which the government relies throughout its brief, that "when information has been

officially acknowledged, its disclosure may be compelled even over an agency's otherwise *valid*

exemption claim." 911 F.2d 755, 765 (D.C. Cir. 1990) (emphasis added). *See also, Wolf v. CIA*

473 F.3d 370, 378 (D.C. Cir. 2007). Yet, if formal declassification were a necessary predicate to

a holding that information had been "officially acknowledged," it would render the entire

"official acknowledgment" analysis superfluous. If already declassified, why would a court need

to compel disclosure? Similarly, how could there possibly be a "valid exemption" predicated on

classified information if the information was already declassified? This conclusion is amply

demonstrated by the cases where "official acknowledgment" is found. Thus, for example, in

*Wolf v. CIA*, where a CIA director read excepts from Agency dispatches into the Congressional

Record some 50 years earlier, it was found that the precise information had been "officially

acknowledged" even though plainly the dispatches had not been formally declassified. If the dispatches were declassified, the government could not (at least in good faith) have objected to their production, adopting a "Glomar response"[7] to the FOIA request at issue, and thereby seeking to prevent release of the same documents. *See also Schlesinger v. CIA, supra,* at 68 (one page CIA cable containing no significant information "might be said to constitute an official disclosure" even though no evidence of declassification); *Hudson River Sloop Clearwater v. Dep't of Navy*, 891 F.2d 414, 421 (2d Cir. 1989) (testimony of various high-ranking Navy officials before Congress constituted "official statements," without evidence of declassification).

There is simply no basis for the government to contend that official declassification procedures – including a formal determination by an authorized "senior agency official" – must precede a finding that an official acknowledgment has occurred. Put simply, there would be no basis for the CIA to object to disclosure or for courts to even engage in the three-prong *Afshar* analysis if formal declassification must occur to have an "official acknowledgment."[8] The government's contention regarding declassification is meritless.

Nor is there any basis to conclude that there is an "inadvertent mistake" exception to the official acknowledgment doctrine. The government argues, relying on dictionary definitions of "official," that a "mistake" simply wipes the CIA's acknowledged information out of the public

---

[7] Based on the position adopted by the CIA in *Military Audit Project v. Casey*, 656 F.2d 724, 731 (D.C. Cir. 1981) where the CIA refused to admit or deny that the asked for documents existed concerning the Glomar Explorer project existed, such a response has hereafter been called a "Glomar response."

[8] In effect, the CIA's position puts the cart before the horse. The net effect of a finding of official acknowledgment is that the applicable precise information at issue is declassified – not through formal channels but by operation of constitutional law. Instead, the CIA's transparent goal in trying to inject declassification standards into the analysis is to raise the ante on the status of the CIA official who "acknowledges" the information. Thus, the government argues that she must be a "senior agency official" within the Exec. Order No. 13292, 32 C.F.R. 2001.12 (2003). Op. Br. at 32, n. 24. Yet, nowhere in the case law is that standard imposed or even discussed.

record and the public domain. But the First Amendment does not wear blinders. Ms. Wilson's precise terms of service entered the public domain through the actions of a CIA official. The information had been documented by the CIA, is incontrovertibly accurate, and is now irretrievably in the public domain. On these facts, one cannot, consistent with the First Amendment, simply "unring" the bell and pretend that the information has not already been confirmed to the world at large by the very agency that now seeks to suppress the information.

### C. The Undisputed Facts Establish that Each of the Three Prongs of the Official Acknowledgment Doctrine Has Been Satisfied

Official acknowledgment by a government agency occurs when the following three criteria are met:

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed. Third, the information requested must have been made public through an official and documented disclosure.

*Wolf*, 473 F.3d at 378 (quoting *Fitzgibbon* 911 F.2d at 765). Here, Plaintiffs satisfy all three prongs of this test.

#### 1. The CIA Concedes Documented Confirmation

The CIA admits that the February 2006 Letter contained precise information documenting Wilson's dates of service, came from the CIA, was not marked as classified and was sent by non-secure means. *See, e.g.,* Op. Br. at 1. Accordingly, it concedes that there has been a "documented disclosure." *See*, Op. Br. at 25, n. 18.

#### 2. The Information at Issue is Precisely the Same as that Previously Disclosed

The only information that Plaintiffs seek to have declared officially acknowledged is the very information that was disclosed in the February 2006 Letter. Plaintiffs do not ask this Court to engage in any review of passages from Valerie Wilson's Book, or to delve any further into the

CIA's pre-publication review of her Manuscript.  Despite defendants' assertions to the contrary, Plaintiffs do not seek a declaration and injunction from this Court regarding anything beyond Wilson's actual dates of service with the CIA as officially confirmed in the February 2006 Letter.  *See*, Cplt. at 23-24.

Plaintiffs understand, and have made clear from the outset, that following the issuance of such a declaration and injunction, the PRB will still need to review the Manuscript for any remaining classified information and that deference will be accorded PRB's decision making. However, should Plaintiffs' request for an injunction be granted, the review would necessarily be informed by the fact that Ms. Wilson's documented 20 years of service with the CIA is an officially acknowledged fact and is no longer classified.  Thus, she would be able to acknowledge what the world already knows:  that her "outing" by several high-level government officials effectively terminated 20 years of devoted service to the CIA.  This does not create an overbroad or unworkable injunction, as the government contends, but, instead assumes that the PRB will follow a presumption of regularity and may no longer censor Ms. Wilson's actual term of service.[9]  (CIA Brief at 23.)  Thus, here, too, there is no dispute between the parties.  As the government concedes, if the requested declaration and injunction seeks to enjoin censoring "the same information that is contained in the February 2006 letter, *i.e.*, the dates of Wilson's employment, then the first two prongs of the *Fitzgibbon* test [are] satisfied."  Op. Br. at 23.

---

[9] A declaration that the CIA has officially acknowledged Ms. Wilson's actual terms of service will have a significant impact on her Manuscript.  As the CIA has confirmed, the Manuscript is "replete" with information that confirmed her actual dates of service with the Agency.  Indeed, it confirmed that "with limited exceptions, the classified information the PRB identified in [the Manuscript] relates to a single issue. . . ." understood by all parties to be her terms of service with the CIA.  *See* Def. R., Tab 28.

### 3.     The Release of the February 2006 Letter Was an Official Disclosure

The information that Ms. Wilson seeks to publish has "been made public through an official and documented disclosure." *Wolf* at 378. Tellingly, the government does not, nor can it, distinguish *Schlesinger v. Central Intelligence Agency*, which construes the "official disclosure" prong of the official acknowledgment doctrine to mean "direct acknowledgment by an authoritative government source." 591 F. Supp. 60, 66 (D.D.C. 1984). *See also, Military Audit Project v. Casey, supra*, at 744 (acknowledgment must occur in "authoritative, official disclosures"). Once again, the issue is not the seniority of this individual; rather, the issue is whether it is an "authoritative" source so that the government has relinquished its ability to disclaim the accuracy of the information. Plainly, Ms. Tumolo, the "Chief, Retirement & Insurance Services" for the CIA is an authoritative government source as to information germane to her area of expertise, namely service dates contained in the Agency's actual personnel files. It is equally clear that confirming service dates is within the scope of her official duties. Tumolo Decl. ¶¶ 1, 4-5. Further, the January 2007 letter from the CIA's "Director of Congressional Affairs" confirming the authenticity (and implicitly the accuracy) of Ms. Tumolo's letter also indisputably came from an "authoritative" CIA source.

The government attempts to diminish this release of documented information in an unclassified manner as just "a mundane letter" that constituted "private correspondence." Op. Br. at 25. Yet, indisputably, Ms. Wilson was a private citizen at the time she received this letter and there is no exception to classification procedures for "private correspondence." Further, Ms. Wilson was not just any private citizen when her dialogue with the CIA concerning her entitlement to an annuity was occurring; she was a *cause célèbre*. To state that a letter to Valerie Plame Wilson regarding her employment with the CIA—the very topic that had already been, *inter alia*, the subject of a widely reported federal grand jury investigation leading to the

indictment of I. Lewis Libby—was "mundane" strains credulity. As detailed in Plaintiff's moving papers, not only was Ms. Wilson at that point the subject of a nationwide discourse regarding her treatment at the hands of senior White House officials, there was also considerable internal CIA discussion (including with the Office of the General Counsel) as to whether she qualified for an annuity upon retirement. (Pls.' Mem. at 6-7.) The assertion that the February 2006 Letter was merely a mundane matter of private correspondence is disingenuous, at best.[10]

Nor does the government's argument gain ground by its contention that the February 2006 Letter did not constitute an "official" CIA acknowledgment. Op. Br. 26-30. Despite the government's attempt to cobble together disparate quotes from *Alfred A. Knopf v. Colby*,[11] nowhere in the official acknowledgment case law has there been grafted on to the *Afshar* three-prongs the requirement that the official acknowledgment be the result of "high level executive decisions" or even that the disclosure be formally authorized. Op. Br. at 27. Instead of the motive or intent behind a release, in case after case, courts focus on whether the acknowledgment comes from the *same agency* from which the information is being sought so that the agency can no longer plausibly deny the information.

---

[10] Plaintiffs submit that the February 2006 Letter stands on its own as an authoritative CIA confirmation of Ms. Wilson's precise terms of service. However, if the government wishes to introduce an inquiry as to Ms. Tumolo's state of mind at the time she sent it and what internal agency discussions surrounded its dissemination, plaintiffs are clearly entitled to discovery on those issues and the government's cross-motion for summary judgment must be denied. See, Point II below.

[11] Defendants state in their brief that, in *Knopf*, the Fourth Circuit "has held, 'declassification by official public disclosure' is the 'result of high level executive decisions that disclosure was in the public interest.'" (Op. Br. at 27.) Defendants, through reversing the order in which these quotations appear and by selectively editing, imply a result that the *Knopf* court did not reach. In discussing certain disclosures, the *Knopf* court stated that these "were the result of high level executive decisions." 509 F.2d at 1369. It went on to state that these same disclosures "are instances of declassification by official public disclosure." *Id*. *Knopf* in no way held that an official disclosure within the meaning of the official acknowledgment doctrine may only occur as the result of a high level executive decision.

This conclusion is amply demonstrated in *Hudson River Sloop Clearwater v. Department of Navy*, which the government calls the "Second Circuit's leading case on official disclosures." Op. Br. at 28. In *Hudson River Sloop*, the plaintiffs argued that official disclosures had occurred because, among other things, an affidavit by a retired Rear Admiral had publicly disclosed the information at issue. However, the Second Circuit's holding did not, as the government suggests, turn on whether there had been an "officially authorized and approved" disclosure. Op. Br. at 28. Instead, it found that the Rear Admiral's affidavit "cannot effect an official disclosure of information since he is no longer an active naval officer." *Hudson River v. Department of State*, at 421, *citing Afshar*, 702 F.2d 1125, 1133-34 (D.C. Cir. 1983).[12]

The same infirmity plainly does *not* exist here: indisputably Ms. Tumolo was an "active" CIA official at the time she released the February 2006 Letter and she remains an Agency official today. Tumolo Decl. ¶ 1. Thus, in every case cited by the government to supposedly demonstrate the distinction between "official and unofficial disclosures," the critical determination is whether the disclosures were issued from the same government agency. *See, e.g.*, *Frugone v. Cent. Intelligence Agency*, 169 F.3d 772, 774 (D.C. Cir. 1999) (disclosure is only official when, as is the case here, the disclosure is *made by the very agency from which the*

_____

[12] The Second Circuit also found that Congressional testimony by Navy officials did not constitute an official disclosure because the testimony "did not disclose specific information which they presently seek." *Hudson River Sloop*, 891 F.2d at 421. Here, of course, the precise same information is at issue. Further, the government tries to turn plain dicta in *Hudson River Sloop* into its central holding. Thus, in support of their argument that they should be entitled to discovery, the plaintiffs in *Hudson River* proffered that discovery would reveal that "state, local and regional officials" or "other third-party witnesses" would confirm that the Navy had disclosed that it was going to deploy nuclear weapons at Homeport. The court observed that any such theoretical disclosures – not the documented disclosure at issue here – would not be official disclosures because the statements were not a matter of public record and would have been communicated in a "classified" manner or as "unauthorized 'leaks.'" *Id.* at 422. Plainly, the Second Circuit's observation about theoretical disclosures did not graft on to the "official acknowledgment doctrine" the requirements the government now seeks to impose.

*information is being sought*); *Alfred A. Knopf v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975)

(emphasis added) ("It is one thing for a reporter or author to speculate or guess that a thing may

be so or even, quoting undisclosed sources, to say that it is so; *it is quite another thing for one in*

*a position to know of it officially to say that it is so*."); *Military Audit Project v. Casey*, 656 F.2d

724, 744 (D.C. Cir. 1981) (publication "not an official governmental pronouncement" where

author "not an agency official at the time the book was published.");[13] *Rubin v. CIA*, No. 01 Civ.

2274, 2001 WL 1537706 (S.D.N.Y. Dec. 3, 2001) (publication in book not an official

disclosure).

     Ultimately, the government asks this Court to condone the censoring of Ms. Wilson's

actual service dates – although accurate, documented and now in the public domain – because

the release of the letter in an unclassified manner was a "mistake."  Op. Br. at 1, 19.  Yet,

nowhere in their papers do they provide any factual basis for not according the "presumption of

regularity" to Ms. Tumolo's actions.  *See, e.g., Knopf, supra,* 509 F.2d at 1368 (classified

stamping is part of the presumption of regularity).  The February 2006 Letter irretrievably

entered the public domain through the CIA's own actions.  The CIA should not be allowed at this

late date to "take it all back" and leave Ms. Wilson unable to defend herself against concerted

efforts to diminish her status with the CIA.[14]

---

     [13] The government's reliance on *Military Audit Project v. Casey, supra,* and *Phillipi v.
CIA, supra,* is particularly misplaced.  What it fails to reveal in its papers is that in both cases,
the alleged official disclosures by the government and the CIA were not rejected because they
were "unofficial"; rather, they were rejected because they were deemed to be disinformation by
the CIA.  Plainly, here, Ms. Tumolo's Letter and the CIA's letter to the House were not intended
to be "disinformation."

     [14] The government's contention that it was not aware of the "mistake" until the Letter
entered the Congressional Record is belied by this record.  The CIA was, and should have been,
aware of the Letter's contents from the time it was sent, but it was also reminded about the Letter
in late December 2006 and on January 9, 2007.  Adm. Rec. (Uncl.) Ex. 15.

In sum, for these reasons, the February 2006 Letter constituted an official disclosure within the meaning of the official acknowledgment doctrine. As detailed above, all three prongs of the doctrine are satisfied. Thus the information concerning Ms. Wilson's dates of service was, under the law, officially acknowledged by the CIA.

### 4.    The Information at Issue is Now Irretrievably in the Public Domain and Cannot be Re-Classified

As the CIA has itself officially acknowledged Ms. Wilson's federal service dates, which are now available worldwide on the Internet and published in the Congressional Record, and confirmed that acknowledgment through its January 2007 letter to the House of Representatives, the precise information at issue is declassified. *Afshar v. Dep't of State*, 702 F.2d 1125, 1143 (D.C. Cir. 1983). As such, under Executive Order 13292, Section 1.7(c), the Government may not reclassify this information for the simple reason that it is not information that "may be reasonably recovered."

Defendants understandably seek to diminish the import of the February 2006 Letter's permanent, irretrievable appearance in the Congressional Record, and assert that "publication by Congress is immaterial under Second Circuit law." Op. Brief at 26, 33. Yet, it is not mere surmise by a congressional committee but the CIA's own letter that is now permanently ensconced in the Congressional Record, and available to the world at large on www.thomas.gov. The government ignores this critical distinction in its attempt to rely on *Earth Pledge Found. v. CIA* as evidence that courts have "unanimously rejected claims that congressional publication of classified CIA information constitutes declassification." Op. Br. at 33. Indeed, in *Earth Pledge Found.*, the court was asked to find official acknowledgment of a CIA station based on a Senate report which made reference to the presence of the CIA station at issue. Yet, Judge Koeltl rejected that conclusion, distinguishing a reference in a Senate report from the precise situation

at issue here: "confirmation of the existence of such an installation, even by another branch of the federal government, is different from the *CIA itself* acknowledging the existence of the base." 988 F.Supp. 623, 628 (S.D.N.Y. 1996) (emphasis added), *aff'd* 128 F.3d 788 (2d Cir. 1997).

In sum, the Supreme Court stated, in discussing the pre-publication review process: "If in fact information is unclassified *or in the public domain*, neither the CIA nor foreign agencies would be concerned." *Snepp v. United States*, 444 U.S. 507, 513 n. 8 (1980) (emphasis added). The information at issue here has been officially acknowledged and is irretrievably in the public domain. Ms. Wilson "has a strong first amendment interest in ensuring that CIA censorship of [her publication] results from a *proper* classification of the censored portions." *McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983) (noting further that censorship of known information raises even greater constitutional concerns than does the non-disclosure of government information). Accordingly, the CIA may no longer constitutionally bar Ms. Wilson from confirming the length of her tenure with the CIA.

## II.

### EVEN IF DEFENDANTS' ERRONEOUS THEORY OF THE OFFICIAL ACKNOWLEDGMENT DOCTRINE WERE VALID, ISSUES OF FACT WOULD PRECLUDE SUMMARY JUDGMENT IN DEFENDANTS' FAVOR

If, as the government argues, intent, motive, and mistake are all relevant to obviate a clear official acknowledgment of the precise information at issue, then clearly Plaintiffs are entitled to test those quintessentially factual issues. *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 300 (2d Cir. 1996) (fact question concerning intent is inappropriate for summary judgment resolution), *Herman v. Provident Mut. Life Ins. Co.*, 886 F.2d 529, 536 (2d Cir. 1989) (issues of motivation and intent are clearly questions of fact not properly resolved on a motion for summary judgment), *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984) (subjective issues regarding state of mind, motive, sincerity and conscience render summary judgment

inappropriate), *Skywark v. Isaacson*, 202 B.R. 557, 564-65 (S.D.N.Y. 1996) (honest mistake of judgment was question of fact precluding summary judgment).

As summary judgment is only appropriate when there is "no genuine issue as to any material fact," defendants' own motion for summary judgment must fail. *See* Fed. R. Civ. P. 56(c). If the relevant law is, as defendants' assert, concerned less with the fact that information about Ms. Wilson's dates of service was officially disclosed by the CIA than with questions of whether such a disclosure was "informed and conscious," then summary judgment is clearly inappropriate. *See* Op. Brief at 27. Thus, defendants' motion for summary judgment should be denied.

## CONCLUSION

For all the foregoing reasons, this Court should grant summary judgment to Plaintiffs pursuant to Rule 56 of the Federal Rules of Civil Procedure, deny defendants' motion for summary judgment, and also grant Plaintiffs' request for a permanent injunction.

Dated: July 20, 2007
      New York, New York

WOLLMUTH MAHER & DEUTSCH LLP

By: _____
      David B. Smallman (DS-5316)

      500 Fifth Avenue
      New York, NY 10101
      Tel: (212) 382-3300
      Fax: (212) 382-0050
      dsmallman@wmd-law.com

      *Attorneys for Plaintiffs*
      *Valerie Plame Wilson and Simon & Schuster, Inc.*

      DAVIS WRIGHT TREMAINE LLP
      Elizabeth A. McNamara (EAM-1987)
      1633 Broadway, 27th Floor
      New York, NY 10019
      Tel: (212) 489-8230
      Fax: (212) 489-8340
      lizmcnamara@dwt.com

      *Attorneys for Plaintiff Simon & Schuster, Inc.*

*Additional Counsel for*
*Plaintiff Valerie Plame Wilson*

Professor Erwin Chemerinsky
Duke University School of Law
Science Drive and Towerview Road
Durham, NC 27708-0360
Tel: (919) 613-7173
Fax: (919) 613-7231

Lisa E. Davis, Esq.
Frankfurt Kurnit Klein & Selz, P.C.
488 Madison Avenue
New York, NY 10022
Tel: (212) 980-0120
Fax: (212) 593-9175